1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARNOLD & PORTER LLP
Matthew T. Heartney (SBN 123516)
matthew.heartney@aporter.com
Alex Beroukhim (SBN 220722)
e.alex.beroukhim@aporter.com
777 South Figueroa Street, Forty-Fourth Floor
Los Angeles, California 90017-5844
Telephone: 213.243.4000
Facsimile: 213.243.4199

Attorneys for Defendants
BP SOLAR INTERNATIONAL, INC., and
HOME DEPOT U.S.A., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL ALLAGAS, ARTHUR RAY and BRETT MOHRMAN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>BP SOLAR INTERNATIONAL, INC., HOME DEPOT U.S.A., INC. and DOES 1 -10, inclusive,<br><br>    Defendants. | Case No. 3:14-cv-00560-SI<br><br>**DEFENDANTS BP SOLAR INTERNATIONAL, INC. AND HOME DEPOT U.S.A., INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Susan Y. Illston<br>Date: April 11, 2014<br>Time: 9:00 a.m.<br>Crtm: 10<br><br>Action Filed: February 6, 2014<br>Trial Date: Not Set |

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 11, 2014, at 9:00 a.m., or as soon thereafter as this motion may be heard, in the courtroom of the Hon. Susan Y. Illston, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants BP Solar International, Inc. ("BP") and Home Depot U.S.A., Inc. ("Home Depot") (collectively, "Defendants") will move this Court to dismiss claims filed by Michael Allagas, Arthur Ray and Brett Mohrman (collectively, "Plaintiffs").

This motion is made pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) on the grounds that Plaintiffs' claims fail to state a claim upon which relief can be granted, and pursuant to Federal Rules of Civil Procedure 9(b) on the ground that Plaintiffs claims fail to allege with particularity claims relying on allegations of fraud or misrepresentation.

Defendants base their motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendants' Request for Judicial Notice in Support of its Motion to Dismiss and the Declaration of Matthew T. Heartney in Support Thereof, the [Proposed] Order, any oral argument heard by the Court, such additional evidence as may be submitted to the Court and such other matters as the Court deems proper.

Dated: February 27, 2014.                    ARNOLD & PORTER LLP


                                             By:  /s/ Matthew T. Heartney
                                                  Matthew T. Heartney
                                                  Alex Beroukhim
                                                  Attorneys for Defendant
                                                  BP SOLAR INTERNATIONAL, INC.
                                                  and HOME DEPOT U.S.A.. INC.

# Table of Contents

**Page**

Preliminary Statement.................................................................................................1

Factual Background ...................................................................................................1

I.    The Warranties .............................................................................................2

II.   Marketing.....................................................................................................3

III.  The Purported Defect And BP's Alleged Response......................................3

IV.  The Three Plaintiffs' Claims And The Purported Classes ...........................4

      A.    Allagas ...............................................................................................4

      B.    Ray.....................................................................................................5

      C.    Mohrman ...........................................................................................6

      D.    The Purported Classes ......................................................................7

V.    Causes Of Action .........................................................................................7

Argument ...................................................................................................................8

I.    Plaintiffs' Claims For Express And Implied Warranty Should Be
Dismissed.....................................................................................................8

      A.    Plaintiffs' Claims Based On Breach Of The Defect Warranty
And Implied Warranties Fail Because They Are Untimely......................9

            1.    Plaintiffs Fail To Allege A Breach Of The Defect Warranty
Because The Alleged Defect Manifested Itself After The
Warranty Period Elapsed ........................................................10

            2.    Plaintiffs' Implied Warranty Claims Are Untimely Because
The Alleged Defect Manifested More Than One Year After
Purchase ..................................................................................11

      B.    Plaintiffs' Express Warranty Claims Also Fail With Respect To
Allagas and Ray Because BP Did Not Breach The Terms Of
The Warranty...................................................................................13

      C.    Plaintiffs' Implied Warranty Claims Fail Because All Plaintiffs
Lack Vertical Privity With BP And Ray And Mohrman Lack
Vertical Privity With Home Depot ...................................................15

II.   Plaintiffs CLRA And Fraudulent Prong Of UCL Claims (Counts 8 and
9) Fail Because The Alleged Misleading Statements Are Non-Actionable
Puffery And Plaintiffs Have Failed To Plead Reliance Upon Them With
The Required Particularity ...........................................................................16

      A.    All Of The Purported Misleading Statements In The Complaint
Are Non-Actionable Puffery...........................................................16

      B.    Plaintiffs Have Not, As They Must, Alleged Their Fraud
Claims With Particularity................................................................18

III.  The Unlawful And Unfair Prongs Of Plaintiffs' UCL Claims (Count 8)
Fail Because All Of The Unlawful Predicate Violations Fail And BP's
Conduct Is Not Unfair ...................................................................................20

A.     The Unlawful Prong Fails Because Plaintiffs Have Not Alleged A Violation Of The CLRA, Magnuson-Moss Act Or Song-Beverly Act ..........................................................................20

B.     The Unfair Prong Fails Because Plaintiffs Have Not Been Harmed By The Alleged Unfair Conduct ..................................20

Conclusion ........................................................................................22

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Anunziato v. eMachines, Inc.,*
    402 F. Supp. 2d 1133 (C.D. Cal. 2005)................................................15, 16, 17

5

6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................8

7

*Baba v. Hewlett Packard Co.,*
    2012 WL 5336971 (N.D. Cal. Oct. 26, 2012) ................................................14

8

9

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir.2009) ................................................................9

10

*Brilliant v. Tiffin Motor Homes, Inc.,*
    2010 WL 2721531 (N.D. Cal. July 7, 2010) ................................................9

11

12

*Brothers v. Hewlett-Packard Co.,*
    2007 WL 485979 (N.D. Cal. Feb. 12, 2007)................................................14

13

*Campion v. Old Republic Home Prot. Co., Inc.,*
    272 F.R.D. 517 (S.D. Cal. 2011) ................................................................13

14

15

*Chandler v. Chiron Corp.,*
    1997 WL 464827 (N.D. Cal. July 28, 1997) ................................................15

16

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) ................................................11, 12, 15

17

18

*Daniels-Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir. 2010) ................................................................2

19

*Ehrlich v. BMW of North America,*
    801 F.Supp.2d 908 (C.D. Cal. Aug. 11, 2010) ................................................12

20

21

*Elias v. Hewlett-Packard Co.,*
    903 F. Supp. 2d 843 (N.D. Cal. 2012)................................................20

22

*Falk v. Gen. Motors Corp.,*
    496 F. Supp. 2d 1088 (N.D. Cal. 2007)................................................8

23

24

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ................................................................18

25

*Koehler v. Litehouse, Inc.,*
    2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ................................................5

26

27

*Leadsinger, Inc. v. BMG Music Publ'g,*
    512 F.3d 522 (9th Cir. 2008) ................................................................8

28

*Marchante v. Sony Corp. of Am., Inc.,*
    801 F. Supp. 2d 1013 (S.D. Cal. 2011) ................................................11, 12, 13

DEFS. BP SOLAR INT'L, INC. AND HOME DEPOT U.S.A., INC.'S NOT. OF MOT. TO DISMISS;
MEMO. OF P. & A.

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008).................................................................16

*Papasan v. Allain*,
    478 U.S. 265 (1986) ...............................................................................................8

*Rahman v. Mott's LLP*,
    2014 WL 325241 (N.D. Cal. Jan. 29, 2014) .........................................................18

*Sanchez v. Andruss*,
    2013 WL 3152395 (N.D. Cal. June 19, 2013) .........................................................5

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931(N.D. Cal. June 5, 2009) ...........................................13, 19, 20, 21

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010).................................................................10

*Tietsworth v. Sears, Roebuck & Co.*,
    2009 WL 1363548 (N.D. Cal. May 14, 2009) .........................................................12

*Tietsworth v. Sears, Roebuck & Co.*,
    2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ..................9, 10, 13, 15, 17, 18

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ...................................................................................5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................................18

*Wang v. OCZ Tech. Group, Inc.*,
    276 F.R.D. 618 (N.D. Cal. 2011) .....................................................................18, 19

*Wright v. Gen. Motors Acceptance Corp.*,
    2013 WL 6137482 (9th Cir. Nov. 22, 2013)...........................................................21

**STATE CASES**

*Am. Suzuki Motor Corp. v. Superior Court*,
    37 Cal. App. 4th 1291 (1995)................................................................................10

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2007)....................................................................9, 10, 20

**STATUTES AND RULES**

15 U.S.C. § 2301(11) ....................................................................................................14

15 U.S.C. § 2304(a)(3)...................................................................................................21

Bus. & Prof. Code § 17204 ...........................................................................................21

Cal. Civ. Code 1791.1(c) ...............................................................................................11

Cal. Civ. Code § 1794(b)................................................................................................21

Cal. Com. Code § 2315 .................................................................................. 10

Cal. Com. Code § 2316(2) ............................................................................. 12

Cal. Com. Code § 2725(2) ............................................................................. 11

Fed. R. Civ. P. Rule 9(b) ............................................................................... 18

Fed. R. Civ. P. Rule 12(b)(6) .......................................................................... 8

Fed. R. Evid. 106 ............................................................................................. 5

**OTHER AUTHORITIES**

*Infra* at 13-15 ......................................................................................... 9, 12

DEFS. BP SOLAR INT'L, INC. AND HOME DEPOT U.S.A., INC.'S NOT. OF MOT. TO DISMISS;
MEMO. OF P. & A.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants BP Solar International, Inc. ("BP") and Home Depot U.S.A., Inc. ("Home Depot") respectfully submit this Motion To Dismiss.

### Preliminary Statement

By and through this motion, BP and Home Depot seek dismissal of the bulk of plaintiffs' claims. With respect plaintiffs Michael Allagas and Arthur Ray, BP and Home Depot seek dismissal of all of their claims. With respect to plaintiff Brett Mohrman, Home Depot seeks dismissal of all of his claims and BP seeks dismissal of all of his claims, except his breach of express warranty claims under the Power Warranty, as described further below.

### Factual Background

Plaintiffs filed this putative class action against BP and Home Depot, seeking "recovery on behalf of themselves and all California residents who purchased [BP] Solar Panels [('Direct Purchasers')] or purchased properties on which the [BP] Solar Panels were installed [('Subsequent Purchasers')]" for alleged breach of express and implied warranties and violation of California consumer protection and unfair business practice statutes. (Compl. ¶ 4.) Plaintiffs contend that solar panels, manufactured by BP from 2001 to 2010, "have failed or will fail" because of purported defects in the junction boxes of the panels. (*Id.* ¶ 20; *see also id.* ¶ 100.) The solar panels allegedly fail because the solder joints at which a panel is connected to a junction box may overheat and break. (*Id.* ¶¶ 16-18.) This failure allegedly results "in a substantial reduction of the capacity of the Solar Panels to produce electricity" (*id.* ¶ 16) and creates a risk of fire "[i]f there is flammable material near" the solar panels. (*Id.* ¶ 19.)

BP did not sell solar panels to end users. Such panels instead were sold to consumers and commercial buyers through retailers, including co-defendant Home Depot. (Compl. ¶¶ 38-41.) BP did, however, extend certain limited warranties as to the panels.

## I.      The Warranties

BP issued two limited written warranties: a Defect Warranty and a Power Warranty.  (*Id.* ¶ 23.)  Under the Defect Warranty, BP warranted that the solar panels would be "free from defect in materials and workmanship" for a term specified in the Warranty.  (*Id.*)  If a defect manifested itself during the specified period, BP agreed to "repair or replace the Solar Panels [with "an equivalent product"],[1] or at its option, refund the purchase price."  (*Id.* ¶ 25.)  Under the Power Warranty, BP warranted that the solar panels would produce "at least ninety (90%) of their minimum peak power output for a period of years and at least eighty (80%) for a longer period from the date of installation."  (*Id.* ¶ 23.)  If the minimum power levels fell below the warranted levels during the specified periods, BP agreed to "either (a) repair or replace the Solar Panels or (b) provide the purchasers with the additional component(s) to bring the aggregate power output to at least the warranted percentage of the specified minimum power output."  (Compl. ¶ 25.)  To obtain warranty service, BP's Warranty directed purchasers to contact the "BP Solar regional customer service center," and provided contact information for this purpose.  (*See, e.g.*, RJN Ex. 1 at 9.)  Under the Power Warranty, BP reserved the right to test the solar panels, "using standard BP SOLAR test conditions" to determine that the product was "not providing [the] warranted percentage of its specified minimum power output."  (*Id.*)

The Complaint seeks to enforce several additional "rights and remedies" that are disclaimed or limited by BP's written warranties.  (Compl. ¶ 27.)  Thus, BP's Warranty contains disclaimers for (a) implied warranties, (b) consequential damages, and (c) responsibility for on-site labor costs, and includes a limitation on BP's

---

[1] The Complaint omits this clause, but it is included in the warranties.  (*See* Req. for Judicial Notice (hereinafter, "RJN") Ex. 1 at 8, Sec.1.A.)  "[A] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citations omitted).

maximum liability, an exclusive remedies provision, and a Maryland choice of forum clause (collectively referred to as "Warranty Exclusions").  (*Id.* ¶¶ 27-28.)

## II.    Marketing

The Complaint quotes statements regarding the quality and reliability of BP's solar panels and the potential benefits of owning them that allegedly were published on "BP's website, in a video played by [sic] to potential customers and in . . . product data sheets."  (*Id.* ¶¶ 35-36.)  These statements allegedly were "false," and, according to the Complaint, "Plaintiffs and members of the Class relied on these representations and warranties and in the absence thereof they would not have . . . purchased the Solar Panels or purchase[d] properties on which the Solar Panels were installed at a premium price."  (*Id.* ¶ 37.)  The Complaint, however, nowhere alleges which, if any, of the cited statements were seen by any of the three plaintiffs or when or in what circumstances such plaintiff allegedly saw them.[2]  Nor does the Complaint state — apart from date ranges during which certain of the statements allegedly could be accessed on BP's website — whether, in what manner, or how frequently any of the cited statements were allegedly viewed by other potential purchasers.

## III.    The Purported Defect And BP's Alleged Response

Plaintiffs allege that "[a]s BP received an increasing number of claims arising from the failure of its Solar Panels," it began to make certain compensation offers to purchasers and issued a Product Advisory "to communicate a potential risk when using certain BP Solar modules in specific types of installations."  (*Id.* ¶¶ 42, 45.) Plaintiffs complain that these offers and the advisory allegedly were inadequate and resulted in a suppression of claims.  (*Id.* ¶¶ 42-54.)  However, none of the three plaintiffs are alleged to have seen or relied on BP's advisory and BP's actual

---

[2] The Complaint provides that, in June 2005, "Allagas saw an advertisement for the BP Solar Home Solution" while shopping at Home Depot, but does not specify what the alleged advertisement stated.  (Compl. ¶ 55.)

warranty offers to those two plaintiffs who received offers under the warranty program were not unreasonable or grossly inadequate.

Plaintiffs further allege that, because BP is no longer manufacturing solar panels, it is no longer able to honor its warranty. (Compl. ¶ 26.) Plaintiffs, however, do not acknowledge or address the language of BP's Warranty entitling it to replace or supplement existing BP panels with "an equivalent product" and, elsewhere in the Complaint, they affirmatively state that replacement of failed BP panels with "solar panels manufactured by others" is an "effective remedy for breach of the Warranty." (*Id.*)

## IV. The Three Plaintiffs' Claims And The Purported Classes

### A. Allagas

Allagas purchased his solar panels from Home Depot on June 28, 2005. (Compl. ¶ 56.) These panels were covered by a five (5) year Defect Warranty and a Power Warranty warranting twelve (12) years performance at a minimum of 90% output and twenty-five (25) years performance at a minimum of 80% output. (*Id.* ¶ 23.) Some eight years after his purchase, on September 19, 2013, the panels manifested an alleged defect -- generating less than the "warranted energy output." (*Id.* ¶ 57.) Allagas does not contend that the panels malfunctioned in any other way, and does not allege that they caused any fire.

On October 24, 2013, Allagas's counsel notified BP that "four of the solar panels installed at [his] home failed as a result of a junction box defect." (Compl. Ex. K, at 2.) In a November 5, 2013 email, BP allegedly offered "Allagas $6,720 to purchase and install new panels." (*Id.* ¶ 61.) Allagas then filed this lawsuit, seeking the cost of replacing the solar panels and damage for loss of power production and unreimbursed investigation costs. (*Id.*) Allagas did not notify BP of any investigative costs incurred or any claim for lost power production until he filed suit.

As shown by the November 5, 2013 email referenced in the Complaint, Allagas received a BP offer under its warranty program allowing him to select between either

(1) the monetary payment referenced in the Complaint or (2) "replace[ment of] all (24) BP modules with a 3rd party supplier" who would "replace the modules, with the warranty continuing for the remaining years of [the] current warranty."[3]  (RJN Ex. 2 at 13.)  The Complaint nowhere mentions BP's offer of alternative (2) to Allagas.  He did not take BP up on its warranty offer before filing suit.

**B.    Ray**

Ray purchased his solar panels from Diablo Solar Services in April 2005. (Compl. ¶ 62.)  These panels were covered by a five (5) year Defect Warranty and a Power Warranty warranting twelve (12) years performance at a minimum of 90% output and twenty-five (25) years performance at a minimum of 80% output.  (*Id.* ¶ 23.)  At an unspecified time,[4] Ray notified BP that the junction boxes for certain of his panels had failed.  Ray does not contend that the panels malfunctioned in any other way, including by causing any fire.

On September 9, 2013, BP allegedly offered Ray "$4,896.00 to replace his solar system."  (*Id.* ¶ 64.)   Ray then filed this lawsuit, seeking the cost of replacing the solar panels and damage for loss of power production.  (*Id.*)  Ray never notified BP of any claim for lost power production until he filed suit.

---

[3] BP's November 5, 2013 email to Allagas extending its warranty offer to him is judicially noticeable (*see* RJN) and must be considered under the rule of completeness.  *See* Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.").  "[E]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

[4] While the Complaint does not state when Ray's panels failed, it does refer to communications between BP and Ray regarding the alleged failure of his panels in September 2013, including an offer by BP to replace his system.  Absent any other facts, it is not unreasonable to infer that the panels failed not long before his correspondence with BP on this subject.  *See, e.g.*, *Sanchez v. Andruss*, 2013 WL 3152395, at *4 n.12 (N.D. Cal. June 19, 2013) (drawing "reasonable inference" of the unstated date of a conversation from context.)

As shown by the September 9, 2013 email referenced in the Complaint,[5] Ray received a BP offer under its warranty program allowing him to select between either (1) the monetary payment referenced in the Complaint or (2) "replace[ment of] all 18 [BP] modules with a 3rd party supplier" who would "replace the modules, with the warranty continuing for the remaining years of [the] current warranty."  (RJN Ex 3.)  The Complaint nowhere mentions BP's offer of alternative (2) to Ray.  He did not seek to take BP up on its warranty offer before filing suit.

**C.    Mohrman**

Mohrman purchased his home in 2012.  (Compl. ¶ 65.)  The home had been previously fitted with Solar Panels purchased from Next Energy Corporation, which had been installed by a prior owner in January 2002.  (*Id.*)  These panels were covered by a two (2) year Defect Warranty and a Power Warranty warranting twelve (12) years performance at a minimum of 90% output and twenty-five (25) years performance at a minimum of 80% output.  (*Id.* ¶ 23.)

Sometime after June 1, 2012, the system at Mohrman's home stopped generating electricity.  (*Id.* ¶ 66.)  Mohrman does not allege that the panels malfunctioned in any other way, including by causing any fires.

On January 18, 2013, Mohrman's counsel notified BP of his purportedly defective panels.  (*Id.* ¶67.)  Mohrman does not allege that he ever contacted BP's warranty representative, as required under BP's Warranty.  (*See, e.g.*, RJN Ex. 1 at 9.)  Thereafter, Mohrman filed this suit, seeking the cost of replacing the solar panels and increased energy costs.  Mohrman never notified BP of any claim for lost power production until he filed suit.

---

[5] As in the case of BP's November 2013 email to Allagas, its September 2013 email to Ray is judicially noticeable (*see* RJN) and must be considered under the rule of completeness.  *See supra* at note 4.

### D.     The Purported Classes

Plaintiffs purport to represent "thousands of purchasers" of BP solar panels. (*Id.* ¶ 78.)  These include consumers, commercial buyers, Direct Purchasers and Subsequent Purchasers, as follows:

> **Initial Purchaser Subclass:**  All persons or entities who purchased Solar Panels for installation in California.
>
> **Initial Purchaser Consumer Subclass:**  All persons who purchased Solar Panels for installation in California on a private residence.
>
> **Home Depot Subclass:**  All members of the Initial Purchaser Subclass who purchased Solar Panels from Home Depot.
>
> **Home Depot Consumer Subclass:**  All members of the Home Depot Subclass who purchased the Solar Panels for installation in California on a private residence.
>
> **Subsequent Purchaser Subclass:**  All Persons or entities who purchased buildings in California on which the Solar Panels were first mounted.
>
> **Subsequent Purchaser Consumer Subclass:**  All persons who purchased private residences in California on which the Solar Panels were first mounted.

(*Id.* ¶ 70.)

## V.     Causes Of Action

Plaintiffs allege a number of different claims by and against various parties, as summarized in the chart below.

| Cause of Action | Plaintiffs | Defendants |
|---|---|---|
| Count 1:  Violation of the CLRA | Allagas, Ray, and the Consumer Subclasses | BP only |
| Count 2:  Breach of Express Warranty | All plaintiffs and the entire class | BP only |
| Count 3: Breach of Express Warranty under the Magnuson-Moss Act | All plaintiffs and the Consumer Subclasses | BP only |
| Count 4:  Breach of Express Warranty under the Song-Beverly Act | All plaintiffs and the Consumer Subclasses | BP only |

| Cause of Action | Plaintiffs | Defendants |
|---|---|---|
| Count 5:  Breach of Implied Warranty | All plaintiffs and the entire class | BP and Home Depot |
| Count 6:  Breach of Implied Warranty under the Magnuson-Moss Act | All plaintiffs and the Consumer Subclasses | BP and Home Depot |
| Count 7:  Breach of Implied Warranty under the Song-Beverly Act | All plaintiffs and the Consumer Subclasses | BP and Home Depot |
| Count 8:  Violation of the UCL | All plaintiffs and the entire class | BP only |

<u>Argument</u>

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the claims alleged in the complaint." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1093 (N.D. Cal. 2007).  "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted) (internal quotation marks omitted).  Although the Court must accept all well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In addition, dismissal without leave to amend is appropriate where plaintiff is not able to cure his defective pleading by amendment.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532-33 (9th Cir. 2008).

**I.    Plaintiffs' Claims For Express And Implied Warranty Should Be Dismissed**

Plaintiffs allege three express warranty claims against BP alone: claims (a) based on contract, (b) based on contract and the federal Magnuson-Moss Act, and (c) based on contract and California's Song-Beverly Act.  (Compl.¶¶ 21-24.)  In addition, plaintiffs allege three implied warranty claims against both BP and Home Depot: claims (a) based on an implied warranty of merchantability, (b) based on this

- 8 -

implied warranty and the Magnuson-Moss Act, and (c) based on this implied warranty and the Song-Beverly Act.  (*Id.* ¶¶ 24-27.)

Though these claims have different labels, they fail for the same reasons.  *See Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *11-13 (N.D. Cal. Oct. 13, 2009) (dismissing express and implied warranty claims under the Song-Beverly Act and an express warranty claim under the Magnuson-Moss Act because plaintiffs failed to allege valid underlying state law warranty claims); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir.2009) ("The substantive elements [of implied warranty claims] are the same under the Song-Beverly Act and Magnuson-Moss Act."); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 833 (2007) (affirming dismissal of express warranty claims under the Magnuson-Moss Act because plaintiff failed to assert valid state law warranty claims); *Brilliant v. Tiffin Motor Homes, Inc.*, 2010 WL 2721531, at *4 (N.D. Cal. July 7, 2010) ("Magnuson-Moss defines the substantive scope of the implied warranty claim under the federal act to be "an implied warranty arising under State law.") (citations omitted). Plaintiffs' claims under contract law, the Magnuson-Moss Act and the Song-Beverly Act require that a warranty claim be timely.  (*Infra* at 9-12.)  Plaintiffs' express warranty claims further require factual allegations that such claims were tendered to defendants in circumstances providing an opportunity to cure any defect.  (*Infra* at 13-15.)  Plaintiffs' implied warranty claims require factual allegations showing that vertical privity existed between each plaintiff and defendant.  (*Infra* at15-16.) Plaintiffs have not and cannot plead the required facts.

### A.   Plaintiffs' Claims Based On Breach Of The Defect Warranty And Implied Warranties Fail Because They Are Untimely

A warranty claim requires that the product's alleged defect manifest itself during the warranty period.  A defect that appears outside the specified warranty period is not actionable.  (*Infra* at 10-12.)  The named plaintiffs' warranty claims

based on the express Defect Warranty and all of their Implied Warranty claims[6] are untimely because the purported product defect did not manifest itself until after the warranty period had elapsed.

> 1. Plaintiffs Fail To Allege A Breach Of The Defect Warranty Because The Alleged Defect Manifested Itself After The Warranty Period Elapsed

"The general rule is that an express warranty 'does not cover repairs made after the applicable [warranty] period." *Daugherty*, 144 Cal. App. 4th at 832-33 (affirming dismissal of express warranty claims under common law and the Magnuson-Moss Act because plaintiff did not tender the warranty claim within the warranty period); *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1141, 1143 (N.D. Cal. 2010) (dismissing express warranty claims under the Song-Beverly Act because plaintiffs did not tender the warranty claim within the warranty period).

Plaintiffs allege that "[b]ecause the Solar Panels either have failed or are certain to fail within their expected useful life, BP is in breach of . . . the Defect Warranty" even if the defect appeared outside the warranty period.  (Compl. ¶ 100.) In *Tietsworth*, the court rejected this very argument, noting that if "a claim based upon 'latent defects' in products that are governed by an express warranty . . . was recognized, it would 'eviscerate any limitations put in place'" on such a warranty. 720 F. Supp. 2d at 1141 (dismissing Song-Beverly express warranty claims; plaintiffs may not assert "warranty claims for latent defects under a warranty that . . . covers

---

[6]  Plaintiffs refer to implied warranties requiring the product to be "fit for the ordinary purpose for which such products were sold" (Compl. ¶ 124), "fit for their intended use" (*id*. ¶ 127; *see also id*. ¶ 136), and "to perform the tasks for which [the products] were intended" (*id*. ¶ 146).  Under Cal. Com. Code § 2315, an implied warranty of fitness for a particular purpose can exist only when, at the time of contracting, the seller has knowledge of (a) a particular purpose for which goods are required, and (b) that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods for such purpose.  Cal. Com. Code § 2315.  "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business. . . ." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995).  Because plaintiffs identify no such "particular purpose" for which they acquired Solar Panels apart from the general purpose of generating electricity, no implied warranty of fitness claim can exist as a matter of law.

only defects that result in product failure during the warranty period"); *see also Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011) (dismissing express warranty claims where defect manifested over four years after warranty period expired).  The Ninth Circuit is in accord: "[the Court] can hardly say that the warranty is implicated when the item fails after the warranty period expires.  The product has performed as expressly warranted."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022-23 (9th Cir. 2008).

None of plaintiffs' Defect Warranty claims are timely because plaintiffs either concede that the alleged defects appeared only after that warranty elapsed or do not allege facts showing that any defect manifested itself during the warranty period:

- **Allagas**.  Solar Panels purchased with a five-year Defect Warranty on June 28, 2005.  (Compl. ¶¶ 23, 56.)  The alleged defect did not manifest itself until eight years later.  (*Id.* Ex. K at 2.)

- **Ray**.  Solar Panels purchased with a five-year Defect Warranty in April 2005.  (*Id.* ¶¶ 23, 62.)  Ray not does allege that any defect manifested itself during the warranty period, and his correspondence with BP regarding this issue took place more than eight years after he purchased the panels.  (*Supra* at 5-6.)

- **Mohrman**.  Solar Panels at Mohrman's home came with a two-year Defect Warranty and were installed on November 26, 2001.  (Compl. ¶¶ 23, 65.)  The alleged defect did not manifest itself until ten years later.  (*Id.* ¶ 66.)

    2.    Plaintiffs' Implied Warranty Claims Are Untimely Because The Alleged Defect Manifested More Than One Year After Purchase

Under California law, the duration of an implied warranty must be "[n]o less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer."  Cal. Civ. Code 1791.1(c).[7]  Applying this rule, this Court has held that

---

[7]   The Fifth Cause of Action, the class-wide claim for breach of implied warranty, is governed by common law and the California Commercial Code, which provides no "duration" for the implied warranty period.  The product is either merchantable or not (and a breach of the implied warranty occurs or not) at the time of delivery.  *See* Cal.

(Footnote Cont'd on Following Page)

the "duration of the implied warranty of merchantability . . . in no case is shorter than sixty days or longer than one year following sale of the goods."  *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 1363548, at *3 (N.D. Cal. May 14, 2009); *Marchante*, 801 F. Supp. 2d at 1021 (dismissing plaintiffs' implied warranty claims under common law and Song-Beverly Act because "[t]he implied warranty . . . had a one year duration . . . [and plaintiffs] . . . d[id] not report any issues arising during the one year period").  The same analysis applies under the Magnuson- Moss Act.  Because this Act does not specify a different duration for implied warranty claims than that provided by state law, implied warranty claims under the Magnuson–Moss Act are governed by the warranty period applicable under state law.  *See Clemens*, 534 F.3d at 1022 (stating that "claims under the Magnuson-Moss Act stand or fall with [plaintiff's] express and implied warranty claims under state law).

As demonstrated above (*supra* at 10-11.), all three plaintiffs concede that the purported defects first appeared more than one year after the panels were purchased.  Their implied warranty claims against BP and Home Depot fail as a matter of law.[8]

---

(Footnote Cont'd From Previous Page)

Com. Code § 2725(2).  However, the implied warranty of merchantability as to non-consumer plaintiffs has been disclaimed.  (RJN Ex. 1 at 9, Sec. 3.B.)  Under the Commercial Code, an implied warranty may be expressly disclaimed in a conspicuous manner that is apparent on the face of the written warranty.  Cal. Com. Code § 2316(2).  BP's disclaimers here are enforceable under California law because they were prominently displayed.  (RJN Ex. 1 at 9, Sec. 3.B.)

[8] Certain courts have, in limited circumstances not present here, allowed tolling of the duration of implied warranty claims.  *See, e.g., Ehrlich v. BMW of North America*, 801 F.Supp.2d 908, 925 (C.D. Cal. Aug. 11, 2010).  In *Ehrlich*, the court deferred the one year period for plaintiffs to assert implied warranty claims until after the applicable express warranty period had expired because the defendant's failed effort to satisfy its express warranty obligations prevented consumers from learning that the product was not merchantable until the express warranty period ended.  Other courts facing similar issues since *Ehrlich* have declined to follow this approach.  *See, e.g., Marchante*, 801 F. Supp. 2d at 1020.  Further, *Ehrlich* is distinguishable because plaintiffs here have not alleged that BP attempted, but was unable to, satisfy its express warranty obligations during the express warranty period.  (*Infra* at 13-15.)

### B.   Plaintiffs' Express Warranty Claims Also Fail With Respect To Allagas and Ray Because BP Did Not Breach The Terms Of The Warranty

Plaintiffs' express warranty claims -- whether based on the Defect Warranty or the Power Warranty -- fail with respect to Allagas and Ray because BP offered to cure the alleged defects in compliance with its warranties and they declined this offer.

Where, as here, "[t]he nature of [the warranty] is such that a demand for performance by one party is a necessary condition precedent to the obligation of the other to perform . . . . non-performance is not a breach unless performance is due." *Campion v. Old Republic Home Prot. Co., Inc.*, 272 F.R.D. 517, 530 (S.D. Cal. 2011); *see Tietsworth*, 2009 WL 3320486, at *11, *13. "Where the buyer refuses to permit replacement . . . of defects or does not fulfill any requirements regarding such repair or replacement, the seller cannot be held liable for breach of warranty." *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, *5 n.5(N.D. Cal. June 5, 2009). In *Marchante*, the court dismissed plaintiffs' warranty claims for just this reason, stating:

> Plaintiffs here have failed to allege a breach of the Extended Warranty. None of the four named plaintiffs alleged that Sony either refused to repair any covered defects or refused to replace any televisions suffering from covered defects. Plaintiffs Marchante and Sefo both declined Sony's offer of a refurbished television. Plaintiff Ochoa alleges that Sony refused to repair the television, but does not allege that Sony refused to replace the television. And because Sony retains this course of action until March 31, 2011, Ochoa has failed to allege breach of warranty.

801 F. Supp. 2d at 1020.

Here, BP provided offers of a replacement solar system to both Allagas and Ray. In acknowledging BP's action regarding Allagas, the Complaint describes only half of BP's actual offer to him. (Compl. ¶ 61.) While the Complaint mentions BP's monetary offer of $6,720 "to purchase and install new panels" (*id.*), which it describes as inadequate, it conspicuously omits BP's alternative offer to provide Allagas with a full replacement system: "If you choose not to take this option [the

$6,270], we can replace all (24) BP modules with a 3rd party supplier, and our service provider would replace the modules . . . ."  (RJN Ex. 2 at 13.)[9]  In response to Ray's warranty claim, BP responded in the same way, allowing him choose between a monetary offer ($4,896 to purchase and install new panels) or an alternative offer of a full replacement system.  (RJN Ex. 3.)  Again, the Complaint mentions only BP's monetary offer, which it describes as inadequate, and not the offer of a replacement system.  (Compl. ¶ 64.)

BP's offers to Allagas and Ray discharged its obligations under its Warranty. Under both the Defect Warranty and Power Warranty, BP may discharge its obligations if a defect should manifest itself by repairing or replacing the solar panels at issue.  (*Id.* ¶ 25.)  Because BP has satisfied its warranty obligations to Allagas and Ray, they are barred from pursuing any express warranty claim against BP.  *Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) (replacement is not inadequate when that "is exactly what the . . . Warranty provides"); *Baba v. Hewlett Packard Co.*, 2012 WL 5336971, at *8 (N.D. Cal. Oct. 26, 2012) (dismissing plaintiffs' express warranty claims because, "rather than shirking its express warranty obligations, [the defendant] was willing to fulfill them").

BP's warranty offers to Allagas and Ray also belie plaintiffs' contention that it is not possible for BP to satisfy its warranty obligation when a Solar Panel has failed. (Compl. ¶ 26.)  BP's warranty provides explicitly that failed solar panels may be replaced with "an equivalent product" (RJN Ex. 1 at 8, Sec. 1.A.), and the Magnuson-Moss Act provides that "[t]he term 'replacement' means furnishing a new consumer product which is identical or reasonably equivalent to the warranted consumer product."  15 U.S.C. § 2301(11).  Indeed, the Complaint concedes that replacement

---

[9] Plaintiffs cannot escape this fact by simply omitting it from the Complaint and alleging only one of the options that BP presented to them.  *See supra* at note 3.

with equivalent solar panels is an "effective remedy for breach of the Warranty." (Compl. ¶ 26.)

After receiving warranty claims on behalf of Allagas and Ray, BP offered to do exactly what the warranty requires.  Allagas's and Ray's warranty claims fail as a matter of law.[10]

### C.   Plaintiffs' Implied Warranty Claims Fail Because All Plaintiffs Lack Vertical Privity With BP And Ray And Mohrman Lack Vertical Privity With Home Depot

"[U]nder California law, [plaintiffs] must establish privity in order to assert a claim for implied warranty . . . ."  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (holding that a plaintiff alleging breach of implied warranty must "occupy adjoining links" with the defendant in the "chain of distribution"); *Clemens*, 534 F.3d at 1024 (holding that "[a] lack of vertical privity requires the dismissal of [plaintiff]'s implied warranty claims."); *Tietsworth*, 2009 WL 3320486, at *12 ("Vertical privity is a necessary element to an implied warranty claim" under Song-Beverly Act.); *Chandler v. Chiron Corp.*, 1997 WL 464827, at *7 (N.D. Cal. July 28, 1997) ("vertical privity is a prerequisite in California for recovery on a breach of implied warranty theory").

Plaintiffs' allegations demonstrate unequivocally that they are not in vertical privity with BP.  Allagas purchased his Solar Panels from Home Depot.  (Compl. ¶ 56.)  Ray purchased his Solar Panels from Diablo Solar Services.  (*Id.* ¶ 62.)  And Mohrman alleges that the solar panels were already installed when he purchased his home.  (*Id.* ¶ 65.)  Accordingly, BP and plaintiffs do not "occupy adjoining links" in the "chain of distribution," and no vertical privity exists between plaintiffs and BP.

---

[10] As discussed above, Mohrman failed to submit a demand under BP's warranty program, instead making a demand through his counsel pursuant to the California CLRA that BP investigate and replace all solar panel installations using certain BP solar panels acquired by California consumers.  While BP believes that his failure to present an appropriate warranty claim bars him from asserting any claim under BP's Warranty, this issue seems best raised at a later stage in the proceedings when a full factual record can be presented.

Ray and Mohrman also lack vertical privity with Home Depot since they bought their panels from Diablo Solar Services and the previous homeowner, respectively. So their implied warranty claims fail as to Home Depot as well.

## II.   Plaintiffs CLRA And Fraudulent Prong Of UCL Claims (Counts 8 and 9) Fail Because The Alleged Misleading Statements Are Non-Actionable Puffery And Plaintiffs Have Failed To Plead Reliance Upon Them With The Required Particularity

The gravamen of plaintiffs' CLRA and UCL fraudulent prong claims is that BP purportedly made misrepresentations and took other actions to deceive purchasers regarding the quality and reliability of its solar panels. Specifically, in connection with their CLRA claims, plaintiffs allege that BP misrepresented "through advertising and other express representations that the Solar Panels had benefits or characteristics that they did not actually have and were of a certain standard or quality, when they were not." (Compl. ¶ 93.) With respect to the fraudulent prong of the UCL, plaintiffs allege that "[t]he advertising and sale of the Solar Panels by use of brochures and warranty documents . . . was likely to and did deceive purchasers into believing that the Solar Panels would be durable and provide safe and reliable power for decades." (*Id.* ¶ 155.) These allegations fail to state a claim as a matter of law.

### A.   All Of The Purported Misleading Statements In The Complaint Are Non-Actionable Puffery

"'Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable.'" *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing CLRA and UCL claims because "generalized and vague statement of product superiority such as 'superb, uncompromising quality' and 'faster, more powerful, and more innovative than competing machines' are non-actionable puffery") (citations omitted); *Anunziato* , 402 F. Supp. 2d at 1140 (ruling that the terms "quality," "reliability," and "performance" are non-actionable puffery).

In *Anunziato*, the court analyzed a user manual that accompanied the defendant computer manufacturer's laptops, which stated:

> We are sure that you'll be pleased with the outstanding quality, reliability, and performance of your new notebook. Each and every eMachines notebook uses the latest technology and passes through the most stringent quality control tests to ensure that you are provided with the best product possible.

402 F. Supp. 2d at 1139.  Plaintiffs claimed that these were actionable misrepresentations because they were untrue.  The court, however, found that the terms "high-quality," "reliability," "performance," and "latest technology," are non-actionable puffery.  *Id.* at 1140-41.

Similarly, in *Tietsworth*, this Court held that "statements that [washing machines] are 'designed and manufactured for years of dependable operation,'" "save you time by allowing you to do fewer, larger loads," and "would save the consumer energy and water" are considered non-actionable puffery.  2009 WL 3320486, at *7-8 & n.5 (dismissing plaintiffs' UCL and CLRA claims).  The Court noted that any contrary ruling would mean that "virtually any product malfunction could form the basis of a claim of fraudulent misrepresentation" where there is no allegation that the product does not perform as represented "while functioning," a result that would turn product advertising on its head.  *Id.* at *7 n.5.

Plaintiffs are seeking relief for virtually the same conduct that *Anunziato* rejected: plaintiffs attached "[e]xamples of the representations taken from the BP website" and "relevant Product Data Sheets" to their Complaint.  (Compl. ¶ 36.)  These "advertisements" included the following statements:

- BP solar panels will "drastically reduce or eliminate your electric bills."  (*Id.* ¶ 35.a.)

- BP solar panels will "increase the value of your home" and allow homeowners to recover the cost of the Solar Panels "when you sell the house."  (*Id.* ¶ 35.b.)

- "No other system can operate at a higher level of safety than those offered by BP Solar." (*Id.* ¶ 35.d.)
- "Quality, Reliability, and Performance in Every Product." (*Id.* ¶ 35.e.)
- "Our proven junction box design provides reliable electrical connections . . . ." (*Id.* ¶ 35.f.)
- "Our technology is proven around the globe." (*Id.* ¶ 35.g.)
- "You can count on our technology . . . ." (*Id.* ¶ 35.h.)

These are indistinguishable from the statements that this Court held were non-actionable puffery in *Tietsworth* and the same result is warranted here.

### B.   Plaintiffs Have Not, As They Must, Alleged Their Fraud Claims With Particularity

Rule 9(b) mandates that "the circumstances constituting fraud or mistake" shall be stated with "particularity." Fed. R. Civ. P. 9(b). Rule 9(b)'s requirements apply to both federal and state law claims, including state law claims for alleged violations of the CLRA and UCL where such claims are based on fraudulent conduct. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) ; *Rahman v. Mott's LLP*, 2014 WL 325241, at *8 (N.D. Cal. Jan. 29, 2014) ("The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard applies to claims for violation of the UCL, FAL or CLRA that are grounded in fraud.").

To satisfy Rule 9(b)'s requirements, plaintiffs must not only plead the "who, what, when, where and how" of BP's conduct, it must provide sufficient "detail and specificity" regarding the conduct. *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 624, 627 (N.D. Cal. 2011). For example, in *Wang*, this Court held that it is not enough for plaintiffs to "provide[] a time frame in which [defendants] allegedly engaged in deceptive conduct," they must instead "allege when in that period [t]he[y] viewed, read, or otherwise came to rely upon [defendant]'s representations." *Id.* at 627. Moreover, this court noted that a plaintiff's references "to a wide range of

marketing materials" is insufficient and held that plaintiffs must specify "which materials contain the relied-upon misrepresentations or omissions and when [plaintiffs] relied upon them."  *Id.* at 628 (dismissing CLRA and UCL claims for lack of particularity).

The factual allegations supporting plaintiffs' CLRA and UCL fraudulent prong claims are on all fours with *Wang*.  Here, plaintiffs do not allege which, whether, or when they "viewed, read, or otherwise came to rely upon" the alleged misrepresentations.  Plaintiffs also reference "a wide range of marketing materials" (*Id.*), but do not allege that they reviewed or relied upon any such materials.

Moreover, plaintiffs have not alleged purported omissions/concealment claims with particularity.  "At best, it appears that [BP] was aware of a[n] . . . issue [with the solar panels] and arguably may have not acted as urgently as possible to remedy the defect.  Such allegations are insufficient to state a claim for fraudulent concealment." *Stearns*, 2009 WL 1635931, at *10.  As the allegations in the Complaint reveal, BP disclosed the potential issues with the solar panels in 2012 (Compl. ¶ 45) and extended offers of replacement in response to warranty claims.  Under similar circumstances, this Court dismissed the concealment claims in *Stearns*, finding that "the exhibits attached to the FAC [were] inconsistent with Plaintiffs' concealment claim, as they contain[ed] statements indicating that [the defendant] was aware of a possible [defect], disclosed this potential issue in public filings, and extended offers of repair or refund in order to alleviate customer complaints."  *Stearns*, 2009 WL 1635931, at *10.[11]

Plaintiffs' fraud-based UCL and CLRA claims are accordingly not pled with the requisite particularity and should be dismissed on that ground.

---

[11] This Court has also rejected plaintiffs' argument here that BP tried to "suppress claims" (Compl. ¶¶ 50-54.) by asking claimants to return their defective solar panels. *Stearns*, 2009 WL 1635931, at *9 ("return of a defective product has been recognized by courts as a standard business practice, serving many legitimate business purposes.").

1
2

**III.    The Unlawful And Unfair Prongs Of Plaintiffs' UCL Claims (Count 8) Fail Because All Of The Unlawful Predicate Violations Fail And BP's Conduct Is Not Unfair**

3    Plaintiffs also allege UCL violations under the unlawful and unfair prongs.

4  Those claims also fail because, as shown above, all of the purported unlawful

5  predicates fail and plaintiffs have not been injured by any of the alleged unfair

6  conduct.

7
8

**A.    The Unlawful Prong Fails Because Plaintiffs Have Not Alleged A Violation Of The CLRA, Magnuson-Moss Act Or Song-Beverly Act**

9    "The unlawful prong of the UCL 'borrows violations of other laws and treats

10  them as unlawful practices,' which the UCL then 'makes independently actionable.'"

11  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858-59 (N.D. Cal. 2012).  If the

12  predicate laws supporting a violation of the unlawful prong of the UCL fail, the UCL

13  claim fails as well.  *Stearns*, 2009 WL 1635931, at *16 (dismissing unlawful prong

14  claim because the underlying statutory violations were "subject to dismissal");

15  *Daugherty*, 144 Cal. App. 4th at 837 (holding that plaintiff "cannot state a violation

16  of the UCL under the 'unlawful' prong" because the court had rejected plaintiff's

17  claim that defendants conduct was a violation of either predicate statute).

18    Plaintiffs allege that "BP's conduct was unlawful because it violated the

19  Consumer Legal Remedies Act, Magnuson-Moss Warranty Act and Song-Beverly

20  Consumer Warranty Act."  (Compl. ¶ 154.)  As demonstrated above (*supra* at 8-19),

21  plaintiffs have not alleged any such violations.  Accordingly, plaintiffs' unlawful

22  prong UCL claims fail as a matter of law.

23
24

**B.    The Unfair Prong Fails Because Plaintiffs Have Not Been Harmed By The Alleged Unfair Conduct**

25    Plaintiffs base their claim under the unfair prong of the UCL on BP's

26  "enforcement and threatened enforcement of the Warranty Exclusions, the Claim

27  Suppression Strategy and the understatement and nondisclosure of the risks of fire

28  resulting from the failure of the Solar Panels."  (Compl. ¶ 161.)  They have not,

however, alleged that any of them have been impacted by any of these things.  (*Supra* at 4-6.)  Accordingly, they do not have standing to bring such a claim.  Bus. & Prof. Code § 17204 (a person has standing to sue under the UCL only if he "has lost money or property *as a result of* the unfair competition") (emphasis added); *Wright v. Gen. Motors Acceptance Corp.*, 2013 WL 6137482, at *2-3 (9th Cir. Nov. 22, 2013) (affirming dismissal of UCL claims where plaintiff had not established a causal connection between alleged economic injury and any unfair competition.)

   None of the named plaintiffs has alleged that a fire has resulted at their homes because of the failure of the solar panels.  (*Supra* at 4-6.)  None of them claim that they saw or read the allegedly misleading product advisories.  (*Id.*)  And BP's warranty offers to the two plaintiffs under the warranty program were not unreasonable or grossly inadequate.  (*Id.*)  Further, plaintiffs have not alleged that BP has enforced any of the Warranty Exclusions as to them.  (*Id.*)  At most, plaintiffs have alleged that BP has not offered to pay them incidental or consequential damages, but they have not alleged any facts showing that they ever notified BP of such damages, let alone that BP refused to give them such compensation because of the disclaimer of consequential damages in the warranties.[12]

   Because plaintiffs have not suffered any harm because of the alleged unfair conduct, their UCL claims under the unfair prong fail as a matter of law.

---

[12] Moreover, the limitations on consequential damages are not unenforceable under the Magnuson-Moss or Song -Beverly Acts.  In pertinent part, the Magnuson-Moss Act prohibits the exclusion of consequential damages only where such exclusions do not appear conspicuously on the face of the written warranty.  15 U.S.C. § 2304(a)(3).  That is not present here: the disclaimer is conspicuous on the face of the warranty.  (RJN Ex. 1 at 9, Sec.3.B.)  The Song Beverly Act makes unenforceable disclaimers of consequential damages in only two situations, none of which is present here: 1) for injury to the buyer of consumer goods resulting from a warranty breach; and 2) loss resulting from the buyer's general or particular requirements and needs of which the seller at the time of contracting knew or had reason to know.  Cal. Civ. Code § 1794(b); *see also Stearns*, 2009 WL 1635931, at *6 (finding enforceable a consequential damage disclaimer in a warranty for consumer mattresses where no personal injury or claim for breach of warranty of fitness for a particular purpose was alleged).

Conclusion

      For the foregoing reasons, BP respectfully requests that the Court grant this motion to dismiss in its entirety.


Dated:  February 27, 2014.               ARNOLD & PORTER LLP


                            By:  /s/ Matthew T. Heartney
                                  Matthew T. Heartney
                                  Alex Beroukhim
                                  Attorneys for Defendant
                                  BP SOLAR INTERNATIONAL, INC.
                                  and HOME DEPOT U.S.A., INC.