1  David M. Birka-White (State Bar No. 85721)
   dbw@birka-white.com
2  Stephen Oroza (State Bar No. 84681)
   soroza@birka-white.com
3  Mindy M. Wong (State Bar No. 267820)
   mwong@birka-white.com
4  BIRKA-WHITE LAW OFFICES
   65 Oak Court
5  Danville, CA 94526
   Telephone:  (925) 362-9999
6  Facsimile:  (925) 362-9970

7  Attorneys for Individual and Representative
   Plaintiffs Michael Allagas, Arthur Ray, and
8  Brett Mohrman

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11  MICHAEL ALLAGAS, ARTHUR RAY          Case No.  3:14-cv-00560-SI
    and BRETT MOHRMAN, on behalf of
12  themselves and all others similarly situated,    **FIRST AMENDED COMPLAINT FOR
                                          DAMAGES AND INJUNCTION**
13                 Plaintiffs,
                                          **CLASS ACTION**
14         vs.
                                          JURY TRIAL DEMANDED
15  BP SOLAR INTERNATIONAL, INC.,
    HOME DEPOT U.S.A., INC. and
16  DOES 1-10, inclusive,

17                 Defendants.

18

19         Plaintiffs MICHAEL ALLAGAS, ARTHUR RAY and BRETT MOHRMAN

20  ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

21     **I.      INTRODUCTION**

22         1.      This case arises out of the manufacture and sale of photovoltaic modules ("Solar

23  Panels") manufactured by Defendant BP Solar International, Inc. ("Defendant" or "BP") from

24  approximately 2001 to 2010.   The model numbers of the Solar Panels are identified in

25  **Exhibit A** attached hereto.

26         2.      A defect in a component of the Solar Panels – known as the junction box – causes

27  the Solar Panels to fail, resulting in a loss of electric current and serious safety risks, including the

28  risk of fire.  The Solar Panels cannot be repaired; they must be removed and replaced.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

3. BP has been aware of the defects alleged herein since at least 2003 but continued selling the Solar Panels until 2010.

4. Plaintiffs seek recovery on behalf of themselves and all California residents who purchased the Solar Panels or purchased properties on which the Solar Panels were installed (the "Class") for breach of express and implied warranties and for violation of the provisions of the California consumer protection and unfair business practice statutes.

**II.      PARTIES AND VENUE**

5. Plaintiff Michael Allagas ("Allagas") is a resident of San Bernardino, California. On December 23, 2005, Allagas purchased a BP Solar Home Solution® from Home Depot which included twenty-four (24) BP 4175B Solar Panels.

6. Plaintiff Arthur Ray ("Ray") is a resident of Brentwood, California.  On August 31, 2005, Ray purchased eighteen (18) BP SX 170B Solar Panels for installation at his home.

7. Plaintiff Brett Mohrman ("Mohrman") is a resident of Danville, California.  In June 2012, Mohrman purchased a home on which twenty (20) BP 2150S Solar Panels were installed.

8. BP is a Delaware corporation with its principal place of business in Houston, Texas.  Plaintiffs are informed and believe and thereon allege that BP is the successor by merger to BP Solar International LLC.  All references to BP herein refer to BP Solar International LLC or BP Solar International, Inc. as the context requires.

9. Between 2008 and 2011, BP had its principal place of business in San Francisco, California.  BP shut down production of the Solar Panels in 2010 and ceased to do business – except for the processing of claims related to the Solar Panels – in 2011.

10. Home Depot U.S.A., Inc. ("Home Depot"), is a Delaware corporation with its principal place of business in Atlanta, Georgia.

11. Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when they are

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 2 -                                          Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1    ascertained.  Plaintiffs are informed and believe that each of the fictitiously named Defendants is

2    responsible in some manner for the occurrences herein alleged and that the damages suffered by

3    Plaintiffs and the Class, were proximately caused by their conduct.

4         12.    Plaintiffs are informed and believe that all Defendants, including the fictitious Doe

5    Defendants 1 through 10, were at all relevant times acting as actual or ostensible agents,

6    conspirators, partners, joint venturers or employees of all other Defendants and that all acts

7    alleged herein occurred within the course and scope of that agency, employment, partnership, or

8    enterprise, and with the express or implied permission, knowledge, consent, authorization and

9    ratification of their co-Defendants.

10        13.    Venue in this County is proper under California Code of Civil Procedure § 395

11   because, *inter alia*: (1) Defendants BP and Home Depot are foreign corporations which have no

12   designated principal place of business in California; (2) Defendant BP contracted to perform the

13   obligations to Plaintiffs Ray and Mohrman and a substantial portion of its obligations to the

14   proposed Class in this County; and (3) Defendant Home Depot contracted to perform substantial

15   obligations to members of the Class in this County.

16        14.    Venue in this County is proper under Civil Code § 1780(d) because it is where the

17   transactions related to Plaintiffs Ray and Mohrman and a substantial portion of the transactions

18   between BP and the Class occurred.  Attached hereto as **Exhibits B and C,** respectively, are the

19   declarations of Ray and Mohrman establishing this Court as the proper venue for this action.

20        **III.    FACTUAL ALLEGATIONS**

21             **A.    The Latent Defect in the Solar Panels and its Effects**

22        15.    Solar Panels are installed on racks which are mounted on the roof or –

23   occasionally – on the ground.

24        16.    The Solar Panels are connected together by electric cables ("connecting cables") to

25   achieve a desired output voltage.   The failure of a single Solar Panel will cause the panels

26   connected to it to stop functioning, resulting in a substantial reduction of the capacity of the Solar

27   Panels to produce electricity.

28        17.    The connection between Solar Panels is made at a junction box attached to the

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 3 -                                    Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

back of each Solar Panel.  A defect in the junction box and the solder joints between the connecting cables causes the solder joints to overheat.

18.     The junction box fails when the solder joint connecting the cable and busbar fails. The failed joint causes electrical arcing to occur and generates temperatures of 2000-3000 degrees.  The electrical arcing results in an immediate total loss of the functionality of the Solar Panel and creates a serious fire safety risk.

19.     The heat caused by this failure melts the junction box, burns the cables and the Solar Panel and shatters the glass cover of the Solar Panel.  Attached hereto as **Exhibit D** are photographs of BP Solar Panel junction box failures.  If there is flammable material near the heat source, such a dry leaves, the junction box failure creates a high risk of fire.  Fires caused by junction box failures have already occurred and there is a substantial risk that they will occur in the future.

20.     Because of the defect in the junction box, all Solar Panels relevant to this litigation have failed or will fail before the end of their expected useful life.

21.     There is no way to repair the defect in the Solar Panels and restore their functionality.  The only means for addressing the failure of the Solar Panels is to remove them and replace them with other solar panels.

22.     The defect in the Solar Panels is latent and not discoverable until the customer experiences a junction box failure or fire.  Even when there is a junction box failure, substantial time can pass between the failure and discovery because the Solar Panels are on the roof and not typically monitored.

23.     BP ceased manufacturing solar panels of any kind in 2010.  BP maintains no inventory of Solar Panels.

### B.     BP's Knowledge and Suppression of the Defect in the Solar Panels

24.     In approximately 2000, BP engineers were instructed by senior management to cut the cost of producing the Solar Panels.  In 2001, BP substantially altered the design of its junction box so that it could be manufactured more cheaply.  Between 2001 and 2007, BP manufactured as many as two million Solar Panels using the new junction box design.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 4 -                                      Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

25.     The new junction box design eliminated parts that directly impacted the quality and safety of the Solar Panels.  Specifically, BP eliminated mechanical terminals which secured the large gauge connecting cables to the junction box.  The new design required that these cables be soldered to a flat and extremely thin plate (the "busbar") in the junction box.  Because soldering the cables to the busbar does not create a stable and effective connection, this design change made the junction box connection unstable and unsafe.

26.     As early as 2002, BP customers reported failures of the Solar Panels to their installers.  The installers reported the failures to their distributors, who in turn reported the failures to BP.  Installers also reported failures directly to BP when submitting warranty claims on behalf of their customers.

27.     During 2003, BP customers returned numerous Solar Panels with junction box failures.  The appearance of every returned Solar Panel was essentially identical – burned junction boxes and shattered glass – and was immediately understood by BP engineers to be caused by a defect in the design of the junction box.

28.     In or about 2003, BP engineers were instructed by their superiors to investigate the junction box failures.  BP engineers investigated the failures throughout 2003 and 2004 and regularly reported their findings to their superiors both orally and in writing.  BP engineers determined that the cause of the failures was the separation of the junction box solder joint connections.

29.     In 2003 and 2004, BP tested the junction box and duplicated the electrical arcing failures, proving that the junction box design was defective and created a fire safety risk.  BP engineers quickly understood that these junction box failures could not be repaired and such failures would increase over time.  BP's testing and analysis revealed that the cable to busbar connection was defective, disposed to premature failure and needed to be redesigned.   Over time, BP made some minor changes to the design, none of which substantially affected the safety or reliability of the junction box.

30.     Beginning in 2003 and repeatedly thereafter, these findings were brought to the attention of numerous BP employees, including Vice Presidents in the manufacturing, sales and

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 5 -                                         Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1    marketing, and engineering departments.  Many Presidents of BP were also informed of the

2    junction box defect.

3         31.    Contemporaneously with the discovery and investigation of the junction box

4    design defect, BP ramped up its capacity to manufacture and sell the Solar Panels.  Manufacturing

5    plants were operated or created in several locations including Maryland, India, Spain and

6    Australia.  Marketing plans were implemented worldwide.  BP specifically targeted California

7    consumers because of the large energy rebates and tax incentives being offered for installing solar

8    systems.

9         32.    Although it was aware of the junction box defect and its attendant safety risks, BP

10   chose not to stop production or inform its customers of the defect and safety risks.  Instead, BP

11   chose to proceed full speed ahead, operating its plants 24 hours a day.

12        33.    From at least 2003 forward, BP insisted that consumers return their defective Solar

13   Panels to BP whenever they asserted a warranty claim for replacement of a failed Solar Panel. In

14   this way, BP further covered up the known defect by preventing customers from conducting

15   independent tests of the Solar Panels which would have revealed the cause of failure.  Then, upon

16   receipt of the returned Solar Panels, BP routinely destroyed the evidence by discarding the

17   returned Solar Panels.

18        34.    By 2003, whenever a defective Solar Panel was removed by the installer and a

19   replacement solar panel was requested from BP under the terms of the Warranty, a BP claim form

20   had to be submitted with, among other things, the following information: (1) date of the claim,

21   (2) name of the distributor/dealer/installer, (3) product name and serial number, and (4) the cause

22   of the failure with photographs.  A copy of the BP claim form for defective panels is attached

23   hereto as **Exhibit E**.  The information was entered into a database.  Using the serial numbers, BP

24   is able to determine the date and manufacturing location for each Solar Panel.  This database

25   evidences BP's comprehensive knowledge of the junction box failure and its signature

26   appearance.

27        35.    While BP knew from at least 2003 that the junction box defect created a risk of

28   fire, as time passed, BP became aware of actual fires caused by the defect.  For example, in the

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 6 -                                                    Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1    summer of 2009, a junction box failure at a Solar Panel installation in Davis, California started a

2    grass fire which burned 30 acres.

3           36.     Although BP knew that the junction box defect represented a safety risk and would

4    ensure that consumers would not receive the benefits of ownership promised by BP (*see*

5    Paragraphs 39 and 51 *infra*), BP did not disclose the defect to its distributors, sellers, installers or

6    others in the chain of distribution.  Instead, BP actively concealed the defect and sold millions of

7    defective Solar Panels to consumers.  BP also told its distributors, sellers, and installers who

8    inquired about the cause of burned or blown Solar Panels that the junction box failures were

9    caused by a "bad batch of glass" or a "bad batch of diodes" rather than the defective junction box.

10   BP did not make any public disclosure of the defect until 2009 and only partial and highly-

11   misleading disclosures concerning the risk of fire until 2012.  *See* Paragraphs 72-75 *infra*.

12          37.     At all times relevant hereto, BP was under a continuous duty to disclose to

13   distributors, sellers, installers and end users: (1) the defect in the junction box, (2) the safety

14   issues related thereto, including the risk of fire, (3) the existence of numerous returns of Solar

15   Panels related to the junction box defect and (4) that fires had actually occurred as a result of the

16   defect.  BP had this duty because the facts it failed to disclose:  (1) are contrary to representations

17   made by BP that the Solar Panels were not defective in design or workmanship, that they would

18   produce the rated power for twenty-five years, that they were safe and that they had a track record

19   of safe operation; (2) relate to a safety issue; (3) were material facts in the exclusive  knowledge

20   of BP and unknown to anyone else; (4) were material and actively concealed by BP; and

21   (5) constituted information omitted from statements made by BP concerning the safety and

22   reliability of the Solar Panels.

23          38.     BP's refusal to correct the defective design of the junction box represented a

24   knowing subordination of the interests of consumers to safe and effective solar power to the

25   interest of BP in increased profit.  BP's failure to disclose the facts it omitted to disclose to

26   distributors, sellers, installers and end users was deliberate and unconscionable.

27          / / /

28          / / /

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 7 -                                    Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

### C.      Defendants' Warranties and Representations

#### 1.      The BP Warranty

39.     BP issued a written warranty (the "Warranty") for the Solar Panels which states that: (1) the Solar Panels will be "free from defects in materials and workmanship" for the term of the warranty (the "Defect Warranty"); and (2) the Solar Panels will produce at least ninety percent (90%) of their minimum peak power output for a period of years and at least eighty percent (80%) for a longer period from the date of installation (the "Power Warranty").  In Mohrman's case, the Defect Warranty was for a period of two years and the relevant periods of the Power Warranty were twelve (12) and twenty-five (25) years, respectively.  In Allagas' and Ray's case, the Defect Warranty was for a period of five years and the relevant periods of the Power Warranty were also twelve (12) and twenty-five (25) years.  A copy of the Warranty received by Ray is attached hereto as **Exhibit F**.

40.     The Warranty is enforceable by "(i) the first purchaser who has purchased the [Solar Panels] or (ii) by purchasers of buildings on which the [Solar Panels were] first mounted." Allagas and Ray are first purchasers of the Solar Panels and Mohrman purchased a property on which the Solar Panels were first mounted.  All Plaintiffs are thus entitled to enforce the provisions of the Warranty.

41.     The Warranty provides that: (1) in the event of a breach of the Defect Warranty, BP will repair or replace the Solar Panels or, at is option, refund the purchase price; and (2) in the event of a breach of the Power Warranty, BP will either (a) repair or replace the Solar Panels or (b) provide the purchasers with additional component(s) to bring the aggregate power output to at least the warranted percentage of the specified minimum power output.

42.     Because BP no longer makes the Solar Panels and there are no replacement products with similar dimensions available in the marketplace, BP cannot in fact replace the Solar Panels.  Nor is it possible for BP to repair the Solar Panels.  Accordingly, the remedies offered by the Warranty fail of their essential purpose, *i.e.*, to put the purchaser in the position he or she would have enjoyed but for the breach of the Warranty.  The only effective remedy for breach of the Warranty is to remove the existing Solar Panels and replace them with solar panels

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 8 -                    Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1   manufactured by others.

2       43.    The Warranty purports to limit the rights and remedies of purchasers of the Solar

3   Panels in the following particulars:

4       a.    BP disclaims responsibility for "the costs of any on-site labor and any costs

5             associated with the installation, removal, reinstallation or transportation of [the

6             Solar Panels] or any components thereof for service;"

7       b.    BP purports to disclaim any implied warranties, including the warranties of

8             merchantability and fitness for a particular use;

9       c.    BP purports to disclaim responsibility for "any special incidental, consequential or

10            punitive damages arising from the use or loss of use of or failure of [the Solar

11            Panels] to perform as warranted, including but not limited to damages for lost

12            services, cost of substitute services, lost profits or savings, and expenses arising

13            out of third-party claims;"

14      d.    The Warranty purports to limit BP's "maximum liability under any warranty,

15            expressed, implied, or statutory, or for any manufacturing or design defects" to

16            "the purchase price of the product;"

17      e.    The Warranty purports to provide that it is the "purchaser's exclusive remedy for

18            breach of warranty or for manufacturing or design defects;" and

19      f.    The Warranty purports to require that, "Any claim or dispute arising under or in

20            connection with this warranty certificate must be brought in the courts of the State

21            of Maryland, U.S.A."

22      44.    Each of these purported limitations and exclusions (the "Warranty Exclusions") is

23   unenforceable against Plaintiffs and the Class.  The Warranty Exclusions were not bargained for

24   by BP and its customers but were imposed unilaterally by BP.  The Warranty Exclusions are

25   unfair in that they are outside the reasonable expectations of the parties thereto, deny consumers

26   an effective remedy and purport to limit the rights of consumers in ways that are unenforceable

27   under relevant state and federal law including, without limitation, the Song-Berberly Consumer

28   Warranty Act and Magnuson-Moss Warranty Act.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 9 -                                    Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

45.     The Warranty Exclusions are also unfair in that they purport to limit the rights of BP's customers to repair or replacement of a product which cannot be repaired and for which BP has no replacement.

46.     The Warranty Exclusion's purported: (1) limitation of BP's liability to the cost of the Solar Panels; (2) exclusion of "the costs of any on-site labor and any costs associated with the installation, removal, reinstallation or transportation of [the Solar Panels] or any components thereof for service;" and (3) exclusion of incidental and consequential damages are unfair because the cost of removing and replacing the Solar Panels is several times the cost of the Solar Panels themselves.

47.     Similarly the increased cost of electricity arising from the failure of the Solar Panels could easily exceed the cost of the Solar Panels themselves.  The provision purportedly eliminating the right to recover the cost of replacement electricity is especially unfair in light of BP's prominent claim that installation of the Solar Panels will reduce or eliminate electricity bills "forever."

48.     The unfairness of these limitations in remedy are reinforced by unenforceable provisions of the Warranty stating that it is the "exclusive remedy" for "breach of warranty or for manufacturing or design defects" and the purported exclusion of implied warranties.  In fact, Plaintiffs and the Class have substantial rights and remedies available to them both for breach of implied and express warranty and for redress arising from the defective nature of the Solar Panels which BP cannot lawfully preclude them from asserting.

49.     The provisions described in Paragraph 43 above both individually and in combination, deprive Plaintiffs and the Class of any effective remedy for breach of BP's obligations to them.

50.     Finally, the provision requiring that any lawsuit arising "under or in connection with" the Warranty be filed in Maryland is unreasonable and unenforceable because it discourages legitimate claims by imposing unreasonable geographical barriers on the plaintiff.  At the time of the events herein alleged, Maryland had no connection to the claims against BP. The cost of asserting claims by California plaintiffs in a forum as remote as Maryland greatly

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 10 -                                    Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

increases the expense of pursuing litigation which is already prohibitively expensive for consumers.  Individually and in conjunction with the combined effect of the other Warranty Exclusions, the requirement that suit be brought in Maryland will discourage the pursuit of valid claims by members of the Class.

### 2.   Additional Representations by BP Concerning the Solar Panels

51.     In addition to the representations contained in the Warranty, BP engaged in a broad mass marketing campaign for the Solar Panels in which BP made, *inter alia*, the following representations and warranties concerning the Solar Panels:

a.      Installation of the Solar Panels will "drastically reduce or eliminate your electric bills…forever." (Source: 2005 Video Transcript: BP Solar and The Home Depot team up to provide BP Solar Home Solutions® to home owners).

b.      The Solar Panels will "increase the value of your home" and allow homeowners to recover the cost of the Solar Panels "when you sell the house."  (Source: 2005 Video Transcript: BP Solar and The Home Depot team up to provide BP Solar Home Solutions® to home owners and BP Website 2004 and 2007).

c.      BP included language in its Product Data Sheets for the Solar Panels that Model BP 4175B had a "25-year limited warranty of 80% power output; 12-year limited warranty of 90% power output; 5-year limited warranty of materials and workmanship."  Similar language is included in the Product Data Sheet for Model BP SX 170B and BP 2150S.

d.      "No other system can operate at a higher level of safety than those offered by BP Solar." (Source: BP Website 2002-2005).

e.       "Quality, Reliability, and Performance in Every Product. BP Solar products are designed and constructed to provide first class performance and reliability. Our world-class engineers are constantly improving our products to better meet your needs and to ensure product performance and safety through rigorous internal tests and international certifications. It's no wonder our products have an unmatched track record in the field, operating for nearly 30 years in a variety of applications

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 11 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1    and climates worldwide. Let us introduce you to our distinguishing product

2    features." (Source: BP Website October 2002-November 2006).

3        f.    "High Capacity Junction Box. Our proven junction box design provides reliable

4              electrical connections for metric and non-metric conduit or cable fittings and

5              enables series or parallel array connections." (Source: BP Website October 2002-

6              November 2006).

7        g.    "Our technology is proven around the globe.  BP Solar's technology reliability and

8              durability has been proven in some of the harshest environments on the earth and

9              beyond. Our technology is used on satellites in space, in telecommunication towers

10             on gale-swept mountaintops, for cathodic protection in the cold of Alaska and in

11             remote villages in the heat of Africa."  (Source: BP Website February 2003).

12       h.    "You can count on our technology; it's proven around the globe.  BP Solar's

13             technology reliability and durability has been proven in some of the harshest

14             environments on the earth - and beyond. Our technology is used on satellites in

15             space, in telecommunication towers on wind-swept mountaintops, on weather

16             stations in the bitter cold of Antarctica, and on wells in the searing heat of Africa."

17             (Source: BP Website December 2005-February 2007)

18       52.    The representations and warranties were broadly disseminated in places such as

19   BP's website, in a video played by to potential customers and in marketing materials such as

20   brochures, product data sheets, and other promotional materials reviewed by Allagas, Ray and

21   other members of the Class.    Examples of the representations taken from the BP website are

22   attached hereto as **Exhibit G**.  The transcript of the video played to potential customers is

23   attached hereto as **Exhibit H**.  Examples of relevant product data sheets are attached hereto as

24   **Exhibit I**.

25       53.    The representations and warranties made by BP concerning the Solar Panels were

26   false because: (1) the defect in the junction box significantly limited or completely eliminated the

27   ability of the Solar Panels to produce electricity while posing serious risks of property damage

28   and personal injury; and (2) the Solar Panels would not save the property owner money or

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 12 -                                          Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

increase the value of the property.

**D.**     **Misrepresentations and Omissions by BP to the Distribution Chain and End Users in Marketing the Solar Panels**

54.     At all times relevant herein, purchasers of the Solar Panels relied on distributors, sellers and installers of solar panels to advise them concerning the advantages of purchasing solar panels generally and of the unique benefits of products produced by particular manufacturers, such as BP.  Accordingly, BP knew that if it wanted to sell the Solar Panels to end users it had first to convince distributors, sellers and installers that they should recommend the purchase of BP products rather than solar panels manufactured by others.

55.     BP's marketing plan for the Solar Panels relied almost exclusively on authorized distributors and sellers to promote its products and recommend the Solar Panels to end users – homeowners and small businesses

56.     Attached hereto as **Exhibit J** is an excerpt from a PowerPoint presentation produced by BP and given to builders and developers.  This excerpt demonstrates graphically the strategy of using distributors, dealers and installers to sell the Solar Panels to end users.  It describes a "partnership" to produce an offer "jointly developed by BP Solar/your company" to do "marketing of BP Solar and your company" and provides that "distributors and Dealers will support the sales process with you."  The flow chart shows that the marketing effort flows from BP Solar to Distributors and Builder/Installers to "Homeowners."  It also proposes that BP and "your company" will do "co-marketing, demo systems and builder training" which are "focused on building brand preference with installers, builders."

57.     The installation of a solar system is expensive, usually costing tens of thousands of dollars.  For this reason, end users need to be persuaded as to why this expenditure is economically reasonable.  The principal justification for such a large expenditure is the amount which the homeowner can save over the life of the installation in the cost of electricity which would, in the absence of the solar panels, have to be purchased from utility companies.

58.     During the time period relevant herein, BP consistently produced promotional materials touting the economic benefits, safety and reliability of its products.  Examples of such

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 13 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

promotional materials and the representations they contain are given at Paragraphs 51 through 52 and in the Exhibits attached thereto.  BP provided distributors, sellers and installers with its promotional literature and materials – such as brochures, product data sheets, videos, warranty information and other similar materials – and trained them to use BP's promotional materials to promote sales of the Solar Panels.

59.     BP intended that the promotional material it made available to distributors, sellers and installers of the Solar Panels would be provided by distributors, sellers and installers to end users.  These promotional materials were produced by BP so that BP could convey to prospective purchasers consistent and effective representations concerning the economic benefits and safety of owning solar panels generally and the benefits of BP's Solar Panels in particular.

60.     Plaintiffs and other members of the Class received BP's promotional materials from distributors, sellers and installers in precisely the manner that BP intended.  Plaintiffs' exposure to BP's representations and promotional materials through distributors, sellers and installers is detailed in Paragraphs 85 through 88 (Allagas) and 106 through 107 (Ray) hereto and the Exhibits referred to therein.  More general examples of BP's dissemination of its promotional materials to end users through distributors, sellers and installers which are particularly relevant to this litigation are detailed below.

61.     During the time period relevant herein, Solar Depot was the largest authorized distributor of BP Solar Panels in the United States and the largest distributor of Solar Panels in California.  Home Depot was also a large authorized distributor of the Solar Panels.  Both Home Depot and Solar Depot obtained promotional materials from BP which they provided to sellers and installers of the Solar Panels.  Both Solar Depot and Home Depot instructed sellers and installers to deliver these materials to prospective end users and trained them in their use.

62.     For example, in 2004, BP launched a marketing campaign to sell the Solar Panels through Home Depot as the BP Solar Home Solution®.  Mohr Power Solar, Inc. ("Mohr Power"), who made the sales presentation to Allagas, worked closely with Home Depot and participated in selling the BP Solar Home Solution.

63.     Mohr Power sold BP solar panels from 2002 until BP left the market.  BP provided

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 14 -                                          Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1  Mohr Power with marketing materials and training on how to install, market and sell the Solar
2  Panels.  Mohr Power was an approved installer of the BP Solar Home Solution and was provided
3  with Home Depot and BP marketing materials touting the benefits of the BP Solar Home
4  Solution.  Mohr Power was also was required to have an employee on site at each of the thirteen
5  Southern California Home Depot locations for a specified number of hours per week to help
6  market the BP Solar Panels.

7       64.  In 2005, when Mohr Power visited Allagas, Mohr Power had BP brochures with
8  both the BP Solar and Home Depot logos.  Mohr Power used the materials to market and sell the
9  Solar Panels to Allagas and others.

10       65.  Solar Depot sold the Solar Panels throughout its vast dealer network.  This
11  network included Diablo Solar Services, Inc. ("Diablo Solar"), located in Martinez, California,
12  which installed Ray's Solar Panels.  Solar Depot provided its dealers and installers with
13  marketing materials and product information produced by BP and held training seminars to
14  educate them concerning how to sell the Solar Panels.

15       66.  In addition, BP enlisted Solar Depot and its other authorized distributors to recruit
16  installers for its Certified Installer Program.  The Certified Installer Program was a two-day
17  training program consisting of workshops and seminars lead by BP sales and marketing
18  representatives.  The first day was focused on "sales and marketing" where installers would
19  "[l]earn how to effectively sell BP Solar products, how to use online tools available through the
20  Certified Installer Program; and how to use the BP Solar Certified Installer logo, promotional
21  materials, and marketing templates."  The purpose of the Certified Installer Program was to
22  disseminate information about the purported safety, durability, reliability and economic benefits
23  of the Solar Panels to potential end users.

24       67.  In a brochure it produced in a co-branded marketing effort with Solar Depot, BP
25  stated that the Certified Installer Program "connects everyone in the value chain."  A flow chart
26  contained therein reflects the distribution channel from "BP Solar →Authorized Distributors →
27  Certified Installers → Customers."  A true and correct copy of the brochure is attached hereto as
28  **Exhibit K**.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 15 -        Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

68.     Installers who successfully completed the training program received a package of information from BP which contained marketing materials, including brochures, product data sheets, and copies of the BP Warranty, which were then provided to prospective purchasers of the Solar Panels.  Installers who did not take part in the Certified Installer Program could not trade on the BP name or use the BP logo in selling its products.

69.     The misrepresentations and omissions by BP alleged in Paragraphs 36, 37, 39, 51 and 52 persuaded distributors, sellers and installers to promote the sale of the Solar Panels to end-users.  Throughout the time period relevant herein, such distributors, sellers and installers relied upon the material misrepresentations and omissions by BP concerning the reliability, durability and economic benefits of the Solar Panels and omissions by BP regarding the junction box defect and fire safety risk in marketing the Solar Panels to end users.  BP, the distributors, sellers and installers likewise intended that end users would rely on these same representations.

70.     If BP's authorized distributors, sellers and installers had been aware of either (1) the falsity of BP's representations that the Solar Panels were "free from defects in materials and workmanship" and the other representations made in its marketing materials or (2) the information BP failed to disclose concerning its knowledge of the defect of the junction box, the number of Solar Panels which had been returned to BP with burned junction boxes and the risk of electrical arcing and fire, they would have recommended that Plaintiffs and the Class not purchase the Solar Panels and instead select another solar panel manufacturer.  If the distributors, sellers and installers had recommended against purchasing the Solar Panels, Plaintiffs and the Class would not have purchased them.  If members of the Class had been aware from any source of these misrepresentations and omissions, they would not have purchased the Solar Panels.

**E.     BP's Offers and Product Advisory**

71.     As BP received an increasing number of claims arising from the failure of its Solar Panels, BP extended two offers to purchasers which purported to compensate purchasers of defective Solar Panels.  In fact, these offers were intended to persuade purchasers of the Solar Panels to accept wholly inadequate remedies and to allow BP to pay much less than it would be required to pay if the purchasers of its products received the compensation to which they were

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 16 -                                      Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

entitled.

### 1.   The 2009 Offer

72.     On October 28, 2009, BP made an offer (the "2009 Offer") to purchasers of the Solar Panels manufactured through 2006 whereunder: (1) BP would pay $475 to inspect installed Solar Panels; and (2) $100 per Solar Panel towards the cost associated with the removal and replacement of a defective Solar Panel.  A copy of the 2009 Offer is attached hereto as **Exhibit L**.  The 2009 Offer does not cover the actual cost of removing and replacing the defective Solar Panels or damages for loss of power.

### 2.   The 2010 Offer

73.     On June 10, 2010, BP made another offer (the "2010 Offer") to address claims arising after the date of the offer.  The 2010 Offer included the same $475 for inspection of the Solar Panels but reduced the amount of compensation per panel if more than ten Solar Panels were determined to be defective.  A copy of the 2010 Offer is attached hereto as **Exhibit M**.  Like the 2009 Offer, the 2010 Offer does not cover the actual cost of removing and replacing the defective Solar Panels or damages for loss of power.

### 3.   The Product Advisory

74.     On July 25, 2012, BP issued a Product Advisory (the "Product Advisory") which purports "to communicate a potential risk when using certain BP Solar modules in specific types of installations."   A copy of the Product Advisory is attached hereto as **Exhibit N**.  The Product Advisory states that testing has revealed a "limited risk of cable to busbar disconnection in the junction box that, in rare cases, may lead to a thermal event."  The Product Advisory is limited to a small number of models manufactured between March 1, 2005 and October 31, 2006 and applies only when the Solar Panels are (1) "mounted on a roof with no fire resistance rating per UL790 or ASTM E108," i.e., a roof "with no Class A, B or C fire resistance rating per UL790 or ASTM E108;" (2) "integrated into a roof covering" or "ground-mounted above flammable material."  Purchasers who meet these criteria are told only that they should contact BP.

75.     The Product Advisory greatly understates the risks associated with the junction box failure.  First, the risk of junction box failure exists for all Solar Panels – not just the limited

number listed in the Product Advisory – manufactured at any time – not just the limited time frame covered by the Product Advisory.  Second, the risk of a fire (euphemistically described as a "thermal event") exists even where a roof is fire resistance rated and its occurrence is not "rare." Third, the risk of a junction box failure includes the risk of an electric shock not mentioned in the Product Advisory if someone is on the roof at the time of a failure.

### 4. BP's Failure to Warn Class Members and its Effects

76.     BP has been aware of the defect in its Solar Panels since at least 2003.  BP has long been aware that a junction box failure will eliminate or substantially reduce the capacity of its Solar Panels to generate power and can pose the risk of property damage and personal injury.

77.     Plaintiffs are informed and believe and thereon allege that BP has received hundreds, if not thousands of reports by distributors, sellers, installers, and owners of the failed Solar Panels.  Despite its knowledge of these claims and the defect in the junction box, BP did not – except for the grossly misleading Product Advisory – disclose the junction box defects or the risk of property damage and personal injury to its customers.

78.     Members of the Class generally do not know when a junction box failure has occurred until they have suffered such a dramatic loss of power that their electricity bills increase substantially.  This fact, combined with BP's refusal to provide reasonable and adequate notice to members of the Class regarding safety-related defects in the Solar Panel and the associated risks, severely compromises the rights of class members to be apprised of and make legitimate claims against BP.  This unfair practice by BP further places members of the Class at risk of property damage and personal injury because they do not take action to replace the Solar Panels promptly, as they would if they were warned of the safety risks.

### F. BP's Claims Suppression Strategy

79.     BP has made a practice of offering homeowners who make claims substantially less than the amount to which they are entitled, *i.e.*, the cost of removing and replacing the defective Solar Panels and remedying any consequential damages.  Plaintiffs are informed and believe and thereon allege that BP is routinely offering parties who assert claims a payment based on a standard cost per watt for the power warranted, a sum which does not compensate the owner

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 18 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

for the cost of removal and replacement of the Solar Panels and any consequential damages. Such damages include, without limitation, lost power production, replacement of the inverters, replacement of the racking system and the cost of new building permits to install the new solar system. Such damages also include repairs to the roof required by replacement of the racking system which is often not compatible with the replacement solar panels.

80.     Plaintiffs are informed and believe, and thereon allege that BP invokes the Warranty Exclusions which it knows are not enforceable against the Class in order to justify these wholly inadequate offers.

81.     In addition, the offer is conditioned upon the agreement by the owner not to pursue litigation against BP. Plaintiffs are informed and believe that BP routinely insists on a provision in the Warranty which requires the owner to surrender possession of the failed Solar Panels to BP. BP has in fact threatened to sue an installer who allegedly did not return all panels to BP.

82.     In this manner, BP attempts to settle cheaply with potential class action representatives who could fairly represent the interests of all purchasers. It also ensures that BP recovers any Solar Panels which could provide proof of the defect if analyzed by experts.

83.     BP utilized the 2009 and 2010 Offers and the Claim Suppression Strategy described in the preceding paragraphs to under-compensate owners and ensure that there will be no proceeding in which all owners can receive the remedies they are entitled to under applicable law.

84.     In its most recent offers to claimants, BP has reduced the amount per watt from $1.60 to $1.10. Alternatively, if claimants want to get replacement modules, BP has a "supply" of third party modules that the customer can choose from but the customer is responsible for removal and replacement of the existing Solar Panels and any consequential damages, including the cost to repair damage to the roof resulting therefrom.

## IV.     PLAINTIFFS' INDIVIDUAL ALLEGATIONS

### A.     Allagas

85.     In June 2005, while Home Depot was marketing the BP Solar Home Solution, Allagas went to Home Depot to purchase parts for his work as a security systems installer. Just

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 19 -     Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1   inside the door he saw a large and conspicuous table with marketing information and brochures

2   advertising solar power.  Thinking about retirement, Allagas wanted to reduce the cost of his

3   utilities.  He had already installed energy efficient windows and was interested in exploring solar

4   power.

5          86.    Allagas was given a marketing presentation by the Home Depot sales

6   representative.  He was told that the Home Depot solar system would provide the most "reliable"

7   and "trustworthy" solar system that money could buy.  Allagas asked for additional details and he

8   was told to "sign up" for a visit by a Home Depot installer who would provide additional details

9   concerning the Home Depot solar system.  Allagas received marketing brochures and other

10   materials at Home Depot which he took home and further reviewed while contemplating his

11   decision to purchase the Solar Panels.   At the time he received the brochures, Home Depot

12   provided its customers with brochures and other written materials generated by BP for use in

13   marketing the BP Solar Home Solution.

14         87.    Allagas was subsequently contacted by Mohr Power, a BP Certified Installer

15   selected by BP and Home Depot.  As detailed previously Mohr Power was an authorized installer

16   of the Solar Panels, had received all promotional materials used in the sale of the Solar Panels

17   from BP and had been trained by BP concerning how to use the materials to sell the Solar Panels.

18   *See* Paragraphs 62-64 *supra*.

19         88.    A Mohr Power representative came to the Allagas home and made a sales

20   presentation about the BP Solar Home Solution.  The Mohr Power sales representative brought

21   with him brochures, product data sheets, the Warranty and other written materials concerning the

22   Solar Panels.  The Mohr Power representative stated that the Solar Panels were reliable, safe, and

23   would last for 25 years.  Mohr Power asked to see Allagas' electric bills and made calculations

24   about their energy savings.  Mohr Power told Allagas that the BP solar system would "eliminate"

25   his electric bills and increase the value of his home.

26         89.    At no time did anyone from Home Depot or Mohr Power inform Allagas of the

27   known junction box defect and potential fire safety risk of the Solar Panels.

28         90.    As a result of statements made by the Home Depot sales representative, the Mohr

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 20 -      Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

Power sales representative and Allagas' review of the written materials he obtained from Home Depot and during his meeting with Mohr Power, Allagas formed the impressions that: (1) the Solar Panels were safe and reliable; (2) the Solar Panels would last for twenty-five years; (3) the Solar Panels would produce between 80 and 90 percent of their rated power for the years specified; (4) installation of the Solar Panels would eliminate his electric bills and increase the value of his home; and (5) the Solar Panels had a good "track record" of performance.

91.     Allagas relied on the representations and warranties stated in Paragraph 88.  Were it not for these representations and warranties, Allagas would not have purchased the Solar Panels.  Had Home Depot, Mohr Power, or any other person informed Allagas that the junction box design was prone to failure and posed a fire safety risk, he would not have installed the Solar Panels at his home.  Allagas was so convinced by the representations regarding the Home Depot solar system that he refinanced his home to obtain the funds to purchase the solar system.

92.     In 2005, Allagas purchased the BP Solar Home Solution from Home Depot to be installed at his residence in San Bernardino, California for $24,422.  The solar system consisted of twenty-four (24) BP 4175B Solar Panels and was installed by Mohr Power on December 23, 2005.  The system has two inverters with two strings of six panels per inverter.  The inverters convert the variable direct current output of the Solar Panel into alternating current which can be used to power the home.

93.     The Defect Warranty provided to Allagas was for five years.  The Power Warranty was a 12-year warranty of 90% power output and a 25-year warranty of 80% power output.

94.     In mid-2006, Allagas became concerned when he noticed that one of the Solar Panels in the bottom string was brown in color and "looked different" from the others.  Mohr Power came out to look at the Solar Panel and reported to Allagas that his system was fine.

95.     In September 2013, Allagas noticed that his system was not working properly.  Allagas contacted Mohr Power who inspected his system on September 13, 2013, and verified that one of the two inverters was no longer working at all.  The Mohr Power technician told Allagas that BP had recalled some of their solar panels, but that there was no way to know whether the problem was with the solar panels or the inverter without further inspection.  The

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 21 -                                          Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1   technician was unable to get on the roof at that time and told Allagas that a second Mohr Power

2   technician would come out to determine the cause of his system failure.  Allagas paid Mohr

3   Power $130.00 for the inspection of his solar system.

4       96.     On September 23, 2013, Mohr Power returned to Allagas' residence and

5   determined that four (4) Solar Panels were "not working" and only one of the inverters was

6   working.  Allagas was informed that the Solar Panels had burned junction boxes and the glass

7   surface of two Solar Panels had shattered as a result of the resulting heat.

8       97.     The loss of power from the four Solar Panels caused more than half of Allagas'

9   system to stop working.  When Mohr Power informed Allagas of the location of the four Solar

10  Panels, Allagas learned for the first time from the Mohr Power technician that the browned and

11  discolored Solar Panel that he previously contacted Mohr Power about was one of the four panels

12  with the junction box failure.   It was then that Allagas realized that he had been losing power for

13  a prolonged period of time.  Allagas paid Mohr Power $157.50 for the second inspection.

14      98.     After reviewing his electrical bills, Allagas estimates that the first defective Solar

15  Panel from 2006 disabled approximately 25% of his system.  When one Solar Panel in a string

16  fails, the entire string fails to generate power.  With the first failure, only three of the four strings

17  of six panels were working.  Allagas estimates that the loss of the four defective Solar Panels

18  reduced his total energy production by more than 50%.  This loss of power was the result of a

19  defect in the Solar Panels which constituted a breach of the Defect Warranty.  The resulting loss

20  of power also resulted in a breach of the Power Warranty.

21      99.     Upon learning about the four defective Solar Panels in late 2013, Allagas asked

22  Mohr Power what they were going to do to repair his solar system.  Mohr Power told Allagas that

23  they would submit a warranty claim on his behalf to BP and request replacement panels, but that

24  the process would take four to six weeks.  Allagas was informed by Mohr Power that BP would

25  supply replacement panels, but Allagas would be responsible for the cost to remove and replace

26  the defective Solar Panels and would have to return the defective Solar Panels to BP.

27      100.    Allagas followed up with Mohr Power a month later and he was told that they had

28  notified BP of Allagas' claim but had not received any response from BP.  Allagas asked Mohr

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 22 -                                    Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

Power to have BP contact him directly.  Allagas did not hear from BP until he retained counsel.

101.   Allagas' Solar Panels are listed in the Product Advisory as being at risk for junction box failure and the associated fire safety risk.  Because of this fact and because the remaining Solar Panels will fail within their useful life, Allagas has demanded that BP replace the entire solar system.

102.   On October 24, 2013, Allagas' counsel provided BP with further notice of its breach of warranty and CLRA violations and demanded compensation for the cost of removing and replacing the Solar Panels and consequential damages.  A copy of the Notice is attached hereto as **Exhibit O.**  On November 5, 2013, BP offered Allagas $6,720 to purchase and install new panels. The settlement value was calculated using the formula of $1.60 per watt ($1.60 x 175 watts x 24 panels = $6,720.00), and does not include damages for loss of power production, the cost of the removal and replacement of the racking system, repair of roof damage, the cost of removing and replacing the inverters, the cost of building permits or investigation costs.  The estimated cost to remove and replace the Solar Panels at Allagas' residence is over $20,000.

103.   BP also offered Allagas the alternative of having a third party installer selected by BP remove and replace the defective Solar Panels but did not offer to compensate him for any consequential damage such as loss of power, damage to the roof from the repair or expenses of investigation.  For the reasons stated in Paragraphs 133 through 135, Allagas did not accept this offer.

104.   Allagas has made a demand to BP for the cost of removing and replacing the Solar Panels, the amount of electric bills he had to pay to replace power that was supposed to be generated by the Solar panels, the cost of investigating the failure of his Solar Panels and other consequential damages purportedly excluded by the Warranty.  Allagas continues to incur increased electric bills as a result of the reduced capacity of his original system.

105.   Despite repeated requests for a response to this demand, BP has not responded with anything but the offer described above.

/ / /

/ / /

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

**B.**   <u>Ray</u>

106.   For many years, Ray had been interested in solar power as a way to reduce his electric bills.  Ray spoke to various installers and chose Diablo Solar to install his Solar Panels. As described previously, Diablo Solar worked closely with Solar Depot, the largest distributor of BP solar panels in California.  Solar Depot had obtained and provided to Diablo Solar copies of the BP's product data sheets, the Warranty and other promotional documents.

107.   Diablo Solar visited the Ray residence and made a sales presentation regarding the Solar Panels.  The Diablo Solar representative told Ray that the Solar Panels were the best, most reliable and safest on the market.  He was also told that the Solar Panels would last for 25 years and would all but eliminate his electricity bill.  At that time, Ray received marketing brochures and the Warranty from the Diablo Solar representative to review.  Ray reviewed the brochures and the Warranty with the Diablo Solar representative and again on his own before agreeing to purchase the Solar Panels.

108.   As a result of statements made by the Diablo Solar representative and his review of the written materials he obtained during his meeting with Diablo Solar, Ray formed the impressions that: (1) the Solar Panels were safe and reliable; (2) the Solar Panels would last for twenty-five years; (3) the Solar Panels would produce between 80 and 90 percent of their rated power for the years specified; (4) installation of the Solar Panels would eliminate his electric bills and increase the value of his home; and (5) the Solar Panels had a good "track record" of performance.

109.   Ray relied on the representations and warranties stated in Paragraph 107.  Were it not for these representations and warranties, Ray would not have purchased the Solar Panels. Had Diablo Solar or any other person informed Ray that the junction box design was prone to failure and posed a fire safety risk, he would not have installed the Solar Panels at his home.  In addition, if Ray had been informed that installation of the Solar Panels constituted a safety risk because of the risk of fire, he would have insisted that the Solar Panels immediately be removed from his roof and replaced with safe solar panels.

110.   In 2005, Ray purchased a BP solar system from Diablo Solar to be installed at his

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 24 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1  residence in Brentwood, California.  The total cost of the system was $24,026.60.  The solar

2  system consisted of eighteen (18) BP SX 170B Solar Panels and was installed by Diablo Solar on

3  August 31, 2005.

4      111.   The Defect Warranty provided to Ray was for five years.  The Power Warranty

5  was a 12-year warranty of 90% power output and a 25-year warranty of 80% power output.

6      112.   In or about July 2010, Ray noticed an increase in his electric bills.  As a result, in

7  July and August 2010, Ray contacted Diablo Solar to inspect his solar system.  Diablo Solar

8  found three Solar Panels with burn marks.  During 2010, until the defective Solar Panels were

9  replaced, the power production of the panels on the Ray property was below the levels stated in

10  the Power Warranty.

11      113.   In August 2013, Ray again noticed a problem with his solar system and contacted

12  Diablo Solar.  Diablo Solar found an additional Solar Panel with a blown junction box which was

13  replaced.  As a result, during 2013, the power production was below the levels stated in the Power

14  Warranty.

15      114.   All of the Solar Panels removed from Ray's residence by Diablo Solar were due to

16  junction box failures evidenced by burn marks and shattered glass.

17      115.   These failures result from a defect which constitutes a breach of the Defect

18  Warranty.  The inability of Ray's Solar Panels to produce the represented power levels also

19  resulted in a breach of the Power Warranty.  Ray's Solar Panels are listed in the Product Advisory

20  and identified as a potential safety risk.  Because of this fact and because the remaining Solar

21  Panels will fail within their useful life, Ray has demanded that BP replace the entire solar system.

22      116.   In August of 2013, Ray notified Diablo Solar of the breach by BP of the Warranty

23  and Diablo Solar in turn notified BP of the breach.

24      117.   On September 9, 2013, Ray received an e-mail from a BP representative who

25  offered Ray $4,896.00 to replace his solar system.  The settlement value was calculated using the

26  formula of $1.60 per watt ($1.60 x 170 watts x 18 panels), and does not include damages for loss

27  of power production, the cost of the removal and replacement of the racking system, the cost to

28  repair the resulting roof damage, the cost of the removal and replacement of the inverter, or cost

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 25 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1  of building permits.  Ray obtained a bid from Diablo Solar, the original installer, for the removal

2  and replacement of the Solar Panels at a cost of $12,704.  In addition to the cost to remove and

3  replace the solar system, Ray has incurred increased electricity bills that he would not have

4  incurred if his system were functioning properly.

5      118.   BP also offered Ray the alternative of having a third party installer selected by BP

6  remove and replace the Solar Panels, but did not offer to compensate him for any consequential

7  damage such as loss of power, damage to the roof from the repair or expenses of investigation.

8  For the reasons stated in Paragraphs 133 through 135, Ray did not accept this offer.

9      119.   On November 27, 2013, Ray's counsel provided BP with further notice of BP's

10  breach of warranty and CLRA violations and demanded compensation for the cost of removal and

11  replacement of the modules, replacement of the racking system and for the cost of electricity to

12  replace the energy the Solar Panels failed to produce.

13      120.   On December 4, 2013, Ray provided BP with a copy of the replacement bid from

14  Diablo Solar and also demanded consequential damages from BP for the loss of power, the cost

15  of removal and replacement of the racking system and the cost to repair any damage to the roof.

16      121.   Despite repeated requests for a response to this demand, BP has not responded

17  with anything but the offer described above.

18          **C.     Mohrman**

19      122.    On or about June 1, 2012, Mohrman purchased a home in Danville, California on

20  which twenty (20) BP 2150S Solar Panels were installed. The previous owner of the property

21  purchased the Solar Panels from Next Energy Corporation ("Next Energy") in 2001 and installed

22  the in or about January of 2002.  Mohrman was provided by the owner with a copy of the Solar

23  Electric Agreement with Next Energy

24      123.   The presence of a solar system was an important consideration to Mohrman when

25  he purchased the property because of the energy cost savings.  Mohrman was willing to pay a

26  higher price for the property because of the solar system.  Had Mohrman been aware of the facts

27  that BP was obligated to disclose, he would not have purchased the property or would have

28  adjusted his price to reflect the cost of replacing the solar system.

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

124.    The solar system was working at the time Mohrman purchased the property. However, when Mohrman moved into his residence in June of 2012, the solar system was no longer generating electricity.  Mohrman contacted Next Energy, the original installer, who inspected the solar system and verified the system was not working.  Two of the Solar Panels installed at the property had burn marks indicative of junction box failures.

125.    On January 18, 2013, Mohrman provided BP with notice of the defective Solar Panels.  BP's experts conducted an inspection of Mohrman's property on July 8, 2013. Preliminary testing of the Solar Panels by BP's experts indicated that 11 of the 20 Solar Panels installed at the Mohrman Property were not generating electricity.  The nine remaining Solar Panels, two of which had previously been replaced, were at various stages of failure.

126.    After BP's experts connected the nine Solar Panels to a string to determine the amount of electricity being generated, Mohrman inquired if he could turn on his system with the nine working Solar Panels.  BP's experts recommended that the system be turned off due to the risk of fire.  For this reason, Mohrman made arrangements to have all of the defective Solar Panels removed from his home. At this time, Mohrman has no solar system and continues to incur damage for lost energy production.

127.    As a result of the junction box failures, Mohrman's solar system was completely inoperable and failed to generate the power levels promised in the Power Warranty.  Between July 2012 and June 2013, Mohrman has paid increased energy costs totaling $2,909.13 as a direct result of the lost energy production from the Solar Panels.

128.    After retaining counsel, BP offered Mohrman financial compensation of $12,000 with which to purchase and install new panels.  This amount was calculated by BP in the same manner as the offers made to Allagas and Ray, *i.e.*, by multiplying the wattage of the Solar Panel by a fixed dollar amount.  This amount is insufficient to remove and replace Mohrman's Solar Panels.  Mohrman has obtained an estimate that such removal and replacement will cost $33,696.00.

129.    On October 30, 2013, Mohrman submitted a demand of $60,000 to BP which included the cost for the cost of removing and replacing the Solar Panels, the amount of electric

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

bills he had to pay to replace power that was supposed to be generated by the Solar panels, the cost of investigating the failure of his Solar Panels and other consequential damages.

130.     Despite repeated requests for a response to this demand, BP has not responded with anything but the offer described above.

### D.     Facts Common to All Plaintiffs

131.     BP's refusal to pay for: (1) "on-site labor and any costs associated with the "removal, reinstallation or transportation of [the Solar Panels]" or  (2) "any special incidental, consequential or punitive damages arising from the use or loss of use of or failure of [the Solar Panels] to perform as warranted, including but not limited to damages for lost services, cost of substitute services, lost profits or savings" and the making of an offer amounting to no more than "the purchase price of the product" represents enforcement of the Warranty Exclusions described in subparagraphs (a) through (e) of Paragraph 43 against Plaintiffs.  Likewise, BP's insistence in this litigation that the exclusion of implied warranties referenced in subparagraph (b) of Paragraph 43 is valid also constitutes an attempt to enforce the Warranty Exclusions against Plaintiffs.

132.     BP's actions also represent the implementation of the Claim Suppression Strategy against Plaintiffs in that:  (1) BP has offered Plaintiffs "substantially less than the amount to which [they are] entitled" based part on the Warranty Exclusions; and (2) BP's offer is conditioned on an agreement not to assert claims against BP.

133.     The racking systems used to mount the Solar Panels are not the same size as the racking systems that are used for products which can replace the Solar Panels.  For this reason, the removal and replacement of the Solar Panels cannot be accomplished without replacing the racking systems to which the Solar Panels are attached.  This replacement damages the roof and, unless addressed by the installer, has a serious adverse effect on the appearance of the roof.  In many cases where BP employed its own installers to install third-party solar panels, the installers they did not repair the damage caused by the replacement of the mounting racks or ameliorate the adverse changes to the appearance of the roof.

134.     The fact that BP offered such a small amount to replace the roof, in each case

1    approximately one-third of the actual cost of a competent repair, indicated to Plaintiffs that they

2    could not trust BP's suggestion that BP's installers, rather than installers selected by Plaintiffs,

3    repair the roof.

4         135.    For this reason, as well as BP's refusal generally to compensate Plaintiffs for their

5    substantial consequential damages, Plaintiffs did not accept BP's suggestion that it "cure" their

6    default by having its own installers replace their Solar Panels.

7    **V.        CLASS ALLEGATIONS**

8         136.    The Class which Plaintiffs seek to represent in this action is composed of six

9    Subclasses defined as follows:

10             **Initial Purchaser Subclass:**    All persons or entities who

11             purchased Solar Panels for installation in California.

12             **Initial Purchaser Consumer Subclass:**    All persons who

13             purchased Solar Panels for installation in California on a private

14             residence.

15             **Home Depot Subclass:** All members of the Initial Purchaser

16             Subclass who purchased Solar Panels from Home Depot.

17             **Home Depot Consumer Subclass:**    All members of the Home

18             Depot Subclass who purchased the Solar Panels for installation in

19             California on a private residence.

20             **Subsequent Purchaser Subclass:**    All persons or entities who

21             purchased buildings in California on which the Solar Panels were

22             first mounted.

23             **Subsequent Purchaser Consumer Subclass:** All persons who

24             purchased private residences in California on which the Solar

25             Panels were first mounted.

26         137.    The Initial Purchaser Consumer Subclass, the Home Depot Consumer Subclass

27    and the Subsequent Purchase Consumer Subclass are referred to herein collectively as the

28    "Consumer Subclasses."

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 29 -                          Case No. 3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

138.    Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest, and Defendants' legal representatives, heirs and successors, and any judge to whom any aspect of this case is assigned, and any member of such a judge's immediate family. Claims for personal injury are excluded from the claims of the Class.

139.    Plaintiffs reserve the right to modify or amend the Class definition, as appropriate.

140.    Individual and representative Plaintiffs bring this lawsuit as a class action, on behalf of themselves and all others similarly situated pursuant to California Code of Civil Procedure § 382 ("CCP § 382") and California Civil Code § 1781 (Civ. Code § 1781).

141.    Under Civ. Code § 1781, a court shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist:

a.      It is impracticable to bring all members of the class before the court.

b.      The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members.

c.      The claims or defenses of the representative Plaintiffs are typical of the claims or defenses of the Class and each Subclass.

d.      The representative Plaintiffs will fairly and adequately protect the interests of the class.

142.    Under CCP § 382 a class action is proper where the class is ascertainable, there is a well-defined community of interest among class members, the question is one of a common or general interest or the parties are numerous and it is impracticable to bring them all before the court.

143.    Certification of Plaintiffs' claims for class wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis and because this case meets the requirements of Civ. Code § 1781 and CCP § 382.

144.    **Numerosity.** The members of the Class are so numerous that individual joinder of all the members is impracticable.  Plaintiffs are informed and believe, and thereon allege, that there are at least thousands of purchasers who have been damaged by the conduct alleged herein.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 30 -                                    Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

145. **Commonality and Predominance.** This action involves common questions of law and fact which predominate over any questions affecting individual class members including, without limitation, the following:

a. Whether Defendant BP violated California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, by, among other things, engaging in unfair, unlawful, or fraudulent practices;

b. Whether Defendants breached their implied warranties to Plaintiffs and the Class;

c. Whether Defendant BP violated California's Consumer Legal Remedies Act, Civ. Code §1750 *et seq.*, by falsely advertising the Solar Panels were of a certain quality when in fact, they were not;

d. Whether Defendant BP breached its express warranties to Plaintiffs and the Class;

e. Whether Plaintiffs and the Class are entitled to compensatory damages, and the amount of such damages; and

f. Whether Defendants should be declared financially responsible for the costs and expenses of removal and replacement of all Solar Panels as well as compensation for the lost energy generation capacity of the Solar Panels.

146. **Typicality.** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all members of the Class, have been damaged by Defendants' unlawful conduct, in that Plaintiffs will incur the cost of removing and replacing the defective Solar Panels, and have and will incur the increased costs of electricity resulting from the loss of electricity generation during the period between the failures and replacement. The factual bases and causes of action for Plaintiffs' claims are common to all members of the Class and represent a common course of misconduct resulting in injury to all Class members.

147. **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class and they have retained counsel competent and experienced in complex class action litigation and who specialize in class actions involving defective construction products. Plaintiffs intend to prosecute this action vigorously and the interests of the Class will be fairly and adequately protected by Plaintiffs and

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 31 -                    Case No. 3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1   their counsel.

2       148.   **Superiority.**  A class action is superior to all other available means for the fair and

3   efficient adjudication of this controversy in that:

4       a.      The prosecution of separate actions by individual members of the Class would

5               create a foreseeable risk of inconsistent or varying adjudications which would

6               establish incompatible results and standards for Defendants;

7       b.      Adjudications with respect to individual members of the Class would, as a

8               practical matter, be dispositive of the interests of the other members not parties to

9               the individual adjudications or would substantially impair or impede their ability to

10              protect their own separate interests;

11      c.      Class action treatment avoids the waste and duplication inherent in potentially

12              thousands of individual actions, and conserves the resources of the courts; and

13      d.      The claims of individual class members are not large when compared to the cost

14              required to litigate such claims. The individual Class members' claims are on

15              average approximately $20,000 to $25,000.  Given the high cost of litigation, it

16              would be impracticable for the members of the Class to seek individual redress for

17              Defendants' wrongful conduct.  The class action device provides the benefits of

18              single adjudication, economies of scale, and comprehensive supervision by a

19              single court.  The case presents no significant management difficulties which

20              outweigh these benefits.

21      e.      In the absence of the injunctive and declaratory relief requested herein Defendant

22              BP will continue to attempt to enforce the Warranty Exclusions which are not

23              enforceable, resulting in unreasonable settlements in which members of the Class

24              do not receive fair compensation for their injury.

25  **VI.    DAMAGE**

26      149.   As a result of the facts alleged herein, Plaintiffs and the Class have been damaged

27  in an amount equal to the difference in value between the Solar Panels had they been as

28  represented by BP and the value of the Solar Panels as actually delivered by BP.  In addition,

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 32 -                                Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

Plaintiffs and the Class have been or will be compelled to incur cost and expense to, *inter alia*, investigate the reasons for the failure of their Solar Panels, remove and replace the Solar Panels, and pay increased electricity costs resulting from the loss of electricity generated by the Solar Panels. These amounts include sums necessary to repair damage to the roof which occurs because the mounts for the Solar Panels must be removed, as well as the cost of building permits and the cost to replace the inverters for the solar system as alleged in Paragraphs 94-105 (Allagas), 112-121 (Ray) and 124-130 (Mohrman). In addition, the acts of BP in misrepresenting and omitting relevant facts concerning the Solar Panels, deceiving Plaintiffs and the Class concerning the safety and reliability of the Solar Panels, enforcing the Warranty Exclusions and implementing Claim Suppression strategy were: (1) malicious in that they represent "despicable conduct" carried on by BP "with a willful and conscious disregard of the rights or safety of others;" (2) oppressive in that they represent "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights;" and (3) fraudulent. Accordingly, Plaintiff and the Class are entitled to punitive damages according to proof.

## VII.   STATUTE OF LIMITATIONS ISSUES

150.   The defect in the junction box does not become apparent until a sufficient number of Solar Panels have failed, resulting in a loss of power and an increase in utility bills. Even when such failures occur, it is difficult for members of the Class to determine the actual cause of the failure. Accordingly, Plaintiffs did not and members of the Class do not become aware of the misrepresentations and breaches of warranty alleged herein until the defects in the Solar Panels become manifest and the property owner does sufficient investigation to identify the source of the problem. Accordingly, the statute of limitations for the claims asserted herein does not commence to run until some period of time after the Solar Panels have failed.

151.   For the reasons addressed in Paragraph 36 and 37 above, BP was under a continuous duty to disclose to distributors, sellers, installers and end users, including Plaintiffs and the Class, the defect in the junction box, the safety issues related thereto, including the risk of fire, the existence of numerous returns of product related to the junction box defect and the occurrence of fires which actually occurred as a result of the defect.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 33 -          Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

152.     Despite this duty, BP did not make any general disclosure of the defect in the junction box until 2009, at which time it made misleading and inaccurate disclosures concerning the extent and severity of the defect and the products affected by it.  Nor did BP disclose the safety risk associated with the junction box failure until the 2012 Product Advisory.  As alleged previously, the Product Advisory grossly misstates the nature and extent of the risk to Plaintiffs and the Class.

153.     In addition, when confronted with the fire damage caused by the Solar Panels, BP actively concealed the cause of the defect and suggested, *inter alia*, that the observed breakage of the glass and burn marks were caused by a bad batch of glass or some other cause unrelated to the defect in the junction box.

154.     Plaintiffs and the Class reasonably relied upon BP's concealment of the defect and its representations concerning the quality of the Solar Panels.  As a result of this reliance, Plaintiffs and members of the Class failed to assert claims against BP until they became aware of the failure of the Solar Panels and its cause.  Accordingly, BP is estopped to rely on any statutes of limitation in defense of this action.

## FIRST CLAIM FOR RELIEF

### (For Violation of the California Consumer Legal Remedies Act)

### (By Plaintiffs and the Consumer Subclasses against BP)

155.     Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.  The defect alleged herein is detailed at Paragraphs 15 through 23.  BP's knowledge and concealment of the defect and its obligation to disclose relevant facts is detailed at Paragraphs 24 through 38.  BP's representations concerning the Solar Panels and the falsity of those representations is detailed at Paragraphs 39 and 51 through 53.  BP's dissemination of its misrepresentations and omissions and its effects on distributors, sellers, installers and end users, including their adverse reliance on these representations and omissions, is detailed at Paragraphs 54 through 70, Paragraph 91 (Allagas), and Paragraph 109 (Ray).  BP's inadequate public offers to remedy the problems caused by the Solar Panels and it failure to warn consumers concerning this defect is addressed at Paragraphs 71 through 78.  The Warranty Exclusions and their

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 34 -                                                    Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

unfairness is detailed at Paragraphs 43 through 50.  BP's Claim Suppression Strategy is detailed at Paragraphs 79 through 84.  The inability of BP to assert statute of limitations defenses is addressed at Paragraphs 150 through 154.

156.    Where relevant, Plaintiffs also refer to the specific factual allegations supporting each element of the claim alleged herein.

157.    The Solar Panels are "goods" as defined by Civil Code § 1761(a).

158.    Defendant BP is a "person" as defined by Civil Code § 1761(c).

159.    Plaintiffs and members of the Consumer Subclasses are "consumers" as defined by Civil Code § 1761(d) who purchased the Solar Panels for personal, family, and household purposes.

160.    The purchase by Plaintiffs and members of the Consumer Subclasses of the Solar Panels are "transactions" as defined by Civil Code § 1761(e).

161.    Under the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1770, *et seq*., the following methods of competition and unlawful when any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer:

a.    Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5).

b.    Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

c.    Inserting an unconscionable provision in the contract.  Civil Code § 1770(a)(19).

162.    Defendant BP violated Civil Code §§ 1770(a)(5) and (a)(7) when it represented, through advertising and other express representations that the Solar Panels had benefits or characteristics that they did not actually have and were of a certain standard or quality, when they were not.  These representations and warranties, and the methods by which they were disseminated are detailed at Paragraphs 39, 51, 52 and 54 through 70.  The reasons they are false are stated in Paragraph 53.  BP also omitted to disclose the facts it was required to disclose

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 35 -                                    Case No.  3:14-cv-00560-SI
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1 pursuant to §§ 1770(a)(5) and (a)(7), as more fully stated in stated in Paragraphs 24 through 38

2 (duty to disclose addressed in Paragraph 37).

3     163.    Defendant BP violated Civil Code § 1770(a)(19) by including in the Warranty the

4 unconscionable Warranty Exclusions.  The Warranty Exclusions and the reasons they are

5 unconscionable are described in Paragraphs 43 through 50.

6     164.    Had Plaintiffs and members of the Consumer Subclasses known that the

7 representations and warranties made by BP concerning the Solar Panels were false or had they

8 been aware of the facts BP was obligated to disclose, Plaintiffs and members of the Consumer

9 Subclasses would not have purchased the Solar Panels or purchased properties on which the Solar

10 Panels were installed.  Plaintiffs and members of the Consumer Subclasses would not have made

11 these purchases because: (1) if distributors, sellers and installers had known of the falsity of BP's

12 representations and warranties, or had BP disclosed the facts it was obligated to disclose, they

13 would have recommended against the purchase of the Solar Panels; and (2) irrespective of such

14 recommendations, if Plaintiffs and the Consumer Subclasses had been aware of the falsity of BP's

15 representations and warranties or become aware of the facts BP was obligated to disclose, they

16 would not have purchased the Solar Panels or properties on which the Solar Panels were installed.

17     165.    The facts supporting the allegations in the preceding Paragraph are detailed in

18 Paragraphs 54 through 70 (particularly Paragraphs 69 and 70) (distributors, sellers and installers),

19 85 through 91 (Allagas), 106 through 109 (Ray) and 122 through 123 (Mohrman).

20     166.    As a result of Defendant BP's unfair and deceptive acts and practices, Plaintiffs

21 and members of the Consumer Subclasses have been harmed and seek actual damages according

22 to proof, attorneys' fees and costs and such other relief as the court deems proper.  Harm to

23 Plaintiffs is detailed at Paragraph 149 and at Paragraphs 94 through 105 (Allagas), 112 through

24 121 (Ray) and 124 through 130 (Mohrman).  Harm to the Consumer Subclasses is detailed in

25 Paragraph 149.

26     167.    Allagas served Defendant BP with notice of its violations of the CLRA pursuant to

27 Civil Code § 1782 (the "Notice") by certified mail on October 24, 2013.  A copy of the Notice is

28 attached hereto as **Exhibit O**.  Defendant BP failed to provide or offer to provide remedies for its

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

1    violations of the CLRA within 30 days of the date of the Notice.

2                    **SECOND CLAIM FOR RELIEF**

3                   **(For Breach of Express Warranty)**

4                  **(By Plaintiffs and the Class against BP)**

5          168.    Plaintiffs incorporate by reference each allegation set forth in the preceding

6    paragraphs.  Plaintiffs also refer to the summary of allegations relevant to this Claim for Relief in

7    Paragraph 155.

8          169.    As relevant, Plaintiffs refer to the specific factual allegations supporting each

9    element of the claim alleged herein.

10         170.    BP made the warranties described in Paragraphs 39 (Written Warranty) and 51

11   (warranties contained in marketing materials).

12         171.    BP is not entitled to enforce the Warranty Exclusions described in Paragraph 43

13   because they are unconscionable and violate the provisions of applicable law including, without

14   limitation, the Song-Beverly Consumer Warranty Act and the Magnuson – Moss Warranty Act

15   (Paragraphs 44 through 50).

16         172.    Because the Solar Panels either have failed or are certain to fail within their

17   expected useful life (Paragraphs 20, 101, 115 and 126-27), BP is in breach of both the Defect

18   Warranty and the Power Warranties contained in the Warranty.  The breaches of the Warranty

19   issued to the Plaintiffs are detailed in Paragraphs 94-105 (Allagas), 112 through 121 (Ray) and

20   124 through 130 (Mohrman).  Warranties to the Plaintiffs and the Class have also been breached

21   because the Solar Panels have failed or will fail within their useful life and because the warranties

22   contained in Paragraph 51 were false.  Harm to Plaintiffs and the Class is detailed in

23   Paragraph 149.

24         173.    As detailed in Paragraphs 102 through 105 (Allagas), 115 through 121 (Ray) and

25   127 through 130 (Mohrman), BP has failed to remedy the breach of the Warranty for either

26   Plaintiffs or the Class (Paragraphs 102-105).

27         174.    Although Plaintiffs do not believe that notice to BP of its breaches of warranty are

28   required under applicable law, as detailed in Paragraphs 99 and 102 (Allagas), 116 and 119 (Ray)

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 37 -                           Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

and 125 (Mohrman), Plaintiffs have notified BP of its breaches of the Warranty. In addition, the Notice attached hereto as Exhibit O provided BP with timely notice on behalf of the Class of the breach of the Warranty and the invalidity of the Warranty Exclusions alleged herein (Paragraphs 102, 166 and Exhibit O).

175.    Further notice to BP of its breach of the Warranty would be futile because BP is aware of and has acknowledged the defects in the Solar Panels and, because it no longer manufactures the Solar Panels, it cannot provide to Plaintiffs and the Class any remedy other than replacement of the Solar Panels with other panels.

176.    As a result of BP's breach of the Warranty and the warranties detailed in Paragraph 51, Plaintiffs and the Class have suffered damages as detailed in Paragraph 149 in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF

**(Breach of Express Warranty - Magnuson-Moss Warranty Act)**

**(By Plaintiffs and the Consumer Subclasses against BP)**

177.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.  Plaintiffs also refer to the summary of allegations relevant to this Claim for Relief in Paragraph 155.

178.    The allegations of this Claim for Relief are based on the breaches of warranty addressed fully in the previous Claim for Relief.  The specific allegations of the Complaint relevant to that claim are detailed therein.

179.    The Solar Panels are a consumer product as defined in 15 U.S.C. § 2301(1).

180.    Plaintiffs and the members of the Consumer Subclasses are consumers as defined in 15 U.S.C. § 2301(3).

181.    BP is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

182.    The Warranty contains "written warranties" within the meaning of 15 U.S.C. § 2301(6).

183.    As alleged previously, BP has breached the Warranty.

184.    Additionally, pursuant to 15 U.S.C. § 2304(d)(1), BP may not assess Plaintiffs or

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 38 -          Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

the Consumer Subclasses any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product…[I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor." BP has refused to pay all costs associated with the removal and replacement of the Solar Panels.

185.    Plaintiffs have provided BP with notice of breach of the Warranty and a reasonable opportunity to cure the breach. In addition, the Notice afforded BP notice on behalf of the Consumer Subclasses of its breach of the Warranty and a reasonable opportunity to remedy the breach. BP has failed to remedy the breach of its obligations to the Consumer Subclasses under the Warranty.

186.    Further notice to BP of its breach of the Warranty would be futile because BP is aware of and has acknowledged the defects in the Solar Panels and, because it no longer manufactures the Solar Panels, it cannot provide to Plaintiffs and the Consumer Subclasses any remedy other than replacement of the Solar Panels with other panels.

187.    As a result of BP's breach of the Warranty, Plaintiffs and the Consumer Subclasses have been damaged as detailed in Paragraph 149 in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**(Breach of Express Warranty under Song-Beverly Consumer Warranty Act)**

**(By Plaintiffs and the Consumer Subclasses against BP)**

188.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs. Plaintiffs also refer to the summary of allegations relevant to this Claim for Relief in Paragraph 155.

189.    The allegations of this Claim for Relief are based on the breaches of warranty addressed fully in the Third Claim for Relief. The specific allegations of the Complaint relevant to that claim are detailed therein.

190.    The Solar Panels are consumer goods within the meaning of California's Song-

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 39 -                                 Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1   Beverly Consumer Warranty Act.

2        191.    BP is a "manufacturer" within the meaning of the statute.

3        192.    Plaintiffs and members of the Consumer Subclasses purchased Solar Panels within

4   the State of California.

5        193.    As alleged previously, BP breached the Warranty.

6        194.    Plaintiffs have provided BP with notice of breach of the Warranty and a reasonable

7   opportunity to cure the breach.  In addition, the Notice afforded BP notice on behalf of the

8   Consumer Subclasses of its breach of the Warranty and a reasonable opportunity to remedy the

9   breach.  BP has failed to remedy the breach of its obligations to the Consumer Subclasses under

10  the Warranty.

11       195.    Further notice to BP of its breach of the Warranty would be futile because BP is

12  aware of and has acknowledged the defects in the Solar Panels and, because it no longer

13  manufactures the Solar Panels, it cannot provide Plaintiffs and the Consumer Subclasses any

14  remedy other than replacement of the Solar Panels with other panels.

15       196.    As a result of BP's breach of the Warranty, Plaintiffs and the Consumer

16  Subclasses have been damaged as detailed in Paragraph 149 in an amount to be proven at trial.

17                            **FIFTH CLAIM FOR RELIEF**

18                           **(Breach of Implied Warranty)**

19                  **(By Plaintiffs and the Class against All Defendants)**

20       197.    Plaintiffs incorporate by reference each allegation set forth in the preceding

21  paragraphs.  Plaintiffs also refer to the summary of allegations relevant to this Claim for Relief in

22  Paragraph 155.

23       198.    As relevant, Plaintiffs refer to the specific factual allegations supporting each

24  element of the claim alleged herein.

25       199.    The sale by Defendants of the Solar Panels was accompanied by implied

26  warranties that the Solar Panels were merchantable and fit for the ordinary purpose for which

27  such products were sold (the "Implied Warranties").

28       200.    Home Depot sold the Solar Panels directly to Allagas and members of the Home

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 40 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

Depot Subclass and they are therefore in direct privity with Home Depot.

201.    BP issued the Warranty to Allagas, Ray and the Initial Purchaser Subclass.  BP extended the benefit of the Warranty to Mohrman and members of the Subsequent Purchaser Subclass.  BP is therefore in direct privity with each Plaintiff and all members of the Class.

202.    Further, the Implied Warranties incorporated into the transaction between BP and its immediate purchasers (the "BP Buyers") were intended solely to benefit Plaintiffs and the Class.  Plaintiffs and the Class are therefore entitled to enforce the Implied Warranties against BP.

203.     This intent is evidenced, *inter alia*, by the fact that the written Warranty issued by BP extends not only to end users but to their successors.  Further, the Implied Warranties made by BP to the BP Buyers would be of no economic value to the BP Buyers unless Plaintiffs and Class received the benefit of such warranties.  The BP Buyers are not users of the Solar Panels. The economic benefit of implied warranties made by BP to the BP Buyers depends on the ability of end users who buy their products to obtain redress from BP if the warranties are breached.  For this reason, Home Depot expressly disclaims warranties relating to the Solar Panels and agrees only to assist its customers in asserting warranty claims.  It is in the best interests of Home Depot and other BP Buyers that Plaintiffs and the Class be permitted to enforce implied warranties against BP.

204.    Under *Gilbert Financial Corp. v. Steelform Contracting Co.* (1978) 82 Cal. App. 3d 65, the Implied Warranties made by BP to the BP Buyers are enforceable whether or not Plaintiffs or the Class were in privity of contract with BP.

205.    Defendants breached the Implied Warranties in that the Solar Panels are: (1) not fit for their intended use and (2) not of merchantable quality.  The Solar Panels are neither merchantable nor fit for their intended use as power replacement because: (1) the latent defect in the Solar Panels (Paragraphs 15 through 23) insures that they will fail well before the end of their useful life (Paragraph 20) and therefore fail to produce electricity; and (2) purchasers of solar panels would not accept the risk of fire posed by the Solar Panels (Paragraphs 17 through 19) when there are other products for sale which do not present this risk.

206.    Although Plaintiffs do not believe that notice to BP of its breaches of warranty are

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 41 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

required under applicable law, as detailed in Paragraphs 99 and 102 (Allagas), 116 and 119 (Ray) and 125 (Mohrman), Plaintiffs have notified BP of its breaches of the Warranty. In addition, the Notice attached hereto as Exhibit O provided BP with timely notice on behalf of the Class of the breach of the Warranty and the invalidity of the Warranty Exclusions alleged herein (Paragraphs 102, 166 and Exhibit O).

207.    Further notice to BP of its breach of the Implied Warranties would be futile because BP is aware of and has acknowledged the defects in the Solar Panels and, because it no longer manufactures the Solar Panels, it cannot provide to Plaintiffs and the Class any remedy other than replacement of the Solar Panels with other panels manufactured by others.

208.    Because the Solar Panels either have failed or are certain to fail within their expected useful life (Paragraphs 20, 101 and 115), BP is in breach of both the Defect Warranty and the Power Warranties contained in the Warranty.  The breaches of the Written Warranties issued to the Plaintiffs are detailed in Paragraphs 94-105 (Allagas), 112 through 121 (Ray) and 124 through 130 (Mohrman).  Harm to Plaintiffs and the Class is detailed in Paragraph 149.

209.    As detailed in Paragraphs 102 through 105 (Allagas), 115 through 121 (Ray) and 127 through 130 (Mohrman), BP has failed to remedy the breach of the Warranty for either Plaintiffs or the Class (Paragraphs 102-105).

210.    As a result of the breach of the Implied Warranties, Plaintiffs and the Class have been damaged as detailed in Paragraph 149 in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (Breach of Implied Warranty - Magnuson-Moss Warranty Act)

### (By Plaintiffs and the Consumer Subclasses against All Defendants)

211.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.  Plaintiffs also refer to the summary of allegations relevant to this Claim for Relief in Paragraph 155.

212.    The allegations of this Claim for Relief are based on the breaches of warranty addressed fully in the Fifth Claim for Relief.  The specific allegations of the Complaint relevant to that claim are detailed therein.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 42 -                                        Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

213.    Plaintiffs and the Consumer Subclasses are consumers as defined in 15 U.S.C. § 2301(3).

214.    Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

215.    The Solar Panels are consumer products as defined in 15 U.S.C. § 2301(1).

216.    Under 15 U.S.C. §2301(7), Defendants extended the Implied Warranties to Plaintiffs and the Consumer Subclasses.

217.    Defendants breached the Implied Warranties by selling Solar Panels that were neither merchantable nor fit for their intended purpose.

218.    Under 15 U.S.C. §2310(e), notice of breach of warranty need not be provided until after Plaintiffs have been appointed Consumer Subclasses Representatives.

219.    Plaintiffs have provided BP with notice of breach of the Implied Warranties and a reasonable opportunity to cure the breach.  In addition, the Notice afforded BP notice on behalf of the Consumer Subclasses of its breach of the Implied Warranties and a reasonable opportunity to remedy the breach.  BP has failed to remedy the breach of its obligations to the Consumer Subclasses under the Implied Warranties.

220.    As a result of Defendants' breach of the Implied Warranties, Plaintiffs and the Consumer Subclasses have been damaged as detailed in Paragraph 149 in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Implied Warranty under Song-Beverly Consumer Warranty Act)

### (By Plaintiffs and the Consumer Subclasses against All Defendants)

221.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.  Plaintiffs also refer to the summary of allegations relevant to this Claim for Relief in Paragraph 155.

222.    The allegations of this Claim for Relief are based on the breaches of warranty addressed fully in the Fifth Claim for Relief.  The specific allegations of the Complaint relevant to that claim are detailed therein.

223.    Under the Song-Beverly Consumer Warranty Act, Civ. Code § 1792 *et seq*., every

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 43 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1    sale of consumer goods in the State of California is accompanied by both a manufacturer's and

2    retail seller's implied warranty that the goods are merchantable.

3              224.    The Solar Panels are consumer goods within the meaning of the statute.

4              225.    Defendant BP is a "manufacturer" and Defendant Home Depot is a "retail seller"

5    within the meaning of the statute.

6              226.    Plaintiffs and members of the Consumer Subclasses purchased Solar Panels in the

7    State of California.

8              227.    By operation of law, all Defendants made the Implied Warranties to Plaintiffs and

9    the Consumer Subclasses concerning the Solar Panels.

10             228.    Defendants have breached the Implied Warranties by selling Solar Panels which

11   were not of merchantable quality and which failed to perform the tasks for which they were

12   intended.

13             229.    Members of the Home Depot Consumer Subclass are in privity with Home Depot.

14   Plaintiffs and all other Consumer Subclasses Members do not have to be in privity with any

15   Defendant in order to enforce the Implied Warranties.  Civil Code § 1792, which provides that

16   "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that

17   are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's

18   implied warranty that the goods are merchantable," has no privity requirement.

19             230.    Further, for the reasons stated in Paragraphs 202 through 204, Plaintiffs and the

20   Class are intended beneficiaries of the Implied Warranties between BP and the BP Buyers and are

21   therefore entitled to enforce the Implied Warranties against BP.

22             231.    Plaintiffs have provided BP with notice of breach of the Implied Warranties and a

23   reasonable opportunity to cure the breach.  In addition, the Notice afforded BP notice on behalf of

24   the Consumer Subclasses of its breach of the Implied Warranties and a reasonable opportunity to

25   remedy the breach.  BP has failed to remedy the breach of its obligations to the Consumer

26   Subclasses under the Implied Warranties.

27             232.    Further notice to BP of its breach of the Implied Warranties would be futile

28   because BP is aware of and has acknowledged the defects in the Solar Panels and, because it no

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 44 -                    Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

longer manufactures the Solar Panels, it cannot provide to Plaintiffs and the Class any remedy other than  replacement of the Solar Panels with other panels.

233.    As a result of Defendants' breaches of the Implied Warranties, Plaintiffs and Consumer Subclasses Members have been damaged as detailed in Paragraph 149 in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### (For Violation of Unfair Competition Law)

### (By Plaintiffs and the Class against BP)

234.    Plaintiffs incorporate by reference each allegation set forth in the preceding paragraphs.  Plaintiffs also refer to the summary of allegations relevant to this Claim for Relief in Paragraph 155.

235.    As relevant, Plaintiffs refer to the specific factual allegations supporting each element of the claim alleged herein.

236.    Pursuant to Bus. & Prof. Code § 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

237.    BP's actions, as alleged herein, constitute deceptive, unfair, fraudulent, and unlawful practices committed in violation of the Bus. & Prof. Code § 17200, *et seq.*

238.    All of the conduct and representations alleged herein occurred in the course of BP's business and were part of a pattern or generalized course of conduct.

239.    BP's conduct was unlawful because it violated the Consumer Legal Remedies Act, Magnuson-Moss Warranty Act and Song-Bervely Consumer Warranty Act as previously alleged.

240.    The advertising and sale of the Solar Panels by use of brochures and warranty documents detailed in Paragraphs 39, 51, 52 and 54 through 70 was "fraudulent" because it was likely to and did deceive purchasers into believing that the Solar Panels would be durable and provide safe and reliable power for decades.  *See*, Paragraphs 54 through 70, particularly Paragraphs 69 and 70. The Solar Panels are not durable or safe and fail to produce the specified level of power well in advance of the relevant periods under the Warranty (Paragraphs 20 and

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 45 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

53).  BP's omission to disclose the facts it was required to disclose as more fully stated in stated in Paragraphs 24 through 38 (duty to disclose addressed in Paragraph 37) is also "fraudulent" under Bus. & Prof. Code § 17200.

241.  BP's deceptive, unfair, fraudulent, and unlawful conduct alleged herein was specifically designed to and did induce Allagas, Ray and members of the Initial Purchaser Subclass to purchase the Solar Panels.  *See* Paragraphs 54 through 70, 91(Allagas) and 109 (Ray).

242.  Allagas, Ray and members of the Initial Purchaser Subclass reasonably and justifiably relied on Defendant BP's deceptive, unfair, and unlawful conduct alleged herein.  But for such conduct, Allagas and members of the Initial Purchaser Subclass would not have purchased the BP Solar Panels.  *See* Paragraphs 54 through 70 (particularly Paragraphs 69 and 70) (distributors, sellers, installers and the Class), 85 through 91 (Allagas), 106 through 109 (Ray) and 122-123 (Mohrman).

243.  As a result of Defendant BP's unfair methods of competition and unfair or deceptive acts or practices, Allagas, Ray and members of the Initial Purchaser Subclass have suffered injury-in-fact, lost money, and lost property, in that they have incurred out-of-pocket labor costs and energy loss associated with the faulty solar system.  Harm to Plaintiffs is detailed at Paragraph 149 and at Paragraphs 94 through 105 (Allagas) and 112 through 121 (Ray).  Harm to the Initial Purchaser Subclass is detailed in Paragraph 149.

244.  Pursuant to Bus. & Prof. Code §§ 17203, 17204, Allagas, Ray, and the Class seek to recover from Defendants restitution of earnings, profits, compensation and benefit obtained as a result of the practices that are unlawful under Bus. & Prof. Code § 17200 *et seq*., and other appropriate relief, according to proof.

245.  Additionally, by threatening to enforce and actually enforcing the Warranty Exclusions (Paragraph 43), by engaging in the Claim Suppression Strategy (Paragraphs 79 through 84) and by understating and failing to disclose the risk of fire resulting from the failure of the Solar Panels (Paragraphs 24 through 38 and 74 through 78), BP acted unfairly and unlawfully against all members of the Class.  Members of the Class have been injured and will continue to be injured by the enforcement of the Warranty Exclusions, the Claim Suppression Strategy and the

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 46 -

Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1  understatement of the risk of fire posed by the Solar Panels.  *See,* Paragraphs 131 and 132

2  (Plaintiffs) and 79 through 84, particularly 82 through 84, and 149 (Class).

3       246.    The enforcement and threatened enforcement of the Warranty Exclusions, the

4  Claim Suppression Strategy and the understatement and nondisclosure of the risk of fire resulting

5  from the failure of the Solar Panels are unfair in that they: (1) violate public policy as expressed

6  in the Consumer Legal Remedies Act, the Magnuson-Moss Warranty Act and the Song-Berberly

7  Consumer Warranty action; (2) are immoral, unethical, oppressive, unscrupulous and

8  substantially injurious to consumers and these factors are not offset by the utility of BP's conduct

9  since the conduct is intended to and does only provide impediments to the assertion of valid

10  claims for recovery and limit the damages which BP is legally obligated to compensate; and

11  (3) inflict substantial injury on consumers which is not outweighed by any countervailing benefits

12  to consumers or competition and the injury to consumers is one consumers could reasonably have

13  avoided.

14       247.    Unless enjoined, BP's continued insistence upon the unenforceable Warranty

15  Exclusions and its further pursuit of the Claim Suppression Strategy threaten to harm the public in

16  the future.

## **PRAYER FOR RELIEF**

18       WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, prays

19  the Court to certify the Class as defined hereinabove, to enter judgment against Defendants and in

20  favor of the Class, and to award the following relief:

21       1.    For Certification of the proposed Class and each Subclass thereof;

22       2.    For compensatory damages as alleged herein, according to proof;

23       3.    For restitution and/or disgorgement of revenues, earnings, profits, compensation,

24  and benefits which were received by Defendants as a result of unlawful business acts or practices,

25  according to proof;

26       4.    For an injunction enjoining BP from enforcing, threatening to enforce or claiming

27  the right to enforce any of the Warranty Exclusions and from further pursuit of the Claims

28  Suppression Strategy, including a requirement that: (1) BP advise consumers affirmatively of

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 47 -                                    Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION

1   their rights to all damages to which they are lawfully entitled; (2) BP make full disclosure to all

2   members of the Class concerning the risk of fire or electrocution resulting from the failure of the

3   Solar Panels and advise members of the Class how they can determine if their Solar Panels have

4   failed;

5        5.      For exemplary and punitive damages according to proof;

6        6.      For costs and attorneys' fees, as allowed by law; and

7        7.      For such other further legal or equitable relief as this Court may deem appropriate

8   under the circumstances.

9   Dated: May 23, 2014                    BIRKA-WHITE LAW OFFICES

10

11                                          By:___/s/ David M. Birka-White_____
                                                DAVID M. BIRKA-WHITE
12
                                            Attorneys for Individual and Representative
13                                          Plaintiffs MICHAEL ALLAGAS,
                                            ARTHUR  RAY and BRETT MOHRMAN
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

- 48 -                              Case No.  3:14-cv-00560-SI

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTION