1   ARNOLD & PORTER LLP
    Matthew T. Heartney (SBN 123516)
2   matthew.heartney@aporter.com
    Alex Beroukhim (SBN 220722)
3   e.alex.beroukhim@aporter.com
    777 South Figueroa Street, Forty-Fourth Floor
4   Los Angeles, California  90017-5844
    Telephone:  213.243.4000
5   Facsimile:   213.243.4199

6

7   Attorneys for Defendants
    BP SOLAR INTERNATIONAL, INC., and
8   HOME DEPOT U.S.A., INC.

9                   UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13  MICHAEL ALLAGAS, ARTHUR RAY and BRETT MOHRMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BP SOLAR INTERNATIONAL, INC., HOME DEPOT U.S.A., INC. and DOES 1 -10, inclusive,<br><br>Defendants. | Case No. 3:14-cv-00560-SI<br><br>**DEFENDANTS BP SOLAR INTERNATIONAL, INC. AND HOME DEPOT U.S.A., INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE; COMBINED MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:      Hon. Susan Illston<br>Date:       July 11, 2014<br>Time:       9:00 a.m.<br>Crtm:       10<br><br>Action Filed:    February 6, 2014<br>Trial Date:      Not Set |

34748744

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 11, 2014, at 9:00 a.m., or as soon thereafter as this motion may be heard, in the courtroom of the Hon. Susan Illston, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendants BP Solar International, Inc. ("BP") and Home Depot U.S.A., Inc. ("Home Depot") will move this Court to dismiss and strike claims filed by Michael Allagas, Arthur Ray, and Brett Mohrman.

This motion is made pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) on the grounds that plaintiffs' complaint fails to state a claim upon which relief may be granted and, pursuant to Federal Rule of Civil Procedure 9(b), because their claims resting on allegations of fraud or misrepresentation are not alleged with particularity. This motion is also made pursuant to Federal Rules of Civil Procedure 12(f), which permits the Court to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.

Defendants base their motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the [Proposed] Order, any oral argument heard by the Court, such additional evidence as may be submitted to the Court, the pleadings in the case, and such other matters as the Court deems proper.

Dated: June 9, 2014.                    ARNOLD & PORTER LLP


                                        By: /s/ Matthew T. Heartney
                                            Matthew T. Heartney
                                            Alex Beroukhim
                                            Attorneys for Defendant
                                            BP SOLAR INTERNATIONAL, INC.
                                            and HOME DEPOT U.S.A., INC.

# TABLE OF CONTENTS

**Page**

Preliminary Statement................................................................1

Argument ....................................................................................1

I.   ALL OF ALLAGAS'S AND RAY'S EXPRESS WARRANTY
     CLAIMS, AND MOHRMAN'S EXPRESS WARRANTY CLAIM
     BASED ON THE DEFECT WARRANTY AND WARRANTIES
     BASED ON MARKETING MATERIALS, FAIL TO STATE A CLAIM .......2

     A.   Plaintiffs' Defect Warranty Claims are Untimely. ...................2

     B.   Allagas's And Ray's Power Warranty Claims Fail Because BP
          Did What Its Warranty Promised...............................................5

     C.   Plaintiffs Have Not Alleged, As They Must, What Marketing
          Materials Allegedly Giving Rise To Additional Express
          Warranties They Saw Or Relied On. ........................................8

II.  ALL OF PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL TO
     STATE A CLAIM FOR RELIEF .......................................................8

     A.   Plaintiffs' Implied Warranty Claims Are Untimely..................9

     B.   Plaintiffs' Implied Warranty Claims Based On General
          California Law Fail Because Plaintiffs Lack Vertical Privity
          With BP And Ray And Mohrman Lack Vertical Privity With
          Home Depot. ............................................................................13

III. PLAINTIFFS' CLAIMS UNDER THE CLRA AND FRAUDULENT
     PRONG OF THE UCL FAIL TO STATE A CLAIM FOR RELIEF .............14

     A.   Plaintiffs Fail To Allege With Particularity The Facts Giving
          Rise To These Fraud-Based Claims...........................................14

     B.   All Of The Purported Misleading  Statements Are Non-
          Actionable. ..............................................................................20

IV.  THE REMAINING THEORIES UNDER THE CLRA AND UCL
     SHOULD BE LIMITED .................................................................22

Conclusion ................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abraham v. Volkswagon of Am. Inc.*,
795 F.2d 238 (2d Cir. 1986) ........................................................... 3

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................ 13, 20, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................... 2

*Baba v. Hewlett Packard Co.*,
2012 WL 5336971 (N.D. Cal. Oct. 26, 2012) ............................. 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 5

*Berenblat v. Apple, Inc.*,
2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ............................. 12

*Blantz v. Cal. Dept. of Corrs. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) ......................................................... 9

*Brothers v. Hewlett-Packard Co.*,
2007 WL 485979 (N.D. Cal. Feb. 12, 2007) .................................. 6

*Chandler v. Chiron Corp.*,
1997 WL 464827 (N.D. Cal. July 28, 1997) ............................. 13, 14

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) .................................................. 3, 13

*Ehlrich v. BMW of N. Am.*,
801 F. Supp. 2d 908 (C.D. Cal. 2010) ......................................... 11

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ......................................... 10

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................... 1

*Grodzitsky v. Am. Honda Motor Co.*,
2013 WL 2631326 (C.D. Cal. June 12, 2013) ............................... 10

*Hiramanek v. Clark*,
2013 WL 3803613 (N.D. Cal. July 19, 2013) ................................. 5

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...................................................... 14

*Koehler v. Litehouse, Inc.*,
2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ................................. 2

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) ................................................................ 2

*Long v. Hewlett-Packard Co.*,
  2007 WL 2994812 (N.D. Cal. July 27, 2007) ............................... 4, 5

*MacDonald v. Ford Motor Co.*,
  2014 WL 1340339 (N.D. Cal. Mar. 31, 2014) ........................ 11, 12

*Marchante v. Sony Corp. of America*,
  801 F. Supp. 2d 1013 (S.D. Cal. 2011) ................................... 6, 10

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ........................................ 19

*Millman v. Subaru of Am., Inc.*,
  2009 WL 197527 (D. N.J. Jan. 27, 2009) ............................... 18, 19

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................ 20

*Papasan v. Allain*,
  478 U.S. 265 (1986) ....................................................................... 2

*Powers v. Lycoming Engines*,
  272 F.R.D. 414 (E.D. Pa. 2011) ................................................. 23

*Rahman v. Mott's LLP*,
  2014 WL 325241 (N.D. Cal. Jan. 29, 2014) .............................. 14

*Sefi v. Mercedes-Benz USA, LLC*,
  2013 WL 2285339 (N.D. Cal. May 23, 2013) ............................ 12

*Smith v. LG Elec. U.S.A., Inc.*,
  2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ........................... 9, 10

*Stearns v. Select Comfort Retail Corp.*,
  2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................... 6

*Tietsworth v. Sears*,
  2009 WL 3320486 (N.D. Cal. Oct. 18, 2009) ............................ 21

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................... 14

*Wang v. OCZ Tech. Group, Inc.*,
  276 F.R.D. 618 (N.D. Cal. 2011) ......................................... 15, 19

*Xavier v. Philip Morris USA Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) ..................................... 13

*Zabrowski v. MHN Gov't Servs. Inc.*,
  936 F. Supp. 2d 1145 (N.D. Cal. 2013) ........................................ 7

1

## STATE CASES

2

*Daugherty v. American Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006)..................................................................3, 4

3

4

*Gawara v. U.S. Brass Corp.*,
    63 Cal. App. 4th 1341 (1998)....................................................................18

5

*Gilbert Financial Corp. v. Steelform Contracting Co.*,
    82 Cal. App. 3d 65 (1978)..........................................................................13

6

7

*Mexia v. Rinker Boat Co.*,
    174 Cal. App. 4th 1297 (2009)...........................................................12, 13

8

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009)................................................................................22

9

10

*Mirken v. Wasserman*,
    5 Cal. 4th 1082 (1993)................................................................................20

11

*Wayne v. Staples, Inc.*,
    135 Cal. App. 4th 466 (2006).......................................................................7

12

## STATUTES AND RULES

13

Cal. Civ. Code 1791.1(c) ...............................................................................9

14

Cal. Com. Code § 2719(3) .............................................................................7

15

Cal. Com. Code § 2725(2) .............................................................................9

16

Fed. R. Civ. P. 9(b) .............................................................14, 15, 17, 18, 19

17

Fed. R. Civ. P. 12(b)(6) .................................................................................1

18

Fed. R. Civ. P. 12(f) ......................................................................................2

19

20

21

22

23

24

25

26

27

28

DEFS. BP SOLAR INT'L, INC. & HOME DEPOT U.S.A., INC.'S NOT. OF MOT. & MOT. TO
DISMISS & STRIKE; COMBINED MEMO. OF P. & A.

Defendants BP Solar International, Inc. ("BP") and Home Depot U.S.A., Inc. ("Home Depot") respectfully submit this combined motion to dismiss and motion to strike plaintiffs' First Amended Complaint ("FAC").

## Preliminary Statement

This is a purported state-wide class action relating to solar panels manufactured by BP ("Solar Panels"). In February 2014, defendants moved to dismiss plaintiffs' complaint and to strike its class allegations. In an Order dated April 21, 2014, the Court granted in part and denied in part defendants' motion to dismiss and denied defendants' motion to strike the class allegations. The Court recognized numerous deficiencies in plaintiffs' complaint, and granted leave to amend to allow plaintiffs to correct these deficiencies.

On May 23, 2014, plaintiffs filed the FAC, which again asserts claims for breach of express and implied warranty and violation of consumer fraud statutes against BP and claims for breach of implied warranty against Home Depot. As shown below, plaintiffs' amendments wholly fail to resuscitate their claims. Indeed, the FAC even more clearly demonstrates plaintiffs' inability to assert claims able to withstand a motion to dismiss. Defendants respectfully request that the Court grant this motion in its entirety.

Given its recent Order addressing the prior motion to dismiss, defendants recognize that the Court is familiar with the claims being asserted in this action. Accordingly, this motion will focus on plaintiffs' amendments to their complaint, and whether, and to what extent, those amendments correct the deficiencies identified in the Court's Order.

## Argument

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of the claims alleged in the complaint." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1093 (N.D. Cal. 2007). "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

show[n]—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted) (internal quotation marks omitted). Although the Court must accept all well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). When a plaintiff is not able to cure his defective pleading by amendment, dismissal without leave to amend is properly granted. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532-33 (9th Cir. 2008). Further, "the court may strike from a pleading any "'redundant, immaterial, impertinent, or scandalous matter.'" *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *1 (N.D. Cal. Dec. 13, 2012) (quoting Fed. R. Civ. P. 12(f)).

## I.  ALL OF ALLAGAS'S AND RAY'S EXPRESS WARRANTY CLAIMS, AND MOHRMAN'S EXPRESS WARRANTY CLAIM BASED ON THE DEFECT WARRANTY AND WARRANTIES BASED ON MARKETING MATERIALS, FAIL TO STATE A CLAIM

Plaintiffs have filed three claims for breach of express warranty. In Count Two, they claim that BP breached express warranties under general California law; in Count Three, they allege that BP breached express warranties under the Magnuson-Moss Act; and in Count Four, they allege that BP breached express warranties under the Song-Beverly Act. With respect to each Count, plaintiffs allege that BP breached its "Written Warranties" and purported "warranties contained in marketing materials." (FAC ¶¶ 170, 178, 189.) With respect to BP's Written Warranties, plaintiffs allege that BP breached "both the Defect Warranty and the Power Warranties." (*Id.* ¶ 172.) These theories fail for the reasons stated below.

### A.  Plaintiffs' Defect Warranty Claims are Untimely.

In its Order, the Court dismissed plaintiffs' Defect Warranty claims because they failed to allege the alleged defects giving rise to their claims had "manifested during the defect warranty period." (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Denying Defs.' Mot. to Strike at 5, Apr. 21, 2014, ECF No. 32 ("Order").) Both Allagas and Ray have added further allegations

- 2 -

attempting to show that, during the five-year Defect Warranty period applicable to them, certain of the solar panels installed at their homes failed as a result of the junction-box defect.  These allegations will be addressed below.  Mohrman added no further allegations addressing this issue, requiring that his Defect Warranty claim be dismissed without leave to amend.

BP's Defect Warranty warrants that its Solar Panels will be "free from defects in materials and workmanship" for a stated period "measured from the date of  initial purchase."  (FAC Ex. F.)  If "during the term of your warranty, there is such a defect," BP states that it will "repair or  replace Your BP SOLAR product with an equivalent product, or refund the purchase price."  (*Id.*)  Under California law, "an express warranty 'does not cover repairs made after the applicable time . . . period[] [has] elapsed."  *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006) (quoting *Abraham v. Volkswagon of Am. Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (following *Daugherty*).  As *Daugherty* further explained:

> [A]s a matter of law, in giving its promise to repair or replace any part that was defective in material or workmanship and stating that the car was covered for three years or 36,000 miles,  Honda "did not agree, and plaintiffs did not understand it to agree, to repair latent defects that lead to a malfunction after the term of the warranty."

144 Cal. App. 4th at 832.

Neither Allagas or Ray contend that, when certain of the Solar Panels allegedly failed during the Defect Warranty period, they contacted BP and requested repair or replacement of the allegedly failed panels.  Nor is the relief they seek in this lawsuit the repair or replacement of the failed panels--instead, they seek a full replacement of their solar system based an alleged belief that all of the BP panels installed at their homes "are certain to fail within their expected useful life."  (FAC ¶ 172.)  Such relief falls outside the scope of BP's Defect Warranty.  Further, as explained below, the

additional allegations made by Allagas and Ray fail to state any claim under the Defect Warranty.

Turning first to Ray, he alleges that, in 2010, he noticed an increase in his electrical bills and, in July and August of 2010, Diablo Solar, the installer of his system, replaced three panels that allegedly exhibited "burn marks."  (*Id.* ¶ 112.)  Ray does not allege that he was required to pay for the replacement of the panels, or that he suffered any other injury from the incident cognizable under the Defect Warranty.  (*Id.* ¶¶ 112-116.)  Later, in 2013--outside the Defect Warranty period--Ray alleges that a further solar panel installed at his home failed, and again was replaced by Diablo Solar.  (*Id.* ¶ 113.)

By his own account, Ray already has received the relief to which he might be entitled under the Defect Warranty--replacement of the failed panels.  His further claim seeking a full replacement of his solar system does not rest on the alleged failure of certain panels in 2010, but on a belief that all remaining panels will fail at some time in the future.  No such claim is permitted under the Defect Warranty.  "[I]t is clear following *Daughtery* that a plaintiff cannot maintain a breach of warranty claim under California law for a product that is repaired within the warranty period and fails again months after the warranty has expired."  *Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *4 (N.D. Cal. July 27, 2007).

Allagas alleges that, in mid-2006 (*i.e.*, within the Defect Warranty period), he observed that one of the "Panels in the bottom string was brown in color and 'looked different' from the others."  (*Id.* ¶ 94.)  He contacted the system's installer, who inspected the panels but found no failure or defect.  (*Id.* (installer "reported to [him] that his system was fine").)  Some seven years later, in September 2013, Allagas noticed that his system was not working properly and again contacted the installer.  (*Id.* ¶ 95.)  After inspecting the system, the installer informed him that four of his panels and the system inverter were not working.  (*Id.*)  Allagas now "estimates,"

1   based on a review of his electrical bills, that the certain of his solar panels had

2   actually stopped working in 2006. (*Id.* ¶¶ 97-98.)

3       Allagas's further allegations include no facts sufficient to support the

4   conclusion that certain of his panels failed in 2006. *Bell Atl. Corp. v. Twombly,* 550

5   U.S. 544, 545 (2007) ("Factual allegations must be enough to raise a right to relief

6   above the speculative level"); *Hiramanek v. Clark*, 2013 WL 3803613, at *7 (N.D.

7   Cal. July 19, 2013) (denying motion for reconsideration where plaintiffs' sole

8   allegation was based on speculation). Importantly, in 2006, his system was inspected

9   by an expert and no defect was found. (FAC ¶ 94.) While Allagas refers to a review

10  of his electrical bills, he does not describe what facts were uncovered by this review,

11  or explain why such facts could justify overruling the expert's conclusion that no

12  defect existed in 2006. (FAC ¶¶ 97-98.) Under *Twombly*, rank speculation of this

13  kind is insufficient to state a claim.

### B.   Allagas's And Ray's Power Warranty Claims Fail Because BP Did What Its Warranty Promised.

16      In its Order, the Court denied BP's motion to dismiss the Power Warranty

17  claims, and declined to take judicial notice of emails cited in plaintiffs' complaint

18  showing that BP's warranty offers to Allagas and Ray had offered a full replacement

19  solar system to both plaintiffs. (Order at 5 n.1.) In the FAC, Allagas and Ray now

20  acknowledge that the warranty proposals they received from BP in fact did include an

21  offer to replace their solar systems. (FAC ¶¶ 103, 118 (BP offered "the alternative of

22  having a third party installer . . . remove and replace the Solar Panels").) Allagas and

23  Ray do not allege that BP's offer of a replacement system was conditioned on their

24  release of any other claims against BP,[1] but instead state that they declined BP's offer

---

[1] Plaintiffs make no such claim for good reason--BP's emails setting forth its warranty proposals cited in the FAC submitted to the Court in support of defendants' prior motion make clear that no such condition was attached to BP's offer of a replacement system. (Req. For Judicial Notice Exs. 2 & 3, Feb. 27, 2014 ECF No. 15-1.)

- 5 -

due to alleged fears that "they could not trust" installers selected by BP to make these repairs.  (*Id.*)

      "Where the buyer refuses to permit replacement . . . of defects . . . the seller cannot be held liable for breach of warranty."  *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *5 n.5 (N.D. Cal. June 5, 2009).  In *Marchante v. Sony Corp. of America*, the court dismissed plaintiffs' warranty claims for just this reason, stating:

> Plaintiffs here have failed to allege a breach of the Extended Warranty.  None of the four named plaintiffs alleged that Sony either refused to repair any covered defects or refused to replace any televisions suffering from covered defects.  Plaintiffs Marchante and Sefo both declined Sony's offer of a refurbished television.  Plaintiff Ochoa alleges that Sony refused to repair the television, but does not allege that Sony refused to replace the television.  And because Sony retains this course of action until March 31, 2011, Ochoa has failed to allege breach of warranty.

801 F. Supp. 2d 1013, 1020 (S.D. Cal. 2011) (citations omitted); *see also Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007) (replacement is not inadequate when that "is exactly what the . . . Warranty provides"); *Baba v. Hewlett Packard Co.*, 2012 WL 5336971, at *8 (N.D. Cal. Oct. 26, 2012) (dismissing plaintiffs' express warranty claims because, "rather than shirking its express warranty obligations, [the defendant] was willing to fulfill them").

      Allagas and Ray certainly were free to accept, or not accept, BP's offer of a replacement system for any reasons they chose, but their allegations purporting to explain their alleged fears that BP would not utilize adequate installer are purely conclusory, and provide no adequate basis to conclude that BP's system replacement offer to them was insufficient to satisfy this portion of BP's Power Warranty.[2]  (*See*

---

[2] The FAC alleges that, "[i]n many cases where BP employed its own installers to install third-party solar panels, the installers they [sic] did not repair the damage caused by the replacement of the mounting racks or ameliorate the adverse changes to

(Footnote Cont'd on Following Page)

FAC ¶¶ 133-35.)  For this reason, Allagas's and Ray's Power Warranty claims, to the extent based upon an alleged right to receive a replacement solar system, should be dismissed or stricken.

Plaintiffs further allege that BP's warranty offer "did not offer to compensate [them] for any consequential damage such as loss of power, damage to the roof from the repair or expenses of investigation."  (*Id.* ¶¶ 103, 118.)  Under general California law, a seller may properly disclaim an obligation to compensate a buyer for alleged consequential damages provided that the disclaimer is made conspicuously and its terms are not unconscionable.  Cal. Com. Code § 2719(3).  Here, Allagas and Ray do not dispute that BP's disclaimer of consequential damages was conspicuous (*see* FAC Ex. F), but they argue that it nonetheless is unenforceable because it was "imposed unilaterally by BP" and it purportedly unfairly limits their recovery.  (FAC ¶¶ 44, 46.) The allegation that a disclaimer was imposed unilaterally, however, does not constitute procedural unconscionability, one of the two necessary "substantive elements" of unconscionability.  *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (2006); *id.* at 481-82 ("There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices."); *see also Zabrowski v. MHN Gov't Servs. Inc.*, 936 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013) ("Adhesion alone, however, is insufficient to find a contract unconscionable.").  Because Allagas and Ray offer no other grounds to establish procedural unconscionability, their claims to recover consequential damages pursuant to the Power Warranty under general California law (*i.e.,* in Count Two) fails as a matter of law.

Defendants recognize that, under the Song-Beverly Act, a seller such as BP is not permitted to disclaim a buyer's claim for consequential damages.  As to Allagas's

---

<small>(Footnote Cont'd From Previous Page)</small>

the appearance of the roof."  (FAC ¶ 133.)  There are no allegations that any of the plaintiffs were aware of this contention at the time they rejected BP's offer.

and Ray's Power Warranty claim under this Act (*i.e.*, Count Four) and the Magnuson-Moss Act (*i.e.*, Count Three), this is the only recovery they are entitled to seek. All other claims by Allagas and Ray under Counts Four and Five should be dismissed or stricken.

### C. Plaintiffs Have Not Alleged, As They Must, What Marketing Materials Allegedly Giving Rise To Additional Express Warranties They Saw Or Relied On.

In its Order, the Court determined that Allagas's and Ray's express warranty claim under the Power Warranty failed because they failed to allege "reliance" on this warranty. (Order at 6.) Assuming *arguendo* that Allagas and Ray have adequately addressed this issue with respect to the Power Warranty, the FAC's newly-added claim for express warranties "contained in marketing materials" fails for just this reason. (FAC ¶¶ 170, 178, 189.)

To support this theory, the FAC refers to a list of statements quoted in its paragraph 51, which are taken from BP's website, an alleged instructional video, and Product Data Sheets. Plaintiffs, however, nowhere identify which statements quoted in paragraph 51 allegedly constitute an enforceable express warranty, or what the alleged substance of that warranty is supposed to be. Even more to the point, no plaintiff claims to have reviewed any of the quoted materials listed in paragraph 51, much less to have relied on them. (This point is further addressed at pp. 14-19, in which defendants review in detail plaintiffs' confusing trail of allegations as to what BP documents, if any, they saw or relied on.) Such allegations are essential to any express warranty claim based on marketing materials, and plaintiffs' new found theory to this effect should be dismissed or stricken.

## II. ALL OF PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL TO STATE A CLAIM FOR RELIEF

Plaintiffs have similarly filed three claims for breach of implied warranty. These claims are brought against both BP and Home Depot. In Count Five, plaintiffs allege a breach of implied warranty under general California law; in Count Six, they

- 8 -

DEFS. BP SOLAR INT'L, INC. & HOME DEPOT U.S.A., INC.'S NOT. OF MOT. & MOT. TO DISMISS & STRIKE; COMBINED MEMO. OF P. & A.

allege a breach of implied warranty under Magnuson-Moss; and in Count Seven, they allege a breach of the Implied Warranty under Song-Berry.  All of plaintiffs' implied warranty claims fail for the reasons stated below.

### A.    Plaintiffs' Implied Warranty Claims Are Untimely.

In its Order, the Court dismissed the implied warranty claims under the Magnuson-Moss and Song-Berry Acts because it found that "plaintiffs have not stated that there was a latent defect in the solar panels."  (Order at 7.)  It also dismissed plaintiffs' implied warranty claim under general California law because "plaintiffs have not pled that the breach of the implied warranties occurred within the statutory duration of the warranties."  (*Id.*)  The FAC does not salvage plaintiffs' claims.

Plaintiffs only add a single conclusory allegation to allege that the Solar Panels' alleged defect is a latent one:  "The defect in the Solar Panels is latent and not discoverable until the customer experiences a junction box failure or fire."  (FAC ¶ 22.)  This conclusory allegation does not satisfy plaintiffs' pleading obligations.  *Blantz v. Cal. Dept. of Corrs. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013) (affirming dismissal of complaint because "[c]onclusory allegations . . . are insufficient to state a claim").  In any event, even if deemed to be "latent," the Solar Panels' alleged defect is indistinguishable from "latent" defects in other cases in which implied warranty claims have been dismissed as untimely.

Under California law, an implied warranty's duration must be "[n]o less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer."[3]  Cal. Civ. Code 1791.1(c).  Applying this rule, a recent decision by this Court held that purportedly latent defects in a washing machine were untimely.  *Smith v. LG Elec. U.S.A., Inc.* 2014 WL 989742, at *8 (N.D. Cal. Mar. 11, 2014).  There,

---

[3] Under general California law there is no "duration" for the implied warranty period.  The product is either merchantable or not (and a breach of the implied warranty occurs or not) at the time of delivery.  *See* Cal. Com. Code § 2725(2).

plaintiff based her claims upon the product's inability to "operate . . . at 1050-1100 RPMs," which allegedly was her reason for purchasing it. *Id.* at *7. She further alleged that "the alleged defect was 'latent' and 'hidden from consumers who could not have identified the defect.'" *Id.* In dismissing her claim, the court did not address her argument that the defect was "latent" and found her claim untimely because it was based "on events that occurred more than a year after the date of purchase." *Id.*

This is in accord with previous decisions of this Court. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852-53 (N.D. Cal. 2012) (dismissing Song-Beverly Act implied warranty claim because "Plaintiff alleges that his computer's issues arose only after seventeen months of use, well outside the one-year period established by the Song-Beverly Act"); *see also Marchante*, 801 F. Supp. 2d at 1021 (dismissing plaintiffs' implied warranty claims under common law and Song-Beverly Act because "[t]he implied warranty. . . had a one year duration . . . . [and plaintiffs] . . . d[id] not report any issues arising during the one year period"); *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326, at *10-11 (C.D. Cal. June 12, 2013) (applying a one-year duration to plaintiffs' implied warranty claims relating to an alleged window defect that "did not begin to fail until well more than a year" after purchase). Because plaintiffs allege no failure of any Solar Panel within one year following their purchases, their implied warranty claims fail as a matter of law.[4]

Given the absence of new allegations made in the FAC, plaintiffs likely will seek to defend this claim based on essentially the same arguments made in opposing

---

[4] Allagas alleges that he purchased his Solar Panels in 2005 (FAC ¶ 92), and claims that a defect first manifested in mid-2006. (FAC ¶ 94.) For the reasons stated above (*supra* at 4-5), the claim that a defect first manifested in 2006 should not be credited since it is based on a hunch and Allagas's allegations regarding what an expert told him in 2006 undermine that guess. Even if the Court were to credit this allegation, Allagas has not pled that a latent defect manifested within a year of purchase because he has not alleged when in 2006 the defect allegedly manifested. These allegations are insufficient to show that the defect first occurred within the one-year implied warranty period.

defendants' prior motion.  There, they argued the statute of limitations for implied warranty claims is four years, and that the Song-Beverly Act should be viewed as "extend[ing] to future performance because [it] provides 'an express provision for a duration of the implied warranty of merchantability.'"  (Pls.' Mem. of P. & A. in Opp. to Defs.' Mot. to Dismiss at 9, Mar. 13, 2014, ECF No. 18 ("MTD Opp.").)  Plaintiffs further argued that "an implied warranty claim under Song-Beverly based on a latent defect does not accrue until plaintiff discovers (or reasonably should have discovered) the facts giving rise to the claim."  (MTD Opp. 9-10 (citing *Ehrlich v. BMW of N. Am.*, 801 F. Supp. 2d 908, 925 (C.D. Cal. 2010)).)

Assuming a four-year statute of limitations applies to these claims, a recent Northern District of California decision holds that four years from the date of purchase is the *outer limit* for bringing implied warranty claims based on latent defects.  *MacDonald v. Ford Motor Co.*, 2014 WL 1340339, at *9-11 (N.D. Cal. Mar. 31, 2014) ("Without reaching the issue of whether the implied warranty was breached within the one-year period set forth by the Song-Beverly Act, the claim must be dismissed because the applicable statute of limitations has run.").  In *MacDonald*, plaintiffs filed a class action against Ford claiming that certain vehicles "contained inherently defective coolant pumps at the time of sale."  *Id.* at *9.  Plaintiffs further alleged that "[Ford] kn[e]w of the defect and failed to inform consumers" and that this defect "presented a safety risk to drivers."  *Id.* at *1.  All of the plaintiffs alleged that this defect manifested in their cars more than four years after they purchased their vehicles.  Based on the timing of the manifestation of the defect, the court dismissed all of the implied warranty claims.  *Id.* at *11 ("Plaintiffs allege that the defect was inherent, and existed at the time of sale.  Thus, the latest each Plaintiffs could have brought a claim was four years after the car was purchased.") (internal citations omitted).

In doing so, the court found "the reasoning in *Ehrlich* to be unpersuasive, and decline[d] to follow that court's interpretation of section 2725" because "nowhere

does [California law] suggest that the implied warranty's statute of limitations can be extended for the duration of an express warranty."  *Id.* at 10; *id.* at *11 ("The Court finds that the statute of limitations on Plaintiffs' Song-Beverly claim is not tolled by any express warranty, and is limited to four years from the breach of implied warranty."); *see also Berenblat v. Apple, Inc.*, 2009 WL 2591366, at *4 n.5 (N.D. Cal. Aug. 21, 2009) (implied warranty claims involving latent defects are untimely when the alleged defective product was purchased "more than four years prior to bringing suit"); *Sefi v. Mercedes-Benz USA, LLC*, 2013 WL 2285339, at *6 (N.D. Cal. May 23, 2013) (dismissing implied warranty claims brought under Song-Beverly Act because the lawsuit "was commenced more than six years [after the sale of the car], over two years after the expiration of the four-year statute of limitations on Plaintiffs' implied warranty claims").

Nothing makes this case different than the cases cited above.  As with the purported defect in the Solar Panels alleged here (FAC ¶ 20), the defect in the coolant pump in *MacDonald* was alleged to have existed at the time of sale, but did not manifest until years later.  *MacDonald*, 2014 WL 1340339 at *9; *see also Sefi*, 2013 WL 2285339 at *1, *6 (defective gears existed as of the date of sale).  Delayed discovery of the defect changes nothing.  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1305-06 (2009) ("In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, *not by its subsequent discovery*.") (emphasis added); *id.* at 1305 ("Thus, although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known.").

In the cases cited above, the plaintiffs claimed that a latent defect existed at the time of sale, but did not manifest until years later.  And in all of these cases, courts found that the claims were untimely because they were filed either more than one or more than four years after the product was purchased.  The same thing occurred here. Plaintiffs claim that "[b]ecause of the defect in the junction box, all Solar panels

relevant to this litigation have failed or will fail before the end of their expected useful life."  (FAC ¶ 20.)  They further acknowledge that this action was filed more than four years after they purchased the Solar Panels.[5]  Accordingly, all of plaintiffs' implied warranty claims are untimely.

### B. Plaintiffs' Implied Warranty Claims Based On General California Law Fail Because Plaintiffs Lack Vertical Privity With BP And Ray And Mohrman Lack Vertical Privity With Home Depot.

"[U]nder California law, [plaintiffs] must establish privity in order to assert a claim for implied warranty."  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (holding that a plaintiff alleging breach of implied warranty must "occupy adjoining links" with the defendant in the "chain of distribution"); *Clemens*, 534 F.3d at 1024 (holding that "[a] lack of vertical privity requires the dismissal of [plaintiff]'s implied warranty claims."); *Chandler v. Chiron Corp.*, 1997 WL 464827, at *7 (N.D. Cal. July 28, 1997) ("[V]ertical privity is a prerequisite in California for recovery on a breach of implied warranty theory . . . .").[6]

Plaintiffs' allegations demonstrate unequivocally that they are not in vertical privity with BP.  Allagas purchased his Solar Panels from Home Depot.  (FAC ¶ 92.) Ray purchased his Solar Panels from Diablo Solar Services.  (*Id.* ¶ 110.)  And Mohrman alleges that the solar panels were already installed when he purchased his home.  (*Id.* ¶ 122.)  Accordingly, BP and plaintiffs do not "occupy adjoining links" in

---

[5] Allagas alleges that a defect manifested in 2013 (FAC ¶ 95), eight years after he purchased the panels in 2005.  (FAC ¶ 92; *see also supra* n.4.)  Ray alleges the first defect manifested in July 2010 (FAC ¶ 112), five years after his purchase in 2005. (*Id.* ¶ 112.)  And Mohrman alleges that his system was operating over ten years after it was installed and that a defect manifested thereafter.  (*Id.* ¶ 122.)

[6] Plaintiffs' reliance on *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65 (1978) (FAC ¶ 204), is misplaced.  *See, e.g.*, *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1082-84 (N.D. Cal. 2011) (rejecting the third-party beneficiary theory of vertical privity because that "exception[]" "simply do[es] not exist in the California jurisprudence").  *Gilbert* did not involve consumer products and no case decided by the Ninth Circuit or the California Court of Appeal has applied this principle to consumer products.  *Id.*

the "chain of distribution," and no vertical privity exists between plaintiffs and BP. Ray and Mohrman also lack vertical privity with Home Depot since they bought their panels from Diablo Solar Services and the previous homeowner, respectively. Accordingly, their implied warranty claims fail as to Home Depot as well.

## III.   PLAINTIFFS' CLAIMS UNDER THE CLRA AND FRAUDULENT PRONG OF THE UCL FAIL TO STATE A CLAIM FOR RELIEF

The gravamen of plaintiffs' claims under the CLRA and the fraudulent prong of the UCL is that BP purportedly made misrepresentations and took other actions to deceive purchasers with respect to the quality, reliability and safety of its solar panels.  In connection with their CLRA claims, plaintiffs allege that BP misrepresented "through advertising and other express representations that the Solar Panels had benefits or characteristics that they did not actually have and were of a certain standard or quality, when they were not."  (*Id.* ¶ 162.)  With respect to the UCL, plaintiffs allege that "[t]he advertising and sale of the Solar Panels by use of brochures and warranty documents . . . was likely to and did deceive purchasers into believing that the Solar Panels would be durable and provide safe and reliable power for decades."  (*Id.* ¶ 240.)  In addition, plaintiffs allege that BP failed to disclose the alleged defect in the Solar Panels and purported fire risks relating to this defect. Plaintiffs' CLRA and UCL fraudulent prong allegations state no claim.

### A.   Plaintiffs Fail To Allege With Particularity The Facts Giving Rise To These Fraud-Based Claims.

Rule 9(b) requires that "the circumstances constituting fraud or mistake" must be stated with "particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s requirements apply to both federal and state law claims, including claims for alleged CLRA and UCL violations grounded in fraudulent conduct.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Rahman v. Mott's LLP*, 2014 WL 325241, at *8 (N.D. Cal. Jan. 29, 2014) ("The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading

standard applies to claims for violation of the UCL, FAL or CLRA that are grounded in fraud.").

To satisfy Rule 9(b), a plaintiff must plead the "who, what, when, where and how" of the defendant's conduct, including providing sufficient "detail and specificity" regarding this conduct. *E.g.*, *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 624, 627 (N.D. Cal. 2011). In *Wang*, for example, the court held that it was not enough for plaintiffs to "provide[] a time frame" during which defendants' alleged "deceptive conduct" occurred; instead, they must "allege when in that period [t]he[y] viewed, read, or otherwise came to rely upon [defendant]'s representations." *Id.* at 627. In addition, and more to the point here, the court rejected plaintiffs' references "to a wide range of marketing materials" allegedly giving rise to their claims, and insisted that plaintiffs must specify "which materials contain[ed] the relied-upon misrepresentations or omissions and when [plaintiffs] relied upon them." *Id.* at 628.

In its Order, the Court dismissed the CLRA and UCL claims ruling that plaintiffs had not "specified which facts they relied upon to" support the CLRA claim and, with respect to the UCL claims, had "not alleged, with specificity, which allegedly fraudulent statements [they] found material to their decision to purchase the solar panels." (Order at 10.)

While plaintiffs have added many new paragraphs to the FAC in an attempt to address these issues, nowhere does the FAC identify any particular document or representation prepared or made by BP which Allagas, Ray, or Mohrman relied upon in purchasing the Solar Panels. As did the Complaint, the FAC quotes a number of statements taken from BP's website, an alleged instructional video, and product data sheets that plaintiffs allege are misleading or false, and asserts that BP engaged in a "broad mass marketing campaign for the Solar Panels" in which further alleged misleading statements were made. (FAC ¶¶ 51-53.) But nowhere do plaintiffs allege with specificity that they actually reviewed any particular such document or representation, much less that any such document or representation included "alleged

misleading statements [they] found material to their decision to purchase the solar panels." (*E.g.*, Order at 8, 10.)   Their failure to do so leaves the FAC deficient for the same reasons as their prior complaint.

Starting with Allagas, he identifies the "representations and warranties upon which he relied" as those "stated in Paragraph 88."  (FAC ¶ 91.)  Paragraph 88, however, does not identify any document or representation prepared or made by BP that Allagas reviewed or relied on in purchasing the Solar Panels.[7]  Instead, it describes a visit by a "Mohr Power" representative to the Allagas home, in which this sales agent allegedly "brought with him" certain "brochures, product data sheets, the Warranty, and other written materials concerning the Solar Panels."  (*Id.* ¶ 88.)  Very conspicuously, the paragraph does not allege that the Mohr Power sales agent gave any of these materials to Allagas or state that Allagas himself saw or reviewed any such materials during the visit.  (*Id.*)  Nor, apart from the Warranty, does Paragraph 88 identify with particularity any of the materials brought by the sales agent or state that any of these materials were prepared or distributed by BP, as opposed to Mohr Power or some other person or entity.  (*Id.*)

In a subsequent paragraph, Allagas also alleges that, as a result of "the written materials he obtained during the visit," along with alleged statements by the Mohr Power agent made during the visit, and (equally unidentified) materials obtained and statements made during an earlier visit to Home Depot, he "formed [various] impressions" about BP Solar Panels.  (*Id.* ¶ 90.)  This vague assertion does not state that Allagas reviewed or relied on any particular document or representation prepared or made by BP, and nowhere identifies any alleged fraudulent statement(s) contained in any such materials that Allagas found "material to [his] decision to purchase the

---

[7] In Paragraph 64 of the FAC, Allagas alleges that when Mohr Power visited him in 2005, "Mohr Power had BP brochures with both the BP Solar and Home Depot logos."  (FAC ¶ 64.)  Allagas does not, however, describe these "brochures" anywhere in the FAC or allege with specificity what they purportedly stated.  Allagas further does not allege that he received or reviewed any of these "brochures."

solar panels." (Order at 10.) The FAC's conclusory allegations do not satisfy the "with particularity" requirement of Rule 9(b).

Turning to Ray, he identifies the "representations and warranties upon which he relied" as those "stated in Paragraph 107." (FAC ¶ 109.) Again, Paragraph 107 does not identify any particular document or representation prepared or made by BP on which Ray relied in purchasing the Solar Panels. (*Id.* ¶ 107.) It describes a visit to Ray's home by a "Diablo Solar representative" who brought with him, and gave to Ray, "marketing brochures and the Warranty," which Ray allegedly reviewed. (*Id.*) Apart of the Warranty, Paragraph 107 does not identify the particular materials brought by the sales agent or state that any of these materials were prepared or distributed by BP, as opposed to Diablo Solar or some other person or entity. While Paragraph 107 alleges in general terms that Ray reviewed materials that were brought to the visit, it does not alleged that Ray relied on any particular document brought to the visit or identify any alleged fraudulent statement(s) contained in such a document that he found material when purchasing the Solar Panels.

In a subsequent paragraph, Ray alleges that, as a result of materials obtained during the sales agent's visit along with statements made by the agent at the visit, he "formed [various] impressions" about BP Solar Panels. (*Id.* ¶ 108.) Here also, this vague assertion does not identify any particular document or representation prepared or made by BP, or any allegedly fraudulent statement contained in such a document, upon which Ray relied in purchasing the Solar Panels. The FAC's conclusory allegations do not satisfy the "with particularity" requirement of Rule 9(b).

Unlike Allagas and Ray, Mohrman nowhere identifies any representation or warranty by BP upon which he allegedly relied in purchasing the property on which Solar Panels had been installed. And, the only document relating to the Solar Panels that he received at the time of the purchase was "a copy of the [prior owner's] Solar Electric Agreement with Next Energy," an company not alleged to be affiliated with

BP.  (*Id.* ¶ 122.)  As such, Mohrman makes no attempt to correct the deficiencies in his CPLR and UCL fraudulent prong claims identified in the Order.

Apparently recognizing the inadequacy of the FAC's further allegations in support of their CPLR and UCL fraudulent prong claims, plaintiff now suggest that, even if they did not review *any* representations or warranties prepared or made by BP itself, they relied on third parties who might have received unspecified marketing information from BP.  (*Id.* ¶ 54 ("At all times relevant herein, purchasers of the Solar Panels relied on distributors, sellers and installers of solar panels to advise them concerning the advantages of purchasing solar panels generally and of the unique benefits of products produced by particular manufacturers, such as BP.").  Plaintiffs thus claim that BP designed a program to co-market the solar panels with distributors, sellers, and installers,[8] and state that BP provided "distributors, sells and installers" with promotional materials allegedly including the purported misrepresentations identified in Paragraph 51 of the FAC.  (*Id.* ¶¶ 54-59.)

Plaintiffs' new-found theory of indirect reliance fails because the FAC alleges no facts showing what alleged misrepresentations or representations prepared or made by BP were received by *plaintiffs'* sales representatives and then repeated or provided to *them*.  *Gawara v. U.S. Brass Corp.*, 63 Cal. App. 4th 1341, 1357 (1998) ("The indirect communications fraud theory requires a chain of fraudulent representations which are repeated by one victim to another.  It must be shown the defendant made misrepresentations or omissions directly to one victim who then repeated the misrepresentations or omissions to another who thus was an indirect recipient of the defendant's communications."); *see also Millman v. Subaru of Am., Inc.*, 2009 WL 197527, at *3 (D. N.J. Jan. 27, 2009) ("Indirect reliance . . . holds that plaintiff can prove a fraud action where he or she heard a statement not from the party

---

[8] Significantly, the FAC concedes that the PowerPoint presentation attached as FAC Ex. J, which purported describes the "co-marketing program" on which plaintiffs relies was produced to be "given to builders and developers," not the distributors and installers on which plaintiffs allegedly relied.  (FAC ¶ 56.)

that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment.  Even in an indirect reliance situation, actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived . . . .") (citations omitted) (internal quotation marks omitted).   While Allagas and Ray each describe oral statements made to them to by the sales agents of the installers with which they dealt that appear designed to parrot alleged misstatements by BP described in Paragraph 51, the FAC fails to allege any facts whatsoever showing that the particular sales agents with whom they dealt had received or been exposed to any similar statements by BP itself.  As the *Millman* court noted in dismissing a plaintiff's complaint alleging indirect reliance, "a plaintiff must plead all allegations of fraud with particularity . . . ."  2009 WL 197527, at *3.  Plaintiffs indirect reliance allegations fail as a matter of law.

Nor can plaintiffs salvage their claims by pointing to their allegations that BP purportedly failed to disclose the alleged defect in the Solar Panels.  As explained in defendants' Reply Memorandum In Support of Their Motion To Dismiss, to plead such a claim, a plaintiff must allege that he saw and relied on materials that reasonably would have disclosed the allegedly concealed information.  (Reply to MTD at 12-13, filed Mar. 20, 2014 (Dkt. 20).)  As stated in *Wang*, under Rule 9(b), plaintiffs must specify "which materials contain[ed] the relied-upon misrepresentations *or omissions* [and] when [plaintiffs] relied upon them."  276 F.R.D. at 628; *see Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009) (allegations of omissions "must describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information").  As demonstrated above, plaintiffs have not alleged with specificity

that they were "exposed"--either directly or indirectly--to any specific misrepresentations made by BP.  Absent such exposure, plaintiffs cannot prove that "had the omitted information been disclosed, [they or their sales representatives] would have been aware of it and behaved differently."  *Mirken v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).  Nor does the FAC offer any other allegations to correct the deficiency in plaintiffs' prior concealment allegations in their original complaint.

Plaintiffs' fraud-based UCL and CLRA claims are not pled with the requisite specificity.  They should therefore be dismissed.

## B.  All Of The Purported Misleading Statements Are Non-Actionable.

Plaintiffs' claims under the CLRA and UCL  fraudulent prong also fail because BP's alleged misleading statements cited in the FAC are non-actionable. "'Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable.'" *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (dismissing CLRA and UCL claims because "generalized and vague statements of product superiority such as 'superb, uncompromising quality' and 'faster, more powerful, and more innovative than competing machines' are non-actionable puffery") (citations omitted); *Anunziato*, 402 F. Supp. 2d at 1140 (ruling that the terms "quality," "reliability," and "performance" are non-actionable).

In *Anunziato*, the court analyzed a user manual that accompanied the defendant computer manufacturer's laptops, which stated:

> We are sure that you'll be pleased with the outstanding quality, reliability, and performance of your new notebook. Each and every eMachines notebook uses the latest technology and passes through the most stringent quality control tests to ensure that you are provided with the best product possible.

402 F. Supp. 2d at 1139.  Plaintiffs claimed that these were actionable misrepresentations because they were untrue.  The court, however, found that the

- 20 -

terms "high-quality," "reliability," "performance," and "latest technology," are non-actionable. *Id.* at 1140-41.

Similarly, in *Tietsworth v. Sears*, this Court held that "statements that [washing machines] are 'designed and manufactured for years of dependable operation,'" "save you time by allowing you to do fewer, larger loads," and "would save the consumer energy and water" are considered non-actionable puffery. 2009 WL 3320486, at *7-8, n.5 (N.D. Cal. Oct. 18, 2009) (dismissing plaintiffs' UCL and CLRA claims). The Court noted that any contrary ruling would mean that "virtually any product malfunction could form the basis of a claim of fraudulent misrepresentation" where there is no allegation that the product does not perform as represented "while functioning," a result that would turn product advertising on its head. *Id.* at *7 n.5.

Plaintiffs are seeking relief for virtually the same conduct that *Anunziato* rejected: plaintiffs attached "[e]xamples of the representations taken from the BP website" and "relevant product data sheets" to their Complaint. (FAC ¶ 52.) These "advertisements" included the following statements:

- BP solar panels will "drastically reduce or eliminate your electric bills." (*Id.* ¶ 51.a.)
- BP solar panels will "increase the value of your home" and allow homeowners to recover the cost of the Solar Panels "when you sell the house." (*Id.* ¶ 51.b.)
- "No other system can operate at a higher level of safety than those offered by BP Solar." (*Id.* ¶ 51.d.)
- "Quality, Reliability, and Performance in Every Product." (*Id.* ¶ 51.e.)
- "Our proven junction box design provides reliable electrical connections. . . ." (*Id.* ¶ 51.f.)
- "Our technology is proven around the globe." (*Id.* ¶ 51.g.)
- "You can count on our technology. . . ." (*Id.* ¶ 51.h.)

These are indistinguishable from the statements that this Court held were non-actionable in *Tietsworth* and the same result is warranted here.

IV. **THE REMAINING THEORIES UNDER THE CLRA AND UCL SHOULD BE LIMITED**

In its Order, the Court dismissed certain claims based on the unlawful prong of the UCL and all of the claims brought under the unfair prong of the UCL. (Order at 8-9.) Specifically, the court granted the motion to dismiss the unlawful prong theories where plaintiffs had not "properly pled warranty claims . . . as predicate offenses." (*Id.* at 9.) The Court further granted the motion to dismiss all unfair prong claims and CLRA claims based on the Claim Suppression Strategy, Warranty Exclusions, and failure to warn of the fire risk because plaintiffs had not plead that "they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct."[9] (*Id.*) The FAC does not cure these deficiencies.

Plaintiffs again base their claims under the UCL unfair prong upon BP's alleged "enforcement and threatened enforcement of the Warranty Exclusions, the Claim Suppression Strategy and the understatement and nondisclosure of the risks of fire resulting from the failure of the Solar Panels." (FAC ¶ 246.) They also base some of their CLRA claims on the same theories. (*Id.* ¶ 163.) They have not, however, alleged that they have been impacted by any of BP's alleged actions apart from the disclaimer of consequential damages. (*Supra* at 7.)

To the extent that plaintiffs claim that BP's inclusion of disclaimers of consequential damages and waiver of the implied warranties in its written Warranty constitute actionable "Warranty Exclusions," plaintiffs are wrong. (FAC ¶ 131.) BP's Warranty specifically states that those limitations only extend so far as the law permits: "F. The rights granted by this Warranty are in addition to any statutory or other legal rights granted or existing under of the country or State in which the BP Solar Product was purchased and those legal rights are not affected by this

---

[9] These principles also apply to CLRA claims. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 642 (2009) ("[I]n order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result").

Warranty."  (FAC Ex. F; *see also id.* ("H.  Some States do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.").)  Given that this Warranty is used nationally and with respect to consumers and commercial purchasers alike, the mere fact that BP included language referring to a disclaimer of consequential damages or waiver of implied warranties does not constitute an "enforcement [or] threatened enforcement" of these provisions against any of the plaintiffs here.  *Powers v. Lycoming Engines*, 272 F.R.D. 414, 429 (E.D. Pa. 2011) (in a case involving a nationwide warranty that contained a disclaimer of consequential damages court found that defendant could "contend that it limited the buyer's remedies in some states, but not in other states").

 In addition, Allagas's and Ray's claims that they were harmed by the "Claim Suppression Strategy," is belied by their admission that BP offered to replace their solar systems.  (*Supra* at 5-6.)

 For these reasons, plaintiffs lack both standing and any legitimate grounds to pursue their claims based on "enforcement and threatened enforcement of the Warranty Exclusions, the Claim Suppression Strategy and the understatement and nondisclosure of the risks of fire resulting from the failure of the Solar Panels."  In addition, plaintiffs may only pursue unlawful prong claims that are predicated on warranty claims that survive dismissal.  (Order at 8-9.)

<u>**Conclusion**</u>

 For the foregoing reasons, BP respectfully requests that the Court grant this motion to dismiss and strike in its entirety.

Dated:  June 9, 2014.     ARNOLD & PORTER LLP

            By:  /s/ Matthew T. Heartney
              Matthew T. Heartney
              Alex Beroukhim
              Attorneys for Defendant
              BP SOLAR INTERNATIONAL, INC.
              and HOME DEPOT U.S.A.. INC.