1  David M. Birka-White (State Bar No. 85721)
   dbw@birka-white.com
2  Stephen Oroza (State Bar No. 84681)
   soroza@comcast.net
3  Mindy M. Wong (State Bar No. 267820)
   mwong@birka-white.com
4  BIRKA-WHITE LAW OFFICES
   65 Oak Court
5  Danville, CA 94526
   Telephone:  (925) 362-9999
6  Facsimile:  (925) 362-9970

7  *Attorneys for Individual and Representative
   Plaintiffs* Michael Allagas, Arthur Ray, and
8  Brett Mohrman

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12  MICHAEL ALLAGAS, ARTHUR RAY and        Case No.  3:14-cv-00560-SI
    BRETT MOHRMAN, on behalf of
13  themselves and all others similarly situated,   **PLAINTIFFS' MEMORANUM OF
                                                    POINTS AND AUTHORITIES IN
14                Plaintiffs,                        OPPOSITION TO DEFENDANTS'
                                                    MOTION TO DISMISS AND STRIKE
15        vs.                                        FIRST AMENDED COMPLAINT**

16  BP SOLAR INTERNATIONAL, INC.,           *The Honorable Susan Y. Illston*
    HOME DEPOT U.S.A., INC. and
17  DOES 1-10, inclusive,                   Date:     July 11, 2014
                                            Time:     9:00 a.m.
18                Defendants.               Crtm:     10

19                                          Action Filed:  February 6, 2014
                                            Trial Date:     TBD
20

21

22

23

24

25

26

27

28

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

Case No. 3:14-cv-00560-SI
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .......................................................................................................... 1

II.   THE ADDITIONAL ALLEGATIONS OF THE FAC.................................................... 1

    A.    Marketing of The Solar Panels Through BP's Distributors and Installers............ 1

    B.    BP's Knowledge and Concealment of the Defect in the Solar Panels ................... 3

    C.    The Effect of BP's Misrepresentations and Omissions.......................................... 5

III.  ARGUMENT ............................................................................................................... 5

    A.    Plaintiffs Plead Their CLRA and UCL Fraud Claims Sufficiently........................ 5

    B.    Plaintiffs Allege Direct Reliance on Misrepresentations Sufficiently ................... 6

        1.    BP's Arguments Concerning Plaintiffs' Exposure to BP's
            Representations Ignore or Misstate the Allegations of the FAC................. 9

    C.    Plaintiffs Allege Direct Reliance on Omissions Sufficiently................................. 10

    D.    Plaintiffs Allege Indirect Reliance Sufficiently .................................................... 12

    E.    BP's Product Representations are Not "Puffery" ................................................. 14

    F.    Plaintiffs State Valid Claims Under the Power Warranty...................................... 15

        1.    The FAC Does Not Allege An Offer of Full Performance By BP............. 15

    G.    Plaintiffs State Valid Defect Warranty Claims ..................................................... 18

    H.    Plaintiffs State Valid Warranty Claims Based on the Product Claims .................. 19

    I.    Plaintiffs State Valid Implied Warranty Claims ................................................... 19

        1.    Plaintiffs Plead a Latent Defect.............................................................. 19

        2.    Plaintiffs' Implied Warranty Claims Are Timely ..................................... 20

        3.    Plaintiffs Are Not Required to Plead Vertical Privity.............................. 21

    J.    Plaintiffs State Valid CLRA Claims ..................................................................... 23

    K.    Plaintiffs State Valid UCL Claims ....................................................................... 24

IV.   CONCLUSION ............................................................................................................ 25

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Anunziato v. eMachines, Inc.*
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................................ 14

*Bias v. Wells Fargo & Co.*
942 F. Supp.2d 915 (N.D. Cal. 2013) .................................................................. 12

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*
622 F. 3d 996 (9th Cir. 2010).............................................................................. 16

*Cartwright v. Viking Industries, Inc.*
249 F.R.D. 351 (E.D. Cal. 2008) ......................................................................... 22

*Clark v. LG Electronics U.S.A., Inc.*
2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ..................................................... 21

*Coastal Abstract Serv. v. First Am. Title Ins. Co.*
173 F. 3d 725 (9th Cir.1999)................................................................................. 14

*Ehrlich v. BMW of North America, LLC*
801 F. Supp. 2d 908 (C.D. Cal. 2010) ........................................................... 20, 21

*Falco v. Nissan North America Inc.*
2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ..................................................... 20

*Gonzalez v. Drew Indus., Inc.*
750 F. Supp. 2d 1061 (C.D. Cal. 2007) ............................................................... 21

*Gusse v. Damon Corp.*
470 F. Supp. 2d 1110 (C.D. Cal. 2007) ............................................................... 21

*Hartman v. Summers*
120 F. 3d 157 (9th Cir. 1997)............................................................................... 25

*In re Apple and AT & T iPad Unlimited Data Plan Litigation*
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................... 10

*In re MyFord Touch Consumer Litigation*
2014 WL 2451291 (N.D. Cal. May 30, 2014) ..................................................... 22

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television
Litigation*
758 F. Supp. 2d 1077 (S.D.Cal. 2010) ................................................................. 18

*In re Toyota Motor Corp.*
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................... 22

*Jekowsky v. BMW of North America*, LLC
2013 WL 6577293 (N.D. Cal. Dec. 13, 2013) ..................................................... 20

*Keegan v. American Honda Motor Co., Inc.*
284 F.R.D. 504 (C.D. Cal. 2012) ........................................................... 20, 21, 22

*Kilgore v. KeyBank, Nat. Ass'n*
673 F. 3d 947 (9th Cir. 2012)............................................................................... 16

*Lanovaz v. Twinings North America, Inc.*
2014 WL 46822 (N.D. Cal. Jan. 6, 2014) ............................................................ 25

*Long v. Hewlett-Packard Co.*
2007 WL 2994812 (N.D. Cal. Jul. 27, 2007) ....................................................... 18

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

ii                                          Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

*MacDonald v. Ford Motor Company*
2014 WL 1340339 (N.D. Cal. Mar. 31, 2014) ............................................................. 11, 12

*Marolda v. Symantec Corp.*
672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................................................... 12

*Overton v. Bird Brain, Inc.*
2012 WL 909295 (C.D. Cal. March 15, 2012) ............................................................ 12

*Roberts v. Electrolux Home Products, Inc.*
2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) .............................................................. 22

*Stearns v. Select Comfort Retail Corp.*
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ...................................................................... 15

*Zaborowski v. MHN Government Services, Inc.*
936 F. Supp. 2d 1145 (N.D. Cal. 2013) ...................................................................... 16

**STATE CASES**

*Armendariz v. Found. Health Psychcare Svcs., Inc.*
24 Cal. 4th 83 (2010) ................................................................................................. 16

*Bank of West v. Superior Court*
2 Cal. 4th 1254 (1992) ............................................................................................... 14

*Barnhouse v. City of Pinole*
133 Cal. App. 3d 171 (1982) ...................................................................................... 13

*City of Industry v. City of Fillmore*
198 Cal. App. 4th 191 (2011) ..................................................................................... 13

*Daugherty v. Am. Honda Motor Co., Inc.*
144 Cal. App. 4th 824 (2006) .............................................................................. 11, 18

*Gaffney v. Downey Savings & Loan Assn.*
200 Cal. App. 3d 1154 (1988) .................................................................................... 15

*Geernaert v. Mitchell*
31 Cal. App. 4th 601 (1995) ................................................................................. 12, 13

*Gilbert Financial Corp. v. Steelform Contracting Co*
82 Cal. App. 3d 65 (1978) .......................................................................................... 22

*Grinnell v. Charles Pfizer & Co.*
274 Cal. App. 2d 424 (1969) ...................................................................................... 13

*Hewlett-Packard Co. v. Superior Court*
167 Cal. App. 4th 87 (2008) ....................................................................................... 18

*Hicks v. Kaufman and Broad Home Corp.*
89 Cal. App. 4th 908 (2001) ....................................................................................... 18

*LiMandri v. Judkins*
52 Cal. App. 4th 326 (1997) ....................................................................................... 11

*Mexia v. Rinker Boat Co., Inc.*
174 Cal. App. 4th 1297 (2009) ............................................................................. 20, 21

*Shapiro v Sutherland*
64 Cal. App. 4th 1534 (1998) ..................................................................................... 13

*Thrifty-Tel, Inc. v. Bezenek*
46 Cal. App. 4th 1559 (1996) ............................................................................... 12, 13

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

iii

Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

*Toole v. Richardson–Merrell Inc.*
    251 Cal. App. 2d 689 (1967) ............................................................................... 13

*Wayne v. Staples, Inc.*
    135 Cal. App. 4th 466 (2006) ............................................................................... 16

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) .................................................................................... 11, 12, 19

**STATE STATUTES**

Civil Code
    § 1486 ................................................................................................................... 15
    § 1770(a)(5) .......................................................................................................... 23
    § 1770 (a)(7) ......................................................................................................... 23
    § 1770(a)(19) ........................................................................................................ 23
    §1792 ..................................................................................................................... 21
Commercial Code
    § 2313(a) ............................................................................................................... 19
    § 2725(2) ......................................................................................................... 20, 21

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1  I.      **INTRODUCTION**

2          Plaintiffs file this opposition to the motion of Defendants BP Solar International, Inc.

3  ("BP") and Home Depot U.S.A., Inc. ("Home Depot") (collectively, "Defendants") to dismiss

4  and strike the First Amended Complaint ("Motion"). As detailed below, the First Amended

5  Complaint ("FAC") addresses all issues raised by the Court in its ruling on Defendants' motion to

6  dismiss the original complaint.[1]  The Motion should be denied.

7  II.     **THE ADDITIONAL ALLEGATIONS OF THE FAC**

8          Defendants' arguments concerning Plaintiffs' CLRA and UCL claims routinely ignore or

9  misstate important new allegations of the FAC. Because of their importance to the Motion,

10  Plaintiffs summarize these allegations.[2]

11         A.      **Marketing of The Solar Panels Through BP's Distributors and Installers**

12         Nowhere is BP's selective reading of the FAC more apparent than in its discussion of

13  whether Plaintiffs were exposed to and relied upon BP's misrepresentations and omissions

14  concerning the Solar Panels.

15         Plaintiffs received BP promotional materials and sales presentations from Home Depot

16  (which co-branded the Solar Panels) and two authorized BP installers (Mohr Power and Diablo

17  Solar). Plaintiffs allege in considerable detail that BP marketed the Solar Panels almost

18  exclusively through distributors, sellers and installers who were provided by BP with marketing

19  materials and training in their use. In its arguments concerning Plaintiffs' exposure to BP's

20  representations concerning the Solar Panels, BP argues as though Home Depot and the installers

21  were strangers to BP and its marketing materials. Paragraphs 54-70 of the FAC tell a different

22  story:

23         BP knew that end users depend on the recommendations of distributors, sellers and

24  installers in determining whether to buy solar panels at all and in deciding whether to purchase

25  _____

[1] *Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Denying*
26  *Defendants' Motion To Strike*, Document No. 32 ("*Order*"). Like Defendants, Plaintiffs assume
   that the Court is familiar with the allegations of the original complaint and the legal issues it
27  presents. This memorandum addresses the effect of the FAC on those issues.
   [2] Plaintiffs respectfully request that the Court review the paragraphs of the FAC identified below
28  in their entirety since it makes clear that the allegations are pled "with particularity." The
   summaries provided in this memorandum do not do justice to the level of detail pled in the FAC.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

1                                              Case No. 3:14-cv-00560-SI
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1  the Solar Panels in particular.  *FAC*, ¶54.  BP depended almost exclusively on its distributors,

2  sellers and installers to deliver the messages BP trained them to deliver using written materials

3  produced by BP.  *FAC*, ¶¶55-59.  Those messages – that BP's products were safe, reliable and

4  would save end users money – were delivered to Plaintiffs by Home Depot and the installers in

5  precisely the manner BP intended.  *FAC*, ¶¶60, 85-88 (Allagas) and 106-107 (Ray).

6         BP's reliance on installers to sell the Solar Panels is evidenced, *inter alia*, by its Certified

7  Installer Program, a two-day training program consisting of workshops and seminars lead by BP

8  sales and marketing representatives.  The first day was focused on "sales and marketing" where

9  installers would "[l]earn how to effectively sell BP Solar products, *how to use online tools*

10  available through the Certified Installer Program; and how to use the *BP Solar Certified Installer*

11  *logo, promotional materials, and marketing templates*."  The purpose of the Certified Installer

12  Program was to disseminate information about the purported safety, durability, reliability and

13  economic benefits of the Solar Panels to potential end users.[3]  *FAC,* ¶¶66-67 (emphasis added).

14         Installers who successfully completed the training program received a package of

15  information from BP which contained marketing materials, including brochures, product data

16  sheets and copies of the BP Warranty, which were then provided to prospective purchasers of the

17  Solar Panels.  Installers who did not take part in the Certified Installer Program could not trade on

18  the BP name or use the BP logo in selling its products.  *FAC*, ¶68

19         Solar Depot was the largest authorized distributor of BP Solar Panels in the United States

20  and the largest distributor of Solar Panels in California.  Home Depot was a significant distributor

21  of the Solar Panels and sold the Solar Panels in a co-branded effort known as the BP Solar Home

22  Solution.  *FAC*, ¶61.  Both Home Depot and Solar Depot obtained promotional materials from BP

23  which they provided to sellers and installers of the Solar Panels. They also instructed sellers and

24  installers to deliver these materials to prospective end users and trained them in their use.  *Id.*

25         Mohr Power, who made the sales presentation to Allagas, sold the Solar Panels from 2002

26  [3] In a brochure it produced in a co-branded marketing effort with Solar Depot, BP stated that the

27  Certified Installer Program "connects everyone in the value chain." A flow chart contained therein reflects the distribution channel: "BP Solar →Authorized Distributors → Certified

28  Installers → Customers.  *FAC*, Ex. K.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

2                    Case No. 3:14-cv-00560-SI
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1    until BP left the market.  BP provided Mohr Power with marketing materials and training on how

2    to install, market and sell the Solar Panels.  From 2004 on, Mohr Power worked closely with

3    Home Depot in selling the BP Solar Home Solution.[4]  *FAC*, ¶¶62-63.  In 2005, when Mohr

4    Power visited Allagas, Mohr Power had BP brochures with both the BP and Home Depot logos.

5    Mohr Power used the materials to market the Solar Panels to Allagas and others.  *FAC*, ¶64.

6        Solar Depot also provided its dealers and installers with marketing materials and product

7    information produced by BP and held training seminars to educate them concerning how to sell

8    the Solar Panels.  One of Solar Depot's dealers was Diablo Solar, which made the sales

9    presentation to Ray.  *FAC*, ¶65

10       The documents, information and sales presentations provided to Plaintiffs Ray and

11   Allagas were BP documents, information and sales presentations delivered exactly as BP

12   intended, through trained installers.

13       **B.      BP's Knowledge and Concealment of the Defect in the Solar Panels**

14       Defendants assert that "the FAC [does not] offer any other allegations to correct the

15   deficiency in plaintiffs' prior concealment allegations in their original complaint."  *Motion* at 20.

16   This is simply not true.  Paragraphs 24-38 of the FAC allege in great detail what facts BP failed to

17   disclose and actively concealed, why and to whom it was obligated to disclose these facts and the

18   consequences of BP's non-disclosure.

19       In approximately 2000, BP engineers were instructed by senior management to cut the

20   cost of producing the Solar Panels.  In 2001, BP substantially altered the design of its junction

21   box so that it could be manufactured more cheaply.  *FAC*, ¶24.  The redesigned junction box was

22   cheaper but defective, a fact which BP knew almost immediately.  *FAC*, ¶¶25-27.

23       As early as 2002, BP's customers reported failures of the Solar Panels to their installers.

24   The installers reported the failures to their distributors, who in turn reported the failures to BP.

25   Installers also reported failures directly to BP when submitting their customers' warranty claims.

26   BP's customers returned numerous Solar Panels with burned out junction boxes.  *FAC*, ¶¶26-27.

27
28

_____

[4] Mohr Power was required to have an employee on site at each of the thirteen Southern
California Home Depot locations for a specified number of hours per week to help market the
Solar Panels.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

3                                    Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

BP engineers investigated failures of the Solar Panels throughout 2003 and 2004 and determined that the cause of the failures was the defective junction box.  BP's tests reproduced the electrical arcing which occurred in the field, proving that the defect created a fire safety risk.[5] BP engineers knew that the junction box could not be repaired, that the number of failures would increase over time and that the junction box needed to be redesigned.  *FAC*, ¶¶28-29.

Beginning in 2003 and repeatedly thereafter, the findings of the BP engineers were brought to the attention of senior management, including many Presidents of BP.  BP's response was to ramp up its manufacturing capacity, operating its plants twenty-four hours a day.  BP specifically targeted California consumers because of the large energy rebates and tax incentives California offered to consumers for installing solar systems.  *FAC*, ¶¶30-32.

Although BP knew that the junction box defect represented a safety risk and would ensure that consumers would not receive the benefits of ownership promised by BP, BP did not disclose the defect to its distributors, sellers, installers or end users.  Instead, BP actively concealed the defect.  For example, BP told distributors, sellers and installers who inquired about the cause of burned or blown Solar Panels that the junction box failures were caused by a "bad batch of glass" or a "bad batch of diodes" rather than the defective design of the junction box.  *FAC*, ¶¶32-36.

BP was under a continuous duty to disclose to distributors, sellers, installers and end users: (1) the defect in the junction box, (2) the safety issues related thereto, including the risk of fire, (3) the existence of numerous returns of Solar Panels related to the junction box defect; and (4) that fires had actually occurred as a result of the defect.  BP had this duty because the facts it failed to disclose: (1) are contrary to representations made by BP that the Solar Panels were not defective in design or workmanship, that they would produce the rated power for twenty-five years, that they were safe and that they had a track record of safe operation; (2) relate to a safety issue; (3) were material facts in the exclusive knowledge of BP and unknown to anyone else; (4) were material and actively concealed by BP; and (5) constituted information omitted from

---

[5] While BP knew from at least 2003 that the junction box defect created a risk of fire, as time passed, BP became aware of actual fires caused by the defect.  For example, in the summer of 2009, a junction box failure at a Solar Panel installation in Davis, California started a grass fire which burned 30 acres.  *FAC*, ¶35.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

4

Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1   statements made by BP concerning the safety and reliability of the Solar Panels.  *FAC*, ¶37.

2          **C.**    **The Effect of BP's Misrepresentations and Omissions**

3         BP's misrepresentations and omissions concerning the Solar Panels caused injury to

4   Plaintiffs in two ways, referred to in the case law as "direct" and "indirect" reliance.

5         First, Allagas and Ray allege that if they had been aware of BP's misrepresentations and

6   omissions, they would not have purchased the Solar Panels.  *FAC*, ¶¶ 91and 109.  Mohrman

7   alleges that if he been aware of the facts BP concealed, he would not have purchased property on

8   which the Solar Panels were installed or would have sought an adjustment of the purchase price.

9   *FAC*, ¶123.

10         Second, Plaintiffs allege that if BP's distributors, sellers and installers had been aware of

11   BP's misrepresentations and omissions "they would have recommended that Plaintiffs and the

12   Class not purchase the Solar Panels and instead select another solar panel manufacturer" in which

13   case "Plaintiffs and the Class would not have purchased them."  *FAC*, ¶70.

14   **III.**    **ARGUMENT**

15         **A.**    **Plaintiffs Plead Their CLRA and UCL Fraud Claims Sufficiently**

16         In ruling on Plaintiffs' UCL claims, the Court held:  "Plaintiffs must allege BP's

17   fraudulent conduct with reasonable particularity and must state 'the who, what, when, where, and

18   how' of the conduct."  *Order* at 10.  The same requirement applies to Plaintiffs' CLRA claims.

19         Section III B addresses Plaintiffs' direct reliance on BP's misrepresentations.  It details:

20   (1) who made false statements to Plaintiffs (BP, directly and through trained agents); (2) what the

21   false statements were (the Solar Panels were safe and reliable, would last for twenty-five years,

22   had a good track record of performance, would produce between 80 and 90 percent of their rated

23   power for the years specified, would eliminate Plaintiffs' electric bills and increase the value of

24   their homes); (3) when the false statements were made (shortly before the purchases by

25   Plaintiffs); (4) where the false statements were made (in the Warranty, brochures, product data

26   sheets and in other materials shown to Plaintiffs by Home Depot, Mohr Power and Diablo Solar);

27   (5) how the statements were made (in writing and in oral presentations made to Plaintiffs); and

28   (6) Plaintiffs' reliance on these statements.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

5   Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

Section III C addresses direct reliance by Plaintiffs on BP's omissions and the "who, what, when, where, and how" of BP's fraudulent omissions.  Section III D addresses indirect reliance by Plaintiffs on BP's misrepresentations and omissions.

**B.**     **Plaintiffs Allege Direct Reliance on Misrepresentations Sufficiently**

Plaintiffs' allegations of direct reliance on BP's misrepresentations support fully their CLRA and UCL fraud claims.  Allagas alleges:

> 85.     In June 2005, while Home Depot was marketing the BP Solar Home Solution, Allagas went to Home Depot to purchase parts for his work as a security systems installer.   Just inside the door he saw a large and conspicuous table with marketing information and brochures advertising solar power. . . .

> 86.     Allagas was given a marketing presentation by the Home Depot sales representative.  *He was told that the Home Depot solar system would provide the most "reliable" and "trustworthy" solar system that money could buy.* Allagas asked for additional details and he was told to "sign up" for a visit by a Home Depot installer who would provide additional details concerning the Home Depot solar system.  Allagas received marketing brochures and other materials at Home Depot *which he took home and further reviewed while contemplating his decision to purchase the Solar Panels.*  At the time he received the brochures, Home Depot provided its customers with brochures and other written materials generated by BP for use in marketing the BP Solar Home Solution.

> 87.     Allagas was subsequently contacted by Mohr Power, a BP Certified Installer selected by BP and Home Depot.  As detailed previously Mohr Power was an authorized installer of the Solar Panels, had received all promotional materials used in the sale of the Solar Panels from BP and had been trained by BP concerning how to use the materials to sell the Solar Panels…

> 88.     A Mohr Power representative came to the Allagas home and made a sales presentation about the BP Solar Home Solution.  *The Mohr Power sales representative brought with him brochures, product data sheets, the Warranty and other written materials concerning the Solar Panels.*  The Mohr Power representative stated that the Solar Panels were reliable, safe, and would last for 25 years.  Mohr Power asked to see Allagas' electric bills and made calculations about their energy savings.  *Mohr Power told Allagas that the BP solar system would "eliminate" his electric bills and increase the value of his home.*

> …

> 90.     *As a result of statements made by the Home Depot sales representative, the Mohr Power sales representative, and Allagas' review of the written materials he obtained from Home Depot and during his meeting with Mohr Power,* Allagas formed the impressions that: (1) the Solar Panels were safe and reliable; (2) the Solar Panels would last for twenty-five years; (3) the Solar Panels would produce between 80 and 90 percent of their rated power for the years specified; (4) installation of the Solar Panels would eliminate his electric bills and increase the value of his home; and (5) the Solar Panels had a good "track record" of performance.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

6                                      Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

91.    *Allagas relied on the representations and warranties stated in Paragraph 88.[6]*  Were it not for these representations and warranties, Allagas would not have purchased the Solar Panels.  Had Home Depot, Mohr Power, or any other person informed Allagas that the junction box design was prone to failure and posed a fire safety risk, he would not have installed the Solar Panels at his home.  Allagas was so convinced by the representations regarding the Home Depot solar system that he refinanced his home to obtain the funds to purchase the solar system.

*FAC*, ¶¶85-91 (emphasis added).

The representations made to Allagas track perfectly with the representations identified in Paragraph 51 of the FAC (the "Product Claims").[7]  Almost all Product Claims were made repeatedly between 2002 and 2005 and are therefore contemporaneous with the sales to both Allagas and Ray.  Paragraph 52 alleges:  "The [Product Claims] were broadly disseminated in places such as BP's website, in a video played by to potential customers and in marketing materials such as brochures, product data sheets, and other promotional materials *reviewed by Allagas, Ray and other members of the Class*."[8]

Allagas received and reviewed brochures and other marketing materials for the Solar Panels from both Home Depot and Mohr Power, both of whom had received these materials from BP and were trained in their use.  Mohr Power also provided Allagas with the Warranty and

---

[6] As Paragraph 89 makes clear, this reference should be to Paragraphs 85 and 88.  Allagas relied on marketing materials and representations by Home Depot as well.

[7] The Product Claims are, *inter alia*:

1. Installation of the Solar Panels will "drastically reduce or eliminate your electric bills…forever."

2. The Solar Panels will "increase the value of your home" and allow homeowners to recover the cost of the Solar Panels "when you sell the house."

3. "No other system can operate at a higher level of safety than those offered by BP Solar."

4. BP Solar products are designed and constructed to provide first class performance and reliability.  Our world-class engineers are constantly improving our products to better meet your needs and to ensure product performance and safety through rigorous internal tests and international certifications.  It's no wonder our products have an unmatched track record in the field, operating for nearly 30 years in a variety of applications and climates worldwide."

5. Our proven junction box design provides reliable electrical connections for metric and non-metric conduit or cable fittings and enables series or parallel array connections."

[8] While the examples attached to the FAC were derived mostly from website materials, product data sheets and a Home Depot promotional video, there is nothing in law or logic which suggests that BP's message to consumers was different in brochures than it was in web materials, promotional videos and product data sheets.  While Plaintiffs have not yet located contemporaneous brochures, discovery will doubtless demonstrate that BP's brochures made the same claims as the rest of its materials.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

7                              Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

product data sheets.  Allagas was told by both Home Depot and Mohr Power that the Solar Panels

were "safe and reliable."  Mohr Power collected Allagas' energy bills and calculated Allagas'

energy savings, duplicating the function of the online Solar Savings Estimator referenced in one

of BP's web pages.  *FAC*, Ex. G.[9]

In short, Allagas received the entire complement of written materials and Product Claims

that BP intended him to receive, delivered by the people BP intended to deliver them.  And from

his review of these materials and the representations made to him, Allagas formed exactly the

impressions BP wanted him to form.  If this is not "exposure" to BP's representations, it is hard to

imagine what is.

Ray alleges:

106.   For many years, Ray had been interested in solar power as a way to
reduce his electric bills.  Ray spoke to various installers and chose Diablo Solar to
install his Solar Panels.  As described previously, Diablo Solar worked closely
with Solar Depot, the largest distributor of BP solar panels in California.  Solar
Depot had obtained and provided to Diablo Solar copies of the BP's product data
sheets, the Warranty and other promotional documents.

107.   Diablo Solar visited the Ray residence and made a sales
presentation regarding the Solar Panels.  The Diablo Solar representative told Ray
that the Solar Panels were the best, most reliable and safest on the market.  He was
also told that the Solar Panels would last for 25 years and would all but eliminate
his electricity bill.  *At that time, Ray received marketing brochures and the
Warranty from the Diablo Solar representative to review.  Ray reviewed the
brochures and the Warranty with the Diablo Solar representative and again on his
own before agreeing to purchase the Solar Panels.*

108.   As a result of statements made by the Diablo Solar representative
and his review of the written materials he obtained during his meeting with Diablo
Solar, Ray formed the impressions that: (1) the Solar Panels were safe and reliable;
(2) the Solar Panels would last for twenty-five years; (3) the Solar Panels would
produce between 80 and 90 percent of their rated power for the years specified;
(4) installation of the Solar Panels would eliminate his electric bills and increase
the value of his home; and (5) the Solar Panels had a good "track record" of
performance.

109.   *Ray relied on the representations and warranties stated in
Paragraph 107.*  Were it not for these representations and warranties, Ray would
not have purchased the Solar Panels.  Had Diablo Solar or any other person
informed Ray that the junction box design was prone to failure and posed a fire
safety risk, he would not have installed the Solar Panels at his home.  In addition,
if Ray had been informed that installation of the Solar Panels constituted a safety
risk because of the risk of fire, he would have insisted that the Solar Panels

---

[9] This fact demonstrates that BP's web-based materials were integral to BP's marketing of the
Solar Panels.  The Solar Savings Estimator used by Mohr Power is web-based.  *FAC*, Ex. G.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

immediately be removed from his roof and replaced with safe solar panels. *FAC*, ¶¶106-109 (emphasis added).

Ray's experience mirrors that of Allagas.  He received and reviewed BP marketing materials from an installer trained in the use of those materials and was told the same things Allagas was told.  Based on the representations made to him, he formed the same set of impressions as Allagas.  The similarity of Allagas' and Ray's experience is a testament to the efficacy of BP's marketing strategy and the consistency of the training it provided to the people who implemented it.

### 1.   BP's Arguments Concerning Plaintiffs' Exposure to BP's Representations Ignore or Misstate the Allegations of the FAC

BP argues that these allegations are insufficient to support an inference of reliance because:  (1) "Allagas does not identify any document or representation prepared or made by BP that Allagas reviewed or relied on in purchasing the Solar Panels;" (2) although Allagas alleges that Mohr Power brought promotional materials to him, he "does not allege that the Mohr Power sales agent gave any of these materials to Allagas or state that Allagas himself saw or reviewed any such materials during the visit;" (3) "apart from the Warranty, [Allagas] does not "identify with particularity any of the materials brought by the sales agent; and (4) [Allagas] does not state that any of these materials were prepared or distributed by BP, as opposed to Mohr Power or some other person or entity."

All of these arguments ignore completely the presentations made to Allagas at Home Depot and the written materials he took home and reviewed.  *FAC*, ¶¶85-86.  Argument (2) ignores Paragraphs 86 and 88, which allege that Allagas reviewed the materials provided to him by Home Depot and Mohr Power.

Arguments (1) and (3) ignore the allegations that: (1) Mohr Power had been provided with marketing materials by BP and trained in their use (*FAC*, ¶87); (2) "when Mohr Power visited Allagas, *Mohr Power had BP brochures with both the BP Solar and Home Depot logos*" (*FAC*, ¶64); (3) BP did not permit installers not trained by BP to use the BP brand or logo (*FAC*, ¶68); and (4) Mohr Power was required to maintain sales staff at all thirteen Southern California Home

1    Depot locations to sell the Solar Panels (*FAC*, ¶63).  The marketing materials shown to Allagas

2    were produced by BP, not "Mohr Power or some other person or entity."

3        Allagas identifies the body of BP documents reviewed by him and verbal assurances by

4    Home Depot and Mohr Power that his electric bills would be eliminated and that the Solar Panels

5    were "reliable" and "trustworthy".  Based on these documents and verbal assurances, he believed

6    what BP and its agents told him (*FAC*, ¶¶51, 52 and 91).

7        Rule 9(b) does not require that Plaintiffs tell BP what specific statements were made in

8    each of its own marketing materials in 2005.  Rule 9(b)'s "requirement of specificity is relaxed

9    when the allegations indicate that the 'defendant must necessarily possess full information

10   concerning the facts of the controversy'" or "when the facts lie more in the knowledge of the

11   opposite party."  *In re Apple and AT & T iPad Unlimited Data Plan Litigation*, 802 F. Supp. 2d

12   1070, 1075 (N.D. Cal. 2011).  This is especially true where "it is plausible that additional details

13   regarding [defendant's] specific conduct will be revealed through discovery."  *Id*.

14       Plaintiffs are entitled to the benefit of any reasonable inference which can be drawn from

15   the facts they have alleged.  The *only* reasonable inference which can be drawn from the facts

16   alleged by Allagas is that the BP documents he reviewed and the statements made to him

17   conveyed the messages BP was making generally at the time.

18       BP's arguments with respect to Ray are essentially identical to its arguments regarding

19   Allagas.  The only differences are that Ray did not visit Home Depot and that his sales

20   presentation was made by Diablo Solar, not Mohr Power.  The allegations that Diablo Solar was

21   provided with BP marketing materials and trained in their use is contained in Paragraphs 65 and

22   106 and Ray's review of and reliance on these materials is alleged in Paragraphs 107-109.[10]

23       **C.    Plaintiffs Allege Direct Reliance on Omissions Sufficiently**

24       A CLRA or UCL claim can also be based on a failure to disclose information that the

25   defendant is obligated to disclose.  The obligation to disclose arises when: (1) the omission is

26   contrary to a representation made by the defendant; or (2) the omission relates to a fact the

27   

28   [10] BP's arguments concerning Mohrman's reliance on affirmative misrepresentations are off
     point.  Mohrman does not state a claim based upon BP's affirmative misrepresentations.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

10                                    Case No. 3:14-cv-00560-SI
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

defendant was obligated to disclose, like a safety issue.  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835-36 (2006).  California recognizes a duty of disclosure where the defendant:  (1) has exclusive knowledge of material facts not known to the plaintiff; (2) actively conceals a material fact from the plaintiff; or (3) omits information concerning a subject on which it has made some partial representation.  *E.g.*, *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

Plaintiffs have pled in great detail what BP knew (the junction box was defective and would fail prematurely, the Solar Panels were unsafe and unreliable, a large number of the defective Solar Panels had failed and been returned by customers and the defect in the Solar Panels had caused fires).  *See* Section II B, *supra*.  BP knew of characteristic failures by 2002 and identified the defect no later than 2003 or 2004.  BP's exclusive knowledge and active concealment of the junction box defect, including its representations that failures were caused by something other than the defect, are also alleged in detail.  *FAC*, ¶36, 37.

BP was required to disclose these facts because they related to a safety issue and because they were known exclusively to and actively concealed by BP.  The facts were also contrary to representations made by BP in the Warranty (freedom from defect and the ability to produce rated power for twenty-five years) and elsewhere (the Solar Panels were safe and reliable, would save homeowners money and increase the value of their homes).

BP argues that these allegations are insufficient because "plaintiffs have not alleged with specificity that they were "exposed" – either directly or indirectly – to any specific misrepresentations made by BP" from which the facts known to BP were omitted.  In *MacDonald v. Ford Motor Company*, 2014 WL 1340339 (N.D. Cal. Mar. 31, 2014), a case cited by BP, the court made clear that Rule 9(b) does not require detailed identification of the documents from which facts were omitted:

> Plaintiffs adequately allege the "who what when and how," given the inherent limitations of an omission claim. In short, the "who" is Ford, the "what" is its knowledge of a defect, the "when" is prior to the sale of Class Vehicles, and the "where" *is the various channels of information through which Ford sold Class Vehicles*.

*MacDonald v Ford Motor Company*, at *6 (emphasis added).  *MacDonald* cites many other

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

11                                    Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1   authorities which have reached the same conclusion.  *Id.*  Similarly, in *Bias v. Wells Fargo &*

2   *Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013), the court rejected the contention that a plaintiff

3   must describe specifically documents from which facts were omitted.  *Bias* holds that Rule 9(b)

4   requires pleading only "instances where the omitted information could have been revealed"

5   including in "communications with [the defendant]." [11]

6        Plaintiffs have identified BP documents they reviewed and oral presentations which touted

7   the benefits of the Solar Panels.  No statement made by BP or its agents to promote the sale of the

8   Solar Panels could fairly omit BP's knowledge that its product was dangerous, would fail

9   prematurely, could not deliver the promised benefits and had failed many times already.  All of

10  BP's promotional materials and other communications should have disclosed these facts.

11       Moreover, both Allagas and Ray allege that they reviewed the Warranty.  The Warranty

12  represents that the product is free from defect and that it can produce the rated power for up to

13  twenty-five years.  The Warranty does not state – as it must in order to be accurate – that BP

14  knows the Solar Panels are defective, will fail prematurely, will not provide the power levels

15  specified in the Warranty and create a genuine risk of fire.

16       **D.      Plaintiffs Allege Indirect Reliance Sufficiently**

17       Consumers may rely on false statements made to persons who advise them concerning the

18  purchase of products.  This type of reliance – often described as "indirect reliance" – is sufficient

19  to support a claim for common law fraud.  Contrary to BP's assertions,[12] Plaintiffs are not

20  required to plead that the misrepresentations or omissions made to the adviser were repeated to

21  Plaintiffs.  *E.g., Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559 (1996):

22           California courts recognize indirect reliance.  (*Geernaert v. Mitchell* (1995) 31
             Cal.App.4th 601, 605-606 [37 Cal.Rptr.2d 483].)  Moreover, the notion that
23           reliance by an agent may be imputed to the principal, *even though the*
             *misrepresentation was never communicated to the principal*, is ensconced in
24           California law.  (*See, e.g., Grinnell v. Charles Pfizer & Co.* (1969) 274

25  _____
    [11] *MacDonald* distinguishes *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal.
26  2009)), a case relied on by BP.  In *Marolda*, "the dispute concerned an alleged omission within a
    particular advertisement, which the plaintiff had failed to produce or adequately describe" and
27  which was "clearly within plaintiff's knowledge."  *Id.*  Many other cases have questioned
    *Marolda*'s interpretation of Rule 9(b) as applied to omissions.  *Overton v. Bird Brain, Inc.*, 2012
    WL 909295 (C.D. Cal. March 15, 2012) at *5-*6.
28  [12] *Motion* at 18.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

Cal.App.2d 424, 441 [79 Cal.Rptr. 369]; *Toole v. Richardson–Merrell Inc.* (1967) 251 Cal.App.2d 689, 707 [60 Cal.Rptr. 398, 29 A.L.R. 3d 988].)

*Id*. at 1568 (emphasis added); *see also City of Industry v. City of Fillmore*, 198 Cal. App. 4th 191, 211 (2011).

The *Grinnell* and *Toole* cases cited by the court in *Thrifty-Tel* are instructive.  In both cases, patients sued drug manufacturers for breaches of warranties which the patients themselves had neither read nor heard.  The court in each case held reliance on the warranties by the physicians who administered the drugs was sufficient even though the physicians did not repeat them to their patients.

Plaintiffs allege:

> At all times relevant herein, purchasers of the Solar Panels relied on distributors, sellers and installers of solar panels to advise them concerning the advantages of purchasing solar panels generally and of the unique benefits of products produced by particular manufacturers, such as BP.  Accordingly, BP knew that if it wanted to sell the Solar Panels to end users it had first to convince distributors, sellers and installers that they should recommend the purchase of BP products rather than solar panels manufactured by others.

*FAC*, ¶54.  Plaintiffs further allege that if the distributors, sellers and installers had been aware of BP's misrepresentations and omissions, including BP's active concealment of known safety and reliability issues, they would have advised against the purchase of the Solar Panels and Plaintiffs and the Class would not have purchased them.  *FAC*, ¶70.  These allegations are more than "plausible" and are sufficient to establish a causal connection between the misrepresentations and omissions by BP and the injury alleged by Plaintiffs.

Indirect reliance upon fraudulent omissions is also sufficient to support a fraud claim. *E.g.*, *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 608 (1995) (defendants failed to disclose structural and soil subsidence problem to non-plaintiff purchasers "and that each defendant either intended or expected that the misrepresentations would be repeated and/or the nondisclosures be transmitted to plaintiffs"); *Shapiro v Sutherland*, 64 Cal. App. 4th 1534, 1548 (1998) (seller who sold property to relocation agency was liable to plaintiff – the eventual purchaser – for failing to disclose noise problems); *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171, 191-92 (1982) (plaintiff harmed by omissions of developer to initial purchaser).

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

13

Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

### E.    BP's Product Representations are Not "Puffery"

The Ninth Circuit has held that statements are not "puffery" if they are likely to deceive a "reasonable consumer."  "Under the reasonable consumer standard, [plaintiffs] must "show that 'members of the public are likely to be deceived.' " *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008), *quoting Bank of West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

The Product Claims are intended to – and would – lead a reasonable consumer to believe that the Solar Panels are safe, that the junction box is "proven" to be "reliable," and that there is a thirty-year "track record" of performance evidencing safe operation of the Solar Panels.  They also would lead a reasonable consumer to believe that there are substantial economic advantages to installing the Solar Panels, *i.e.*, utility savings and an increase in the value of the home.  These statements are false and "likely to mislead" consumers.

The Product Claims are actionable even under case law which arguably states a more stringent standard than *Williams*.  They represent a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F. 3d 725, 731 (9th Cir.1999); *see also Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005) (factual assertion which could be "established or disproved through discovery" is not puffery).

Each Product Claim is a statement of objective fact which can be established or disproved. For example, the statement that BP's "world class engineers" are striving tirelessly to improve the Solar Panels is false in light of the fact that these same engineers were telling BP that the junction box was unsafe and needed to be redesigned.  A junction box is not "proven reliable" where BP's own tests prove that it is likely to combust.  The statement that the Solar Panels have a "track record" of performing for 30 years is falsified by extensive evidence of fires and failures dating back to 2002.  Similarly, BP made objective claims of power cost savings (*e.g.*, the Solar Savings Estimator) and increased home value which it knew were false because the Solar Panels were certain to fail prematurely.  The fact that BP stopped making the Solar Panels only five years after claiming that they would produce electricity for at least twenty-five years is an objective refutation of an objective claim.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

1

### F.      Plaintiffs State Valid Claims Under the Power Warranty

2          The Court ruled that:  (1) Allagas did not state a claim under general California law

3    because he did not allege reliance on the warranty; and (2) Ray did not state a claim under general

4    California law, Song-Beverly or Magnuson-Moss because he did not allege notice, a power

5    failure, or reliance upon the Power Warranty.  *Order* at 6.  Plaintiffs do not believe that they are

6    required to allege reliance on the Warranty and BP has never argued that they are.[13]  Nonetheless,

7    Allagas and Ray have both alleged reliance on the Warranty.  *FAC*, ¶¶91 (Allagas) and 109

8    (Ray).  Ray has also alleged notice (¶¶116, 119) and a power failure (¶112-13).

9                ### 1.      The FAC Does Not Allege An Offer of Full Performance By BP

10         The only challenge by BP to Plaintiffs' Power Warranty claims is a repeat of its argument

11   that the FAC demonstrates conclusively that BP offered Plaintiffs "what its warranty promised."

12   *Motion* at 5-8.  The Court previously determined that this is a disputed factual issue not properly

13   raised in a motion to dismiss.[14]  The FAC provides even better reasons to reject BP's claim.

14              #### a.      The FAC Does Not Allege Full Performance Under Song-Beverly

15         BP argues that an unaccepted and unperformed "tender" of performance fully discharged

16   its warranty obligations.  BP now concedes, however, that "under the Song-Beverly Act, a seller

17   such as BP is not permitted to disclaim a buyer's claim for consequential damages."  *Motion* at 7.

18   Since BP's alleged tender did not include such damages, it was *at best* a tender of part

19   performance.

20         Civil Code § 1486 provides:  "An offer of partial performance is of no effect."  Under

21   § 1486, "[n]othing short of the full amount due the creditor is sufficient to constitute a valid

22   tender, and the debtor must at his peril offer the full amount." *Gaffney v. Downey Savings & Loan

23   Assn.*, 200 Cal. App. 3d 1154, 1165 (1988).  The FAC alleges that BP did not offer to pay

24   consequential damages claimed by Plaintiffs.  BP's alleged offer was therefore "of no effect."

---

25   [13] Under the UCC, the plaintiff need only prove that the warranty was part of the "basis of the
     bargain" between the plaintiff and the defendant.  *E.g.*, *Stearns v. Select Comfort Retail Corp.*,
26   763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010).
     [14] *Order* at 5 n.1.  "The Court has reviewed the e-mails submitted by defendants and finds that
27   they are not material to the issues presented in the instant motion nor central to the plaintiffs'
     claims for breach of the express power warranty. These e-mails go to a disputed factual allegation
28   in this action and are best addressed in the context of a summary judgment motion."

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

**b.      The FAC Does Not Allege Discharge Under California Warranty Law**

BP argues that Plaintiffs have not alleged sufficiently that the Warranty Exclusions relevant to its tender (exclusion of the cost of labor and of consequential damages) are unenforceable except under Song-Beverly.  BP argues its alleged tender of performance was therefore sufficient under general California warranty law.

First, Plaintiffs allege sufficiently that the relevant Warranty Exclusions are unconscionable under California law.  Second, even if the Warranty Exclusions were enforceable, the alleged tender by BP does not discharge *any* of its obligations under the Warranty.

**(1)      Plaintiffs Plead Unconscionability Sufficiently**

A contractual provision is unconscionable if it is "procedurally" and "substantively" unconscionable.  *Kilgore v. KeyBank, Nat. Ass'n*, 673 F. 3d 947, 963 (9th Cir. 2012), *citing Armendariz v. Found. Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83, 99 (2010).  BP argues that Plaintiffs have not alleged procedural unconscionability sufficiently.  *Motion* at 7.  BP does not challenge the sufficiency of Plaintiffs' pleading of substantive unconscionability (*FAC*, ¶¶44-48).

Procedural unconscionability exists where the contract is "oppressive."  Adhesion contracts, such as the Warranty, are generally treated as oppressive:  "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F. 3d 996, 1004 (9th Cir. 2010); *Zaborowski v. MHN Government Services, Inc.*, 936 F. Supp. 2d 1145 (N.D. Cal. 2013) ("[T]he Agreement is a contract of adhesion because it is 'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'"  *Id*. at 1151-52, *quoting Armendariz,* 24 Cal.4th at 113.[15]

The Warranty is a standardized contract.  Paragraph 44 of the FAC alleges: "The

---

[15] *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 481-82 (2006) is not to the contrary.  In *Wayne*, customers challenged the price charged by Staples for "declared value coverage" for their packages.  The court held that the customers could not establish oppression because:  "Staples gives its customers the option to ship packages without purchasing the coverage, as well as to obtain excess value coverage from other carriers."  The challenged provision was therefore not "imposed" by Staples on its customers at all.  They had to choose it affirmatively.  BP's customers had no option to "opt out" of the provisions challenged by Plaintiffs.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

16                                    Case No. 3:14-cv-00560-SI
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1    Warranty Exclusions were not bargained for by BP and its customers but were imposed

2    unilaterally by BP." Procedural unconscionability is adequately pled.

3               **(2)**        **BP Did Not Tender the Performance Under the Warranty**

4           The Power Warranty states that BP will "replace [the] BP SOLAR Product." Even if this

5    were all the Power Warranty requires, BP made no such offer. "Because BP no longer makes the

6    Solar Panels and there are no replacement products with similar dimensions available in the

7    marketplace, BP cannot in fact replace the Solar Panels." *FAC,* ¶42. Nothing in the Warranty

8    authorizes BP to substitute any solar panel of its choosing to be installed by an installer of its

9    choosing. At best, BP offered substitute performance of one of its Warranty obligations, an offer

10   Plaintiffs were not obligated to accept.

11          Although they are not required to justify their rejection of BP's alleged tender, Plaintiffs'

12   rejection was reasonable. Because there is no replacement product with similar dimensions, BP's

13   proffered substitute requires "replacement of the inverters[16], replacement of the racking system,"

14   "new building permits to install the new solar system" and "repairs to the roof required by

15   replacement of the racking system." *FAC,* ¶79. BP made no offer to address any of these

16   expensive issues and has not responded to Plaintiffs' demands for their recovery. *FAC,* ¶¶102

17   and 104 (Allagas), 117 and 119-21 (Ray) and 128-30 (Mohrman).

18          Further: "The fact that BP offered such a small amount to replace the roof, in each case

19   approximately one-third of the actual cost of a competent repair, indicated to Plaintiffs that they

20   could not trust BP's suggestion that BP's installers, rather than installers selected by Plaintiffs,

21   repair the roof." *FAC,* ¶134. "For this reason, as well as BP's refusal generally to compensate

22   Plaintiffs for their substantial consequential damages, Plaintiffs did not accept BP's suggestion

23   that it 'cure' their default by having its own installers replace their Solar Panels." *FAC,* ¶135.[17]

---

[16] This component converts DC power generated by the Solar Panels into AC current.

[17] "[R]eplacement [with other solar panels] damages the roof and, unless addressed by the installer, has a serious adverse effect on the appearance of the roof. In many cases where BP employed its own installers to install third-party solar panels, the installers did not repair the damage caused by the replacement of the mounting racks or ameliorate the adverse changes to the appearance of the roof." *FAC,* ¶133. BP's argument that Plaintiffs do not allege that they were aware of how badly many of BP's "replacements" had turned out (*Motion* at 6-7 n.2) is off point. Plaintiffs are not required to justify their refusal of the offer and, in any event, did not base their rejection of the offer on this fact.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

17

Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1

### G. Plaintiffs State Valid Defect Warranty Claims

2

Defendants argue that Plaintiffs' Defect Warranty claims are barred because all defects

3

which "manifested" themselves within the period of the Warranty were cured.  Defendants

4

acknowledge that Plaintiffs allege that the Solar Panels are certain to fail within their useful life,

5

but argue that, under *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006),

6

this allegation does not affect the result.  It does.

7

Where a plaintiff pleads that a product is substantially certain to fail within its useful life,

8

*Daugherty* does not bar a warranty claim for defects which actually manifest themselves after the

9

warranty period.  *Hewlett-Packard Co. v. Superior Court*, 167 Cal. App. 4th 87, 95-96 (2008).

10

*Long v. Hewlett-Packard Co.*[18], the case relied upon by Defendants, does not address this issue.

11

Plaintiffs have alleged that the Solar Panels are substantially certain to fail.  (*FAC*, ¶¶20, 101,

12

115, 172, 205, 208).  The fact that BP stopped manufacturing the Solar Panels five years into their

13

twenty-five year useful life and has made two public offers based on replacement of all of the

14

Panels (*FAC*, ¶¶9, 72-73) is good evidence that Plaintiffs' allegations are well-founded.

15

Although they do not need to, Plaintiffs Allagas and Ray have both pled defects which

16

manifested themselves during the warranty period.[19]  Defendants acknowledge that Ray alleges

17

such a defect and that Allagas discovered a Solar Panel which had all the characteristics of failure

18

almost immediately.  Defendants argue that, because Allagas was told by an "expert" that his

19

system was "fine," he experienced no actionable defect.  Allagas was later told, however, by the

20

---

21

[18] 2007 WL 2994812 (N.D. Cal. Jul. 27, 2007).  Nor does the case discuss *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal. App. 4th 908 (2001), on which the court in *Hewlett-Packard Co. v. Superior Court* relied.  In *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1099 (S.D. Cal. 2010), the court observed that the Ninth Circuit decision in *Long* recognized *Hicks* as a "possible exception" to the rule in *Daugherty*, but held that the plaintiffs had failed to plead that the product was substantially certain to fail.  The Court in *Sony Grand Wega* also recognized an exception based on *Hicks* which, although it did not apply in that case, applies in this case: "[T]he *Hicks* exception may make sense for goods – such as the foundation of a home – that consumers may reasonably expect to last for decades."  *Id.*  The Solar Panels are supposed to produce power for almost three decades.

22

23

24

25

26

[19] Because the *Hicks* rule is an exception to *Daugherty*, Plaintiffs do not need to plead that the defect manifested itself during the warranty period.  Allagas and Ray plead such a failure.  Mohrman does not.  Even if BP were correct concerning the sufficiency of Mohrman's Defect Warranty claim, however, dismissal of his Warranty claim would be inappropriate because the Court has upheld his pleading of other violations of the Warranty.  *Order* at 6.

27

28

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

18

Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

same "expert" that the failure he had observed in 2006 resulted from a defect in the Solar Panels (*FAC*, ¶97).[20]  Both Ray and Allagas sufficiently allege a defect during the warranty period.[21]

**H.     Plaintiffs State Valid Warranty Claims Based on the Product Claims**

Defendants acknowledge that Plaintiffs assert warranty claims based on the Product Claims,[22] but argue that these claims are insufficient because Plaintiffs have not adequately identified the warranties or pled reliance on them.  Defendants refer to their discussion of the alleged insufficiency of Plaintiffs' pleading of reliance on BP's marketing documents.  Plaintiffs likewise refer the Court to Sections III B and D, *supra*, in which reliance on the marketing documents is addressed.[23]

**I.     Plaintiffs State Valid Implied Warranty Claims**

**1.     Plaintiffs Plead a Latent Defect**

BP argues that Plaintiffs allegation that the defect in the Solar Panels is latent is "conclusory" and therefore insufficient.  "Latent" means "something (such as a disease) that exists but is not active or cannot be seen."[24]  Plaintiffs allege that the defect is in the solder connection between the cable and the busbar in the junction box on the back of the Solar Panel.

---

[20] Defendants argue that Allagas discovered the failure of the Solar Panels only by reviewing his electric bills. This is not true.  Allagas was told by Mohr Power that the defective Solar Panel he saw in 2006 was one of Solar Panels Mohr Power later determined to have failed.  *FAC*, ¶¶96-97.  Allagas was also told that his system had lost half of its productive capacity.  *Id*.  Comparing his current bills (incurred when half of his solar power was lost) with his previous electric bills is a plausible way to determine whether his Solar Panels were previously producing the required level of electricity.  *FAC*, ¶98.

[21] Defendants assert that neither Ray nor Allagas notified BP of the failure of their Solar Panels.  They did.  *FAC* (¶¶99-100 (Allagas) and 116 (Ray)).  Defendants also all assert that neither Ray nor Allagas asserts a claim for "repair or replacement of the failed panels" as the Warranty provides, but claim the right to replacement of all the Solar Panels.  Since repair or replacement of the Solar Panels is not possible (*FAC*, ¶¶2, 45), Plaintiffs do not demand these "remedies."  The relief sought by Allagas and Ray is consistent with their claim that all Solar Panels will fail within their useful life.  It is also consistent with the 2009 and 2010 Offers (*FAC*, ¶¶71-72) and all offers made to Plaintiffs, none of which contemplated repair or replacement of fewer than all Solar Panels.

[22] *FAC*, ¶170.  Under California Commercial Code Section 2313(a) "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

[23] Plaintiffs note, however, that Rule 9(b) does not apply to claims for breach of warranty and that the level of specificity required for such claims is lower than the standard Plaintiffs have met in pleading their fraud-based claims.

[24] Merriam-Webster Online, www.merriam-webster.com/dictionary/latent.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1     *FAC*, ¶¶17-18. This defect exists but is not immediately active and cannot be seen. Plaintiffs also

2     allege that the defect "is latent and not discoverable until the customer experiences a junction box

3     failure or fire" *FAC*, ¶22. Plaintiffs pled a latent defect sufficiently.

4     **2.**     <u>**Plaintiffs' Implied Warranty Claims Are Timely**</u>

5     Under Song-Beverly, the statute of limitations for an implied warranty claim based on a

6     latent defect is four years from *discovery* of the breach. *Mexia v. Rinker Boat Co., Inc.*, 174 Cal.

7     App. 4th 1297, 1306 (2009); *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 925

8     (C.D. Cal. 2010) (citing *Mexia*, court holds that where plaintiff purchased vehicle in 2004, action

9     brought in 2010 is timely where plaintiff did not discover facts constituting breach until 2008);

10     *Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 527 (C.D. Cal. 2012); *Falco v.*

11     *Nissan North America Inc.*, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) at *10.

12     District Courts in the Ninth Circuit recognize that *Mexia* is a simple application of

13     California statute of limitations principles to the implied warranty arising under Song-Beverly:

14     > *Mexia* is a thoroughly reasoned, published opinion by a California Court of Appeal
15     > that is less than five years old. The court took into account the statutory history, its
        > language, and its purpose in reaching its decision. It ultimately concluded that
16     > applying the durational limits to latent defects that existed at the time of sale and
        > manifest after those limits expire is 'unsupported by the text of the statute, legal
17     > authority, or sound policy.' "

18     *Jekowsky v. BMW of North America*, LLC, 2013 WL 6577293 (N.D. Cal. Dec. 13, 2013) at *3.

19     Under the Commercial Code, a warranty which "extends to future performance" accrues

20     on discovery of the breach. *Comm. Code* § 2725(2). An implied warranty *which does not arise*

21     *under Song-Beverly* has no duration; it thus does not "extend to future performance" within the

22     meaning of Comm. Code § 2725(2) and a cause of action for its breach accrues on delivery of the

23     goods. *Mexia*, 174 Cal.App.4th at 1304. By contrast, Song-Beverly gives the implied warranty a

24     duration which brings the warranty within the "future performance" language of § 2725(2).[25]

25     BP's argument that the "outer limit" for bringing an implied warranty claim is four years

26     from delivery (*Motion* at 11) confuses the date on which the breach occurs (delivery) with the

---

27     [25]"One innovation of the Song-Beverly Act is an express provision for a duration of the implied

28     warranty of merchantability. . . . The Uniform Commercial Code, by contrast, did not expressly
        set forth a duration of the warranty." *Id.*

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

20

Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1  date the claim accrues (discovery).[26]  Under *Mexia*, a latent defect results in a breach of the

2  implied warranty on the date of delivery (and thus within the duration of the implied warranty).

3  *Id.* at 1305-06.  However, because the implied warranty extends to future performance, under

4  § 2725(2) the statute of limitations does not commence until discovery of the breach.

5  ### 3.   Plaintiffs Are Not Required to Plead Vertical Privity

6  Defendants argue that Plaintiffs are required to plead that they are in vertical privity with

7  Defendants and that the only such relationship is that between Allagas and Home Depot.

8  Defendants do not address the argument, made by Plaintiffs previously, that privity is not

9  required by Song-Beverly.[27]

10  Song-Beverly does not require vertical privity.  Cal. Civ. Code §1792 provides:

11  Unless disclaimed in the manner prescribed by this chapter, every sale of
   consumer goods that are sold at retail in this state shall be accompanied by the
12  manufacturer's and the retail seller's implied warranty that the goods are
   merchantable.[28] The retail seller shall have a right of indemnity against the
13  manufacturer in the amount of any liability under this section.

14  The "plain language of section 1792 of the Song–Beverly Act does not impose a . . .

15  vertical privity requirement."  *E.g.*, *Ehrlich*, 801 F. Supp. 2d at 921; *Clark v. LG Electronics*

16  *U.S.A., Inc.*, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) at *10; *Keegan v. American Honda*

17  *Motor Co., Inc.*, 838 F. Supp. 2d 929, 946-47 (C.D. Cal. 2012); *Gonzalez v. Drew Indus., Inc.*,

18  750 F. Supp. 2d 1061, 1072 (C.D. Cal. 2007); *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110,

19  1116 n. 9 (C.D. Cal. 2007).

20  Plaintiffs also do not need to plead privity because they are intended beneficiaries of the

21  implied warranties between BP and its initial buyer (such as Home Depot).  Plaintiffs allege:

22  [T]he Implied Warranties incorporated into the transaction between BP and its
   immediate purchasers (the "BP Buyers") were intended solely to benefit Plaintiffs
23  and the Class.  Plaintiffs and the Class are therefore entitled to enforce the Implied
   Warranties against BP.

24

---

25  [26] While this "outer limit" might otherwise apply to Plaintiffs' UCC implied warranty claims,
   Plaintiffs have pled sufficiently that BP is estopped to assert a statute of limitations defense.
26  *FAC*, ¶150-154.  As was the case with Defendants' first motion to dismiss, they do not address
   this issue at all.
   [27] Because Defendants are plainly aware of this issue they also should not be permitted to address
27  it for the first time in reply.
   [28] Defendants do not contend that the implied warranties are disclaimed in the manner required by
28  Song-Beverly.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

21                                    Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

This intent is evidenced, *inter alia*, by the fact that the written Warranty issued by BP extends not only to end users but to their successors.  Further, the Implied Warranties made by BP to the BP Buyers would be of no economic value to the BP Buyers unless Plaintiffs and [the] Class received the benefit of such warranties. The BP Buyers are not users of the Solar Panels. The economic benefit of implied warranties made by BP to the BP Buyers depends on the ability of end users who buy their products to obtain redress from BP if the warranties are breached.  For this reason, Home Depot expressly disclaims warranties relating to the Solar Panels and agrees only to assist its customers in asserting warranty claims.  It is in the best interests of Home Depot and other BP Buyers that Plaintiffs and the Class be permitted to enforce implied warranties against BP.

*FAC*, ¶¶202-03.

California law provides that where the end user is the intended beneficiary of an express warranty issued by the manufacturer – which Defendants cannot deny – the plaintiff is an intended beneficiary of the implied warranties existing in the contract between the manufacturer and the initial purchaser.  *Gilbert Financial Corp. v. Steelform Contracting Co*. 82 Cal. App. 3d 65, 69 (1978); *In re MyFord Touch Consumer Litigation*, 2014 WL 2451291 (N.D. Cal. May 30, 2014) at *31; *Roberts v. Electrolux Home Products, Inc.*, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) at *9.

*Roberts* discusses at some length the many cases in which this rule has been applied:

[C]ourts have found that consumers can assert implied warranty claims in this factual context as third-party beneficiaries of agreements between the manufacturer and retailer. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F.Supp.2d 1145, 1184-85 (C.D.Cal.2010); *Keegan v. American Honda Motor Co., Inc.*, 838 F.Supp.2d 929, 947 (C.D.Cal.2012) (following *Toyota*). The basis of this third-party beneficiary exception is the California court of appeals decision *Gilbert Financial Corp. v. Steelform Contracting Co.*, 82 Cal.App.3d 65, 69 (1978), which held that a plaintiff homeowner could assert an implied warranty claim against a subcontractor as a third party beneficiary of the agreement between the contractor and subcontractor. *Id.*, *see also Cartwright v. Viking Industries, Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008) (discussing *Gilbert*); *In re Toyota*, 754 F.Supp.2d at 1184 (discussing *Gilbert*). Applying the holding of *Gilbert*, these decisions reason that "where a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach." *In re Toyota*, 754 F. Supp. 2d at 1185.

*Id.*[29]

---

[29] BP argues that "*Gilbert* did not involve consumer products and no case decided by the Ninth Circuit or the California Court of Appeal has applied this principle to consumer products." *Motion* at 13 n.6.  The Ninth Circuit has not addressed *Gilbert* at all.  There is no reason, however, why *Gilbert* should not be applied to claims by consumers.  *In re MyFord Touch Consumer Litigation*, 2014 WL 2451291 at *31.  All cases cited in the text are consumer cases.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

22                                Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1    Plaintiffs plead that the express warranties by BP extend not to its initial purchaser but to

2    end users and their successors.  BP's express and implied warranties are not valuable to Home

3    Depot as a user of Solar Panels.  They are of value to Home Depot because they make it easier to

4    sell Solar Panels and provide its customers with an alternative to Home Depot itself as a party

5    responsible for the warranty.  Home Depot's customers are therefore the intended beneficiaries of

6    the warranties and are entitled to enforce them.

7    **J.      Plaintiffs State Valid CLRA Claims**

8    The Court ordered that Plaintiffs specify the Paragraphs of the FAC upon which they rely

9    to support their CLRA claim against BP.  *Order* at 7-8.  Plaintiffs have complied.[30]  Plaintiffs

10   plead claims under Civ. Code §§ 1770(a)(5) and (a)(7)(false benefit and quality claims):

11   These representations and warranties, and the methods by which they were
     disseminated are detailed at Paragraphs 39, 51, 52 and 54 through 70. The reasons

12   they are false are stated in Paragraph 53.  BP also omitted to disclose the facts it
     was required to disclose pursuant to §§ 1770(a)(5) and (a)(7), as more fully stated

13   in stated in Paragraphs 24 through 38 (duty to disclose addressed in Paragraph 37).

14   *FAC*, ¶162.

15   Paragraph 165 identifies other relevant references: Reliance by Plaintiffs (direct reliance)

16   and by distributors, sellers and installers (indirect reliance) is alleged in ¶164.  The factual

17   allegations supporting reliance are detailed in Paragraphs 54 through 70 (particularly Paragraphs

18   69 and 70) (distributors, sellers and installers), 85 through 91 (Allagas), 106 through 109 (Ray)

19   and 122 through 123 (Mohrman).

20   Damage to Plaintiffs and the Class is detailed in ¶166:  "Harm to Plaintiffs is detailed at

21   Paragraph 149 and at Paragraphs 94 through 105 (Allagas), 112 through 121 (Ray) and 124

22   through 130 (Mohrman).  Harm to the Consumer Subclasses is detailed in Paragraph 149."

23   The only challenge by BP to Plaintiffs' CLRA fraud claims is based on the alleged lack of

24   specificity in pleading exposure to the false statements and omissions and the argument that the

25   Product Claims are non-actionable "puffery."  Plaintiffs have addressed these arguments.

26   Paragraph 163 alleges:  "Defendant BP violated Civil Code § 1770(a)(19) by including in

27   the Warranty the unconscionable Warranty Exclusions.  The Warranty Exclusions and the reasons

28   ─────────────────
     [30] Plaintiffs have done the same thing for all claims they assert.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

23                                              Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1  they are unconscionable are described in Paragraphs 43 through 50."  The application of the

2  Warranty Exclusions to Plaintiffs is detailed in Paragraph 131.  BP argues that the Warranty

3  Exclusions are not unconscionable in its argument concerning Plaintiffs' express warranty and

4  UCL claims.  Plaintiffs address these arguments in the same context.

5  **K.  Plaintiffs State Valid UCL Claims[31]**

6  The Court ruled:  "[T]he [UCL "unfairness" claims do] not allege that plaintiffs have

7  suffered a distinct and palpable injury as a result of the enforcement of the warranty exclusions

8  against them, the application of the suppression strategy against them or injury from fire resulting

9  from the solar panels." *Order* at 9.  The FAC addresses these issues.  Plaintiffs plead that they

10  were subjected to the challenged practices and injured by them.

11  The Warranty Exclusions are described in Paragraph 43(a)-(f).  Paragraph 131 alleges that

12  BP has enforced them against Plaintiffs because BP: (1) refused to pay for special and

13  consequential damages for lost power and for expenses incurred in investigation, replacement of

14  the inverters, building permits and damage to the roof required by the installation of replacement

15  panels (¶43(c)); (2) refused to pay for the cost of labor associated with the removal or

16  reinstallation of the Solar Panels (¶43(a)); (3) made an offer to Plaintiffs based on a per watt

17  calculation which was less than the purchase price of the Solar Panels, consistent with the

18  exclusion identified in ¶43(d); and (4) asserted the unenforceability of implied warranties against

19  them (¶43(b)).[32]

20  Plaintiffs allege that the Claim Suppression Strategy is "a practice of offering

21  homeowners who make claims substantially less than the amount to which they are entitled,

22  *i.e.*, the cost of removing and replacing the defective Solar Panels and remedying any

23  

---

24  [31] In ruling on the unlawful prong of Plaintiffs' UCL claim, the Court determined that Plaintiff's breach of warranty claims support a claim for violation of the UCL.  *Order* at 9.  Likewise, BP's

25  violation of the CLRA makes BP's conduct unlawful under the UCL.  The Court ruled that Plaintiffs' fraud claims under the UCL had not been pled with sufficiently particularity.  *Id*. at 10. Plaintiffs have addressed this issue in Sections III A through E, *supra*.

26  [32] BP argues that the Warranty Exclusions are not unfair because the Warranty makes clear that they are enforceable only in states that permit their enforcement (*Motion* at 23).  BP misconceives

27  Plaintiffs' claim.  The Warranty Exclusions are unfair precisely *because* BP is enforcing them in a state – California – in which they are not enforceable.  BP can do this only because consumers

28  do not know that BP is not entitled to enforce the Warranty Exclusions.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

24

Case No. 3:14-cv-00560-SI

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT

1    consequential damages." *FAC*, ¶79.  "BP is routinely offering parties who assert claims a

2    payment based on a standard cost per watt for the power warranted, a sum which does not

3    compensate the owner" for the costs BP has refused to pay to Plaintiffs.  *Id*.  "BP invokes the

4    Warranty Exclusions . . . in order to justify these wholly inadequate offers."  *FAC*, ¶80.

5          Plaintiffs allege that BP made offers to them based on a standard cost per watt for the

6    power warranted, a sum which does not compensate them for the costs BP has refused to pay.  BP

7    invokes the Warranty Exclusions in order to justify these wholly inadequate offers and has

8    asserted their validity in this action.  Plaintiffs allege sufficiently that they have been subjected to

9    the Warranty Exclusions and the Claim Suppression Strategy.  *FAC*, ¶132.

10         They also allege injury sufficiently.  An "identifiable trifle" of injury is sufficient for

11   standing.  *Lanovaz v. Twinings North America, Inc*. 2014 WL 46822 (N.D. Cal. Jan. 6, 2014)

12   at *9.  Plaintiffs did not receive from BP the relief to which they were entitled and had to sue BP

13   to obtain it.  This is the "injury" the practices challenged are intended to inflict; BP knows that

14   most people will not have the knowledge or resources to enforce their rights.[33]

15   **IV.    CONCLUSION**

16         For the reasons stated, Plaintiffs respectfully request that the Motions to Dismiss and

17   Strike be denied.  Alternatively, Plaintiffs request leave to amend.

18   DATED:  June 23, 2014                    BIRKA-WHITE LAW OFFICES

19

20                                            By:    /s/ Stephen Oroza
21                                            STEPHEN OROZA
                                             *Attorneys for Individual and Representative*
22                                           *Plaintiffs* MICHAEL ALLAGAS,
                                             ARTHUR  RAY and BRETT MOHRMAN

23

24

25

26   [33] Plaintiffs do not need to demonstrate that they have actually suffered a fire.  Exposure to an
     increased risk of fire is sufficient as long as the risk is "credible" rather than "remote" or
27   "hypothetical."  *Hartman v. Summers*, 120 F. 3d 157, 160 (9th Cir. 1997).  Plaintiffs allege:
     "Fires caused by junction box failures have already occurred and there is a substantial risk that
28   they will occur in the future."  (*FAC*, ¶¶19, 35).  Plaintiffs allege such injury sufficiently.

Birka-White Law Offices
65 Oak Court
Danville, CA 94526
(925) 362-9999

25                                            Case No. 3:14-cv-00560-SI
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT